1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit #21

1 PAGE





## Purchase College
### STATE UNIVERSITY OF NEW YORK

Office of the Vice President for Student Affairs

Purchase College
State University of New York
735 Anderson Hill Road
Purchase, NY 10577-1400

Phone (914) 251-6030

**Student Affairs Incident Report**

Incident Number: 1749     Report Number: 1749

### INCIDENT TYPE
Inappropriate Conduct,Vandalism

### INCIDENT TOOK PLACE
Date: 2/6/2013    Time: 07:00 PM
Location: The Commons,k1-2

### REPORT
Date Submitted: 2/7/2013  Position: Student  Filed By: Christopher Derosa  CID: ▮▮▮▮ Building: The
Commons  Room: ▮▮  Cell Phone ▮▮▮▮▮▮

### PERSONS ALLEDGLY INVOLVED
Name: Eduardo Morales  CID: ▮ uilding: The Commons  Room: ▮▮  Cell Phone ▮▮▮▮▮▮

### WITNESS TO INCIDENT
Name: Dan  Costello  CID: ▮▮▮▮  Building:The Commons  Room: ▮▮  Cell Phone ▮▮▮▮▮

### POLICE REPORT INFO
[x] No police report

### INCIDENT DESCRIPTION
On 2/6/13 I got home from work to find a 53 year old man on my couch. Without notification Eduardo and my old
roommate Einstein Correa swapped rooms. Without my consent Eduardo rearranged the apartment and moved my
property. My computer while still operating and plugged in was lifted 4 feet or more and put on top of the desk. The
computer now does not work properly. This man has said he wants to take a screen out of the window and leave a
window unlocked at all times in case he forgets his key, he can climb in the window. I am not approving of ANY of
this and the other roommate, Dan Costello is not approving of this either.

### DISCLAIMER
[x] I understand that I may be required by the College to serve as a hearing witness and agree to do so if requested.
[x] I consent to the release and use of this report and any information relating to it to any officer or agent of the

# Exhibit #22

3 PAGES



Office Outlook Web Access    Type here to search   This Folder   | Address Book | Options | Log Off

**Mail**

- Deleted Items (10)
- Drafts [74]
- Inbox (11)
- Junk E-Mail
- Sent Items (5)

Click to view all folders ⌄

- Attached Received (2)
- E-mails from students
- Letters From FED & State
- Notes From Financial Aid
- Notes From Register

Manage Folders...

Reply | Reply to All | Forward | Move | Delete | Junk | Close

## RE: DISCIPLINARY SPECIFICATION OF CHARGES - Morales, Edward REVISED
Jones, Melissa

This message has been marked as Confidential.
The sender of this message has requested a read receipt. Click here to send a receipt.
You replied on 4/3/2013 12:44 PM.
This message was sent with High importance.

**Sent:** Wednesday, April 03, 2013 12:39 PM
**To:** MORALES, EDWARD

Dear Edward,

As previously discussed on March 22, 2013, your initial conference has been reschedule for today and will be run in your absence if you fail to attend. In turn, your initial conference will take place today, April 3, 2013 at 1:00 pm in my office. If you choose not to attend, please know that you will be waiving your right to a hearing and have three days to appeal the outcome.

Sincerely,


Melissa Jones
Director for Community Standards
Purchase College, S.U.N.Y.
735 Anderson Hill Road
Purchase, New York 10577
Phone: (914) 251-6033
Email: Melissa.jones@purchase.edu


"These records are protected by the Family Educational Rights and Privacy Act and are provided under an exception to the Act found in Section 99.32. These records must be maintained confidentially and may not be redisclosed. They must be destroyed when your legitimate educational interest no longer exists."



-----Original Message-----
From: MORALES, EDWARD
Sent: Wednesday, April 03, 2013 12:22 PM
To: Jones, Melissa; bill.howard@suny.edu; wendy.kowalczyk@suny.edu; james.moser@ed.gov; Bianchi, Carrie; dthaler@fmcs.gov; diane.castro@ed.gov; Diane.Diggs@ed.gov
Subject: RE: DISCIPLINARY SPECIFICATION OF CHARGES - Morales, Edward REVISED
Sensitivity: Confidential

Ms. Melisa Jones.

I am sorry but I cannot attend to your meeting, and due to the up-coming mediation between SUNY, FMCS and myself on May 1st, 2013 ; I respectfully ask you to contact Mrs. Wendy Kowalczyk

(after April 9th) or immediately to Mr. William Howard (SUNY Senior Vice Chancellor, General Counsel & Secretary), for instruction. Once you get these instructions, please copy them to me.


Thanks,


Edwardo Morales
SUNY Purchase College
735 Anderson Hill Rd
Box #0004
Purchase, NY 10577
(914)751-4388



CC

D Thaler
FMCS

From: Jones, Melissa
Sent: Wednesday, April 03, 2013 11:52 AM
To: MORALES, EDWARD
Subject: DISCIPLINARY SPECIFICATION OF CHARGES - Morales, Edward REVISED

[cid:image001.png@01CE3061.C2ACD270]
Office of the Vice President for Student Affairs

Purchase College
State University of New York
735 Anderson Road
Purchase, NY 10577-1400

tel    914 251 6030
fax    914 251 6034

SPECIFICATION OF CHARGES FOR DISCIPLINARY ACTION REVISED NOTICE

TO:                  Edward Morales
CID #: 1100-624-434
Commuter

FROM:         Melissa Jones, Director for Community Standards

DATE:               March 12, 2013

The Division of Student Affairs has received information that you were allegedly involved in a violation on March 8, 2013 when a Student Affairs report was received stating that you violated a No Contact Order and on April 3, 2013 when University Police and Student Affairs reports were received regarding an incident in Parking Services. As a result you are being charged with violating College Regulations specifically:

ITEM          CODE#          DESCRIPTION/*RANGE OF SANCTIONS
Charges related to 3/8/13:

1.                    F.3                    Violates a no contact order issued by the College.

Minimum:  Disciplinary Probation          Maximum:  Expulsion

Charges related to 4/3/13:

1.                    C.3                    Threatens, harasses, or intimidates any person, and/or uses words which reasonably tend to incite an immediate, violent reaction and are specifically directed toward another individual (See also the College's Affirmative Action and Sexual Harassment policies).

Minimum: Disciplinary Probation          Maximum: Expulsion


2.                    F.6                    Fails to respect the ongoing legitimate functions of classes,

meetings, office procedures, study, sleep, or any authorized College activity.

Minimum: Reprimand                Maximum: Suspension




*More severe sanctions may result for repeated, aggravated or multiple violations.


These charges will be discussed at an Initial Conference conducted by me on Wednesday, April 3, 2013 in my office, Student Services Building (3rd floor) room 317 at 1:00 pm.  If you have a conflict and need to reschedule, you may request to do so by contacting me at (914) 251-6033. The office is open 9:00 am - 5:00 pm.  You must leave a message if I am not available.  Copies of the Incident Report(s) will be available at the Initial Conference.  You can access the Community Standards of Conduct online at
http://www.purchase.edu/departments/StudentAffairs/policies/communitystandards.aspx

The purpose of this conference is to hear your side of the story about the incident and/or

Case 7:13-cv-02586-KBF Document 3

The purpose of this conference is to hear your side of the story about the incident and/or police report(s) that we have received. For specific information on what to expect at your Initial Conference, please access this link https://www.purchase.edu/Departments/StudentAffairs/Policies/process/notificationofcharges.aspx

If you would like to speak with the Ombudsman, you can reach Paul Nicholson at paul.nicholson@purchase.edu<mailto:paul.nicholson@purchase.edu> or x6522. For more information concerning the Ombuds Office, please visit the following link: http://www.purchase.edu/Departments/Ombuds/default.aspx.

If you fail to appear at the above stated time and place or make alternate arrangements, all matters described will be considered true and you will waive your right to a hearing. Appropriate action will then be taken by the College. If you have any questions or concerns regarding this information you should contact my office for assistance.

cc:        Student File


Connected to Microsoft Exchange

# CITY COURT
## CITY OF MOUNT VERNON
## COUNTY OF WESTCHESTER

## IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK



## TO: EDWARD MORALES
### 110 NO. 3RD AVENUE, APT 2M
### MOUNT VERNON, NEW YORK 10550

LEGAL

### INC # 13-10407

## SUBPOENA

YOU ARE COMMANDED to appear before the City of Mount Vernon Court, 2 Roosevelt Square, WINDOW #7, Mount Vernon, N.Y. 10550 on **APRIL 2, 2013** at **1:30PM** and on any and all adjourned dates that may be necessary, as a witness in a criminal action prosecuted by the People of the State of New York against **JOHN SIDNEY = Felony Hearing** .

Dated at the County of Westchester, March 27, 2013

**Please call** upon receipt of this subpoena:
Assistant District Attorney **AMIT PARAB** at **(914)- 665-2440**

*Janet DiFiore*

JANET DiFIORE
DISTRICT ATTORNEY

Westchester County, ss:

_____ , being duly sworn, says: That he/she served a subpoena upon

by delivering to him/her personally, such subpoena, of which the within is a true copy, as indicated below.

| Date and Time Served | Address or Place Served |
|---|---|
|  |  |

Sworn to before me this   day of           , 20

Deponent

PLEASE NOTE: If this subpoena is disobeyed, you may be deemed guilty of a Criminal Contempt of Court and be subject to a fine and/or imprisonment for such Criminal Contempt.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit #26



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS
32 OLD SLIP, 26TH FLOOR
NEW YORK, NEW YORK 10005

*26*

TIMOTHY C. J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

April 9, 2013

*WRONG*
*DISMISSAL*
*Apt. BLDG*
*was to be ansrd*

Edward Morales
110 N. 3rd Avenue, Apt. 2M
Mt. Vernon, New York 10550

Re:   Case No. 02-13-2122
      State University of New York, Purchase College

Dear Mr. Morales:

On March 12, 2013, the U.S. Department of Education, New York Office for Civil Rights (OCR) received the above-referenced complaint you filed against the State University of New York, Purchase College. You alleged that the College retaliated against you for filing a prior complaint with OCR alleging age discrimination, by issuing disciplinary charges against you on March 12, 2013.

In an electronic mail message sent to OCR staff on April 1, 2013, you informed OCR that you wished to withdraw your complaint. Therefore, OCR has dismissed your complaint as of the date of this letter.

You have the right, pursuant to the regulation at 34 C.F.R. § 110.39 implementing the Age Discrimination Act of 1975 (the Age Discrimination Act), to file a civil action for injunctive relief in federal court following the exhaustion of administrative remedies. Administrative remedies are exhausted if: (1) 180 days have elapsed since the complainant filed the complaint with OCR, and OCR has made no finding, or (2) OCR issues any finding in favor of the recipient. A civil action can be brought only in a United States district court for the district in which the recipient is found or transacts business. A complainant prevailing in a civil action has the right to be awarded the costs of the action, including reasonable attorney's fees, but these costs must be demanded in the complaint filed with the court. Before commencing the action, the complainant shall give 30 days notice by registered mail to the Secretary of the Department of Education, the Secretary of the Department of Health and Human Resources, the Attorney General of the United States, and the recipient. The notice shall state the violation of the Age Discrimination Act, the relief requested, the court in which the action will be brought, and whether or not attorney's fees are demanded in the event the complainant prevails. The complainant may not bring an action if the same alleged violation of the Age Act by the same recipient is the subject of a pending action in any court of the United States.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by
fostering educational excellence and ensuring equal access.*

Page 2 of 3 – Edward Morales

Please be advised that the College may not harass, coerce, intimidate, or discriminate against any individual because he or she has filed a complaint or participated in the complaint resolution process. If this happens, you may file another complaint alleging such treatment.

Under the Freedom of Information Act, it may be necessary to release this document and related correspondence and records upon request. In the event that OCR receives such a request, we will seek to protect, to the extent provided by law, personally identifiable information, which, if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy.

If you have any questions, please contact James Moser, Compliance Team Attorney, at (646) 428-3792 or james.moser@ed.gov.

Sincerely,

Emily Frangos
Compliance Team Leader

# Exhibit #24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit #23

2.3



## Purchase College
### STATE UNIVERSITY OF NEW YORK

Office of the Vice President for Student Affairs

Purchase College
State University of New York
735 Anderson Road
Purchase, NY 10577-1400

tel   914 251 6030
fax   914 251 6034

April 11, 2013

Edward Morales
CID 1100-624-434

Dear Edward:

I am writing to advise you that on April 8, 2013 the Campus Appeals Board met to consider your appeal of a finding issued by the Initial Conference Officer on April 3, 2013. Their recommendations were forwarded to me on April 8, 2013.

Your appeal was reviewed under grounds "(1) Fair consideration was not provided to the student, (i.e., there is evidence that some aspect of the hearing was prejudicial, arbitrary, or capricious); (2) New and significant information that wasn't reasonably available at the time of the hearing has become available."; and (3.) The sanction or remedy imposed is not in due proportion to the nature and seriousness of the offense." (Community Standards of Conduct, Section V-C-7-a-1,2,3).

After a review of all the materials submitted by you, and the records of your case provided by the Conduct Officer, the Appeal Board has denied your appeal on ground 1, as they did not find evidence that you were not provided fair consideration or that the initial conference was arbitrary, prejudicial, or capricious. The Appeal Board denied your appeal on ground 2, as they did not find new and significant information that was not available at the time of the initial conference. Finally, the Appeal Board denied your appeal on ground 3, as the sanction issued is in due proportion to the nature and seriousness of the offense.

In accordance with College policy, I have conducted a review of the Appeals Board decision and all available documents with President Schwarz. On the basis of that review, we have approved the decision of the Appeals Board.

As such, the original sanction as communicated in your Committee Hearing letter takes effect immediately as follows:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit #25**



**Purchase College**

STATE UNIVERSITY OF NEW YORK

Office of the Vice President for Student Affairs

Purchase College
State University of New York
735 Anderson Road
Purchase, NY 10577-1400

tel    914 251 6030
fax    914 251 6034

April 11, 2013

Edward Morales
CID 1100-624-434

Dear Edward:

I am writing to advise you that on April 8, 2013 the Campus Appeals Board met to consider your appeal of a finding issued by the Initial Conference Officer on April 3, 2013. Their recommendations were forwarded to me on April 8, 2013.

Your appeal was reviewed under grounds "(1) Fair consideration was not provided to the student, (i.e., there is evidence that some aspect of the hearing was prejudicial, arbitrary, or capricious); (2) New and significant information that wasn't reasonably available at the time of the hearing has become available."; and (3.) The sanction or remedy imposed is not in due proportion to the nature and seriousness of the offense." (Community Standards of Conduct, Section V-C-7-a-1,2,3).

After a review of all the materials submitted by you, and the records of your case provided by the Conduct Officer, the Appeal Board has denied your appeal on ground 1, as they did not find evidence that you were not provided fair consideration or that the initial conference was arbitrary, prejudicial, or capricious. The Appeal Board denied your appeal on ground 2, as they did not find new and significant information that was not available at the time of the initial conference. Finally, the Appeal Board denied your appeal on ground 3, as the sanction issued is in due proportion to the nature and seriousness of the offense.

In accordance with College policy, I have conducted a review of the Appeals Board decision and all available documents with President Schwarz. On the basis of that review, we have approved the decision of the Appeals Board.

As such, the original sanction as communicated in your Committee Hearing letter takes effect immediately as follows:

**Suspension with Persona Non Grata status effective Thursday, April 10, 2013 through August 1, 2013** - This sanction separates a student from the college for a specified period of time ranging from a portion or all of a given semester to a full calendar year, and is automatically accompanied by the assignment of a Persona Non Grata status from the college.  This means that you may not at any time for any purpose, be present on the campus of Purchase College, State University of New York.  No invitation from any person supersedes your Persona Non Grata status. Please be advised that if you are found on the campus, you are subject to arrest for criminal trespass.  In the event that you do not return to Purchase College, your Persona Non Grata status will remain in effect until such time as it is formally lifted in writing by the college.  Conditions for return to the college, if any, must be outlined at the time of suspension.

You are expected to comply with the terms as outlined in the sanctions assigned.  Failure to do so will result in further Disciplinary action.  Should you have any questions regarding the policies or procedures please feel free to contact me at (914) 251-6030.

This decision is final and is not subject to any further administrative review.

Sincerely,

Ernie Palmieri
Vice President for Student Affairs

**Exhibit #27**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PURCHASE COLLEGE**
State University of New York
735 Anderson Hill Road
Purchase, NY 10577-1400

**Student Financial Services**
Telephone:(914) 251-7000 Ext. 2
Facsimile: (914) 251-6099
E-Mail: financialservices@purchase.edu

**Semester/Year:** Spring 2013
**Student Name:** EDWARD R. MORALES (**CID:** 1100624434)

**Your Current Semester Balance:** 622.00
**Payment Due Date:** January 9, 2013

| | |
|---|---:|
| TUITION | 2785.00 |
| COLLEGE FEE | 12.50 |
| STUDENT SERVICE FEES | 812.50 |
| TRANSCRIPT FEE | 5.00 |
| APARTMENT TRIPLE | 2591.00 |
| TIME PAYMENT PLAN | 45.00 |
| TIME PAYMENT PLAN LATE FEE | 50.00 |
| PAST DUE | 622.00 |
| **TOTAL CHARGES** | **6923.00** |
| CREDIT CARD | 100.00 |
| **TOTAL PAYMENTS** | **100.00** |
| PELL GRANT | 1387.00 |
| SUB. STAFFORD EFT | 636.00 |
| SUNY TUITION CREDIT | 285.60 |
| TUITION ASSISTANCE PROGRAM | 1462.50 |
| UNB. STAFFORD EFT | 3465.00 |
| **TOTAL RECEIVED AID** | **7236.10** |
| SUNY TUITION CREDIT | 285.60 |
| UNB. STAFFORD EFT | 749.50 |
| **TOTAL REFUNDED** | **1035.10** |

**YOUR SEMESTER CALCULATION:**

| | |
|---|---:|
| Total Semester Charges | 6923.00 |
| Total Semester Payments | 100.00 |
| Total Semester Aid | 7236.10 |
| *Refunded To You | 1035.10 |
| BALANCE DUE | 622.00 |

**\* TUITION, FEES, ROOM, BOARD, FINANCIAL AID AWARDS, AND CREDITS ARE SUBJECT TO CHANGE.**

*Refund will be furnished to the recipient/borrower once all aid has come in and all balances are settled with our office. If funds are coming from financial aid awards, be advised that incomplete documents/applications will affect the timing of your financial aid disbursement. Please be sure that you have completed all that is required for your financial aid to be processed by our office. *Unsure?* You may contact our office from the contact information above.

**\* Students enrolling for less than 12 credits -- Please contact financialservices@purchase.edu (Subject: 'Part-Time Adjustment') to adjust your account. Please note that an adjustment to part-time status will affect your financial aid and on-campus housing eligibility (if applicable).**

| | |
|---|---|
| **Federal Stafford Loan**<br><br>**(STUDENTS)** | **Step One:** Please complete your Entrance Interview at https://www.studentloans.gov/.<br>(For first-time borrowers only)<br><br>**Step Two:** Please complete your Master Promissory Note (MPN) at https://www.studentloans.gov/.<br><br>*NOTE: If you have already completed these steps from the Fall 2012 Semester, you do not need to complete them again for the upcoming Spring 2013 semester.* |
| **Federal PLUS Loan**<br><br>**(PARENTS)** | **Step One:** You must first complete the Direct PLUS Loan Application Form for credit check authorization (can be found online at www.purchase.edu/financialservices under 'Forms').<br><br>**Step Two:** If your credit check is approved for the PLUS Loan, the parent who was approved must sign the Master Promissory Note (MPN) online at https://www.studentloans.gov/. (For first-time borrowers only)<br><br>*NOTE: If you have already completed this loan process from the Fall 2012 semester, you would not need to complete it again for the upcoming Spring 2013 semester. However, if you want to increase the loan amount you originally borrowed or are taking out another loan for Spring, you must complete a new Credit Check Form.* |

\* Financial Aid Awards listed above are ONLY valid if you are registered for Spring 2013 and are based on institutional, state, and federal fund availability, and are subject to change. Tuition Assistance Program (TAP) awards are estimates, are contingent on a New York State budget, and are subject to change.

# Exhibit #28



https://securemail.purchase.edu/owa/?ae=Item&t=IPM.Note&id=RgAAAAAWWtAoAxqaSbGbLPV3klWBwAmlKleKVmBSo2256mzB3TWABadeQ7AAAAkk146sIA...   1/1



**Office Outlook** Web Access | Type here to search | This Folder | Address Book | Options | Log Off

**Mail**

- Deleted Items (21)
- Drafts [78]
- Inbox (19)
- Junk E-Mail
- Sent Items (5)

Click to view all folders »

- Attached Received (2)
- E-mails from students
- Letters From FED & State
- Notes From Financial Aid
- Notes From Registar

Manage Folders...

Reply | Reply to All | Forward | Move | Delete | Junk | Close

## FW: Urgent Accommodation
### MORALES, EDWARD

**Sent:** Wednesday, April 03, 2013 12:56 PM
**To:** Bianchi, Carrie

Ms.

Binachi please file the email below.

Edwardo Morales
SUNY Purchase College
735 Anderson Hill Rd
Box #0004
Purchase, NY 10577
(914)751-4388

---

From: MORALES, EDWARD
Sent: Wednesday, April 03, 2013 11:28 AM
To: Salter, Donna
Subject: RE: Urgent Accommodation

Thanks,

Again, as I explained on my earlier email. It is not understandable why the bus
cannot stop close to the Starbucks class area, where it passes through? you said
that you will not charge schedule for me. You must understand that--although I do
not look like--I am a disabled person, that some time cannot even walk.There is
not excuse for your attitude this morning and in other times too. Furthermore,
your called the police on me; which makes it even more irresponsible. Knowing
that I was up-set, because the driver did not want to stop near the class
building. You have customer service responsibility towards the students which are
your clients also. When a client is up-set, your job is to assist on the issue,
carefully so not to further up-set your client so the issue is to escalate
further. Again this is not the first time you act this way. I have requested ADA
accommodation for that bus to stop to facilitate my commuting to class.

I respectfully demand your to apologies.

Edwardo Morales
SUNY Purchase College
735 Anderson Hill Rd
Box #0004
Purchase, NY 10577
(914)751-4388

---

From: Salter, Donna
Sent: Wednesday, April 03, 2013 11:05 AM
To: MORALES, EDWARD; Bianchi, Carrie
Subject: RE: Urgent Accommodation

Mr. Morales:

As I tried to explain to you when you were in my office this morning, this is an
express bus to and from the White Plains train station to accommodate students
who have 8:30 classes.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

Donna Salter
Director | Office of Parking and Transportation
Purchase College Association, Inc.

T: 914.251.6177 | F: 914.251.6169
donna.salter@purchase.edu
Facebook | Map
735 Anderson Hill Rd | Purchase, NY | 10577
Campus Center North 1014


-----Original Message-----
From: MORALES, EDWARD
Sent: Wednesday, April 03, 2013 10:57 AM
To: Salter, Donna; Bianchi, Carrie
Subject: FW: Urgent Accommodation

Mrs.

Salter.

In regard to the email I sent to you earlier this morning, It has brought to my
attention that the 8:30 am student bus from white plains to purchase, has been
specially scheduled as an express bus for the school  staff work hours and not
for the students class hours. I kindly ask you to verify this.


Respectfully,


Edwardo Morales
SUNY Purchase College
735 Anderson Hill Rd
Box #0004
Purchase, NY 10577
(914)751-4388
_____
From: MORALES, EDWARD
Sent: Wednesday, April 03, 2013 9:34 AM
To: Bianchi, Carrie; bill.howard@suny.edu; Butler, Walter;
wendy.kowalczyk@suny.edu; Mait, Ronnie; Salter, Donna
Subject: Urgent Accommodation

Mrs.

Bianchi.


This morning the 8:30 am  bus driver did not stop at my request at any stop but
the CCN stop. The driver was very rude. I went speak to Donna Salter (director of
Transportation), she was also very rude. Mrs Salter is note the only time that
uses derogatory (unpolite) word and expressions, and she is never in a customer
service mood. I explained to her that I am disabled students as she new, and I
have classes At the Starbucks building. She  said that buses have to keep
schedule and that the schedule was not to be changed for me. She did not
explained to me why the bus did not stop nearer the Starbucks building. On the
bus there were other students that back me up on my complaints. It was my
understanding that Mrs. Salter did called the police because I was upset. I was
upset because she was rude but never disrespectful. I also have the wright to
complaint since I am paying for the service. On the way to class I stop and spoke
with the police and I explained the issue. Also police continue asking for Driver
License, where they are not supposed to if school ID ism provided.


++++++++++++++++++++++++++++++++++REQUEST++++++++++++++++++++++++
Mrs Ronnie Mait.

I, Edward Morales, being a Partially--Permanent Disabled person, hereby request
transportation accommodation on the 8:30 am bus from CCN to the next stop CCS.


Edwardo Morales
SUNY Purchase College
735 Anderson Hill Rd
Box #0004
Purchase, NY 10577

Microsoft
Office Outlook Web Access | Type here to search | This Folder | 🔍 | 📖 Address Book | ⚙ Options | ❓ Log Off

| Mail | 📇 📶 📑 | 📩 Reply | 📩 Reply to All | 📩 Forward | Close |

- 🗑 Deleted Items (494)
- 📝 Drafts [233]
- 📥 Inbox (44)
- Junk E-Mail
- 📤 Sent Items (5)

Click to view all folders ⌄

- 📁 Attached Received
- 📁 E-mails from students
- 📁 Letters From FED & State
- 📁 Notes From Financial Aid
- 📁 Notes From Registar

📁 Manage Folders...

## OCR Electronic Complaint Submission
ocr_complaint@ed.gov [ocr_complaint@ed.gov]

**Sent:** Tuesday, February 12, 2013 6:02 AM
**To:** edward.morales@yahoo.com; OCR New York [OCR.NewYork@ed.gov]

PLEASE DO NOT REPLY TO THIS E-MAIL. THIS E-MAIL ADDRESS IS USED BY DEPARTMENT OF EDUCATION AUTOMATED SYSTEMS AND IS NOT MONITORED.

Your complaint with the Office for Civil Rights, a copy of which is reproduced below, has been automatically forwarded to the following office for review:

Office for Civil Rights/ED
New York Office
32 Old Slip, 26th Floor
New York, NY, 10005-2500

So that we can best assist you, we call your attention to the following:

1. If you need to communicate with OCR regarding your complaint before you are contacted directly, please do not reply to this message, which would result in your reply going to a send-only server address. Instead, please direct your correspondence to the above office at OCR.NewYork@ed.gov.

2. If you need to modify or supplement your complaint, please do not use the complaint form to submit another complaint with the new information. Instead, you may simply send an email to the office that has your complaint. Filing duplicative complaints may impede our ability to review your concerns in a timely manner. (If you have a separate complaint involving other matters, you may of course use this form to submit it.)

3. Remember that before OCR can process your complaint it must receive at the above address a signed copy of the Office for Civil Rights Consent Form, which you can obtain at http://www.ed.gov/about/offices/list/ocr/edlite-consentform.html.

4. It is recommended that you print a copy of this message and retain it for your records.

The following information has been sent to the specified office:

OCR COMPLAINT FORM

1. Enter information about you.

Your First Name: edward          Your Last Name: morales

Your Address: 735 Anderson Hill Rd

City: Purchase

State: NY     Zip Code: 10577

Best Time to Call You: DAY     Primary Phone No: 9147514388

Alternative Phone No: 9147514388

Your Email Address: edward.morales@yahoo.com

2. Who else can we call if we cannot reach you?

Contact's Name:

Daytime Phone No: 9147514388

Relationship to you:

3. Who was discriminated against?

        Someone else

        Injured Person's Name:                    Daytime Phone No: 9147514388

Relationship to You (eg. son or daughter):

Evening Phone No: 9147514388

Injured Person's Address:

City:          State:

Zip Code:

4. What institution discriminated?

Institution Name: Purchase College

Address:  735 Anderson Hill Rd

City: Purchase

State: NY

Zip Code: 10577

School or department involved: Residential Life

5. Have you tried to resolve the complaint through the institution's grievance process, due process hearing, or with another agency?

No

Agency Name:

Date Filed:  (mm/dd/yyyy)

Status:

6. Describe the discrimination

OCR enforces regulations that prohibit discrimination on the basis of race, color, national origin; sex; disability; and/or age.

All that apply:

disability age retaliation you filed a complaint or asserted your rights

Why you believe the discrimination was because of race, sex, disability, or whatever basis you indicated above or why you believe the action was retaliatory.

On Feb. 7 I, Edward Morales, accepted room swap with another student,  EINSTEIN CORREA, which recommended by residential life. The reasons of the room swap was economical for me, and for Mr. Correa was because he was being verbally abused, and drug issue with one of the room mate (Chistpher DeRoss), which later I find-out he was on probation here at school for use of illegal drugs and for this same person improper homosexual activities. On this day, the 7th of Feb. I and Mr. Correa moved, and when first got to the new apartment(1K2) the apartment was extremely dirty and with immense odor to marijuana, which I am allergic to. At night I confronted Mr. DeRoss , and explained my rules for sharing a common space; cleanness and no illegal drugs. Mr Deross agreed by showing a box full of marijuana. The next day when I came back both students were gone. On Feb.9th  In side my apartment, my toasted  over toasted a slice of bread treaggering the smoke fire alarm. I did called the campus police to let them know there was no fire but the alarm was to be turned off. As part of my accommodation for disability is that I need assistance for vacating a building in school. My apartment here at school is my only and permanent address, thus assistance was not available, hence it cannot be mandatory and penalized, and community standards should follow ADA accommodation pressing charges.  In my own apartment--inside--is not school property, and if a police officer that is disrespectful inside my home, does not have provable cause that a crime has been committed thus for going into my bedroom when the bread on the toaster bunt, which is highly a "Damages, defaces, destroys, or tampers with property owned by the college or in the possession of another person", I have the right to ask him to leave.I do have the police report in front of me, I will email it to you tomorrow. The police report distort the facts--as usual-- it does not mention that  the officer requested "driver license" instated of the school ID"since I do not fit the student profile" and "he was sure that this could not be my permanent address". I have the right to terminate any permission to enter my protected home, when if I feel threatened to be arrested if I do not produce  my driver license, he later called his supervisor and he told leave the premises, he then apologized and saying "he was new on the job" This same police report was  use for the configuration of the charges, and inside my home is not school grown, specially when it is my only permanent address.

As a result of both incidents and a tip from a school official that the following action a planned retaliation to expel me from school due to the civil right violations filed with your office, the school issued the following:

SPECIFICATION OF CHARGES FOR DISCIPLINARY ACTION

TO:                     Edward Morales
CID #: 1100-624-434
K012A

FROM:                   Melissa Jones, Director for Community Standards

DATE:                   February 11, 2013

The Division of Student Affairs has received information that you were allegedly involved in a violation reported on February 7, 2013 when Community Standards received a report regarding an incident inside K1-2 and on February 9, 2013 when University Police reported an incident involving a fire alarm. As a result you are being charged with violating College Regulations specifically:

| ITEM | CODE# | DESCRIPTION/*RANGE OF SANCTIONS |
|------|-------|--------------------------------|

Charges related to February 7, 2013:
1.                      D.3                     Damages, defaces, destroys, or tampers with property owned by
the college or in the possession of another person.
Minimum: Reprimand          Maximum: Expulsion

2.                      F.6                     Fails to respect the ongoing legitimate functions of classes,
meetings, office procedures, study, sleep, or any authorized College activity.
Minimum: Reprimand          Maximum: Suspension

Charges related to February 9, 2013:
1.                      C.3                     Threatens, harasses, or intimidates any person, and/or uses words
which reasonably tend to incite an immediate, violent reaction and are specifically directed toward another individual (See also the College's Affirmative Action and Sexual Harassment policies).
Minimum: Disciplinary Probation          Maximum: Expulsion

2.                      C.6                     Engages in any behavior against a person which significantly
interrupts or prevents that person from carrying out duties and responsibilities associated with his/her role as faculty, staff, or student at the College.
Minimum: Reprimand          Maximum: Disciplinary Probation
3.                      E.5                     Refuses to vacate buildings when any fire emergency warning
system is activated.
Minimum: Residence Probation          Maximum: Suspension

3.                      F.1                     Fails to respond to a reasonable request of College officials who
are acting within their authority. College officials include faculty, staff, administrators, and students who are carrying out assigned work responsibilities.
Minimum: Reprimand          Maximum: Disciplinary Probation


*More severe sanctions may result for repeated, aggravated or multiple violations.

These charges will be discussed at an Initial Conference conducted by me on Wednesday, February 13, 2013 in my office, Student Services Building (3rd floor) room 317 at 12:30 pm.  If you have a conflict and need to reschedule, you may request to do so by contacting me at (914) 251-6033.  The office is open 9:00 am – 5:00 pm.  You must leave a message if I am not available.  Copies of the Incident Report(s) will be available at the Initial Conference.  You can access the Community Standards of Conduct online at http://www.purchase.edu/departments/StudentAffairs/policies/communitystandards.aspx

The purpose of this conference is to hear your side of the story about the incident and/or police report(s) that we have received.  For specific information on what to expect at your Initial Conference, please access this link https://www.purchase.edu/Departments/StudentAffairs/Policies/process/notificationofcharges.aspx

If you would like to speak with the Ombudsman, you can reach Paul Nicholson at paul.nicholson@purchase.edu or x6522. For more information concerning the Ombuds Office, please visit the following link: http://www.purchase.edu/Departments/Ombuds/default.aspx.

If you fail to appear at the above stated time and place or make alternate arrangements, all matters described will be considered true and you will waive your

right to a hearing.  Appropriate action will then be taken by the College.  If you have
any questions or concerns regarding this information you should contact my office for
assistance.

7. Your complaint must be filed within 180 days of the discriminatory action

When did the last act of discrimination occur?

Enter the date:  (mm/dd/yyyy)

Are you requesting a waiver of the 180-day filing time limit for discrimination that
occurred more than 180 days before the filing of this complaint?

No.

8. What would you like the institution to do as a result of your complaint – what
remedy are you seeking?

To conduct an investigation of the actions of residential life, in special, Ms. Melisa
Jones, and compensate for their wrong doing in addition to all other pending
violations.

Do you have written information that you think will help us understand your complaint?

No

**Exhibit #30**

# Personal Statement

It is difficult to write a personal statement when there is so much to say and explain. To make it simple and in plain english as a second language. I will divide it into several parts. 1) is a brief biography of me, and a brief account of some experiences of my hardship as a teenager.  2), I will discuss my academic performance since I came back to school which, it needs to be explained. 3) my vast working experience in the US, disability issues related to the WTC terrorist attack, discrimination based on civil rights issues.  4) diversity why is so important and the relation to civil rights. Fifth, and finally 5) why I could be a great asset as a student of your institution for the class starting the fall of 2013.

*First,* I was born in Santiago, Chile in October 1959, I *think* I am 53 years old; I will let you do the math. I was born in a good family of a Christian-Catholic religion. My family was poorly educated and raised in an economically poor, very strict and old fashion teaching environment. Following this family tradition of teaching, my father often verbally and physically abused us. This was common in those days, not for me only but for many other children in others families with the same old traditions of raising their children. As the years passed I learned to forgive and understand these abuses, where parents with poor education were prompted to discipline their children, often with violence. I can compare these old ways of disciplining children with ways some people discriminate against others today. However, new generation—we—sometimes point-out mistakes that others have committed in the past to justify our wrong doing in the present.  Today highly educated people continue violating the civil rights of others, but this time, in different ways. Most of the times these discriminatory acts are without violence but the perpetrator are hiding behind big titles or positions and-or the protection of high power employers. I will discuss this further below.

There were other difficult times those days. With the onset of the Socialists and Communism in Chile by the legally elected president, Mr. Salvador Allende, in 1970, times were to become difficult. Violence, hunger and humiliation were common with this new regime. This new ideology, regardless of its good intentions, it was not well understood. They were too advanced for those times.  Today many people regard Mr. Allende as a martyr, because he committed suicide for his cause and because his ideologies of the socialism –not communism--are well in practice today in Latino America. Unfortunately, like any brand new policy especially in politics, it did not come with opposition. This opposition created an immense hardship, ironically, more so for the same class of people the new regimen was representing. This hardship was not suffered by me only, but by many people. For example, hard old bread was usually bought on the black market. Once the bread was obtained it could be submerged in water to be softened for later be to and placed into the oven to suck the moisture out, thus we could eat soft warmed bread, just like fresh out of the bakery. Since there was only one chance to bring the bread back to life with this procedure, it meant the bread will only stay somewhat soft for few minutes; hence, it would have to be eaten immediately. There were so many hardships accounts with this communist regimen that it would take many pages to tell them.  However, I believe that no hardship comes without its positive learning experience. For example, never take in life anything for granted.  Feel proud about hard work and the appreciation of small things that life has to offer. Thus, giving thanks to the higher power—who ever that is for you-- for our very existence. Because of these hard times, and seeing how

1

hard it was for my parents to put food on the table for me and my three other brothers... I decided to do something about it, by seeking a better opportunity outside Chile. It was very difficult in those days to leave the country, furthermore, to be admitted to another country, e.g. the US; which at the time was in a very good political and economic standing.

For some reason it was my destiny to make my life and myself as a person in the United States. Due to emotional requests to a nice and understanding Consul at the US Consulate Embassy in Santiago, Chile... in 1979 I was granted a visa to enter the United State. Getting here (to the US) was another story for another book. Please note these accounts are not to create pity and/or get the reader off subject. But to demonstrate what hardship was those days, and also to make the reader understand what is behind people like me and many others with similar stories; these immigrants that have come to this country to make the immigration history so important in our way of life. The founding fathers' formation of the US Constitution is a testimony of the hardship that first immigrants like me had to endure for others to have a better opportunity. The same US Constitution and Bill of Rights that today is the landmark for most democracies around the world. The same US Constitution that the United State Supreme Court uses as the foundation to uphold on all its landmark decisions; the same decisions that —in most instances— are heard and read in other countries and used as foundation for the development to implement changes in their own laws of their own legislatives branches. In Sudamerica --especially in Argentina and Chile--these US Supreme Court landmark decisions are closely monitored.

*Second*. In relation to my academic performance, I hereby with this quotation that was sent via email by my adviser, Mrs. Kathleen Ceng, and with her authorization I include it:

> "Since returning in the Summer 2011 semester, you have completed 71 credits. Your cumulative GPA over those 71 credits is 3.02. To further break it down, 44 of those 71 credits have been of a legal nature. Your cumulative GPA for those 44 credits specifically related to law is a 3.33. The CLEP will not impact your GPA at all, since it is treated as transfer credit. You can certainly copy and paste the information I provided into your personal statement. If your grades for the 12 credits you are taking in the Spring 2013 semester are similar to those grades that you've earned over the last several semesters, your cumulative GPA since you've returned would increase." (Kathleen Ceng, Purchase College Adviser).

Here is where I respectfully ask the reader of this statement to use the best of judgment possible, and taking in account all the discriminatory hardship—whether proven or not-- I have to endure here in school, I can safely say that my GPA would have been higher if these discriminatory issues would have not taken place. I am sure you the reader will understand.

*Third*, I am a naturalized US citizen since 1987; but it is more important to note that I consider myself an American, because this country has giving all the opportunities I needed in life that no other would had had. I am very grateful for all the opportunities me and my family have received from government institution, especially in development, and especially from the Federal Government. As I mentioned before in this statement, I came to the US in August 1979. I was the first of the family in the United States. I was 18 years old then. As thousands of other immigrants, I opened the door to many others,

2

some family and others just good friends. It will be interesting to know how many other generations will be born in the US that will bear my name, and others that will not bear my name, but will be here because of my actions as first immigrant.

In 1979, when I first came to the US, the country (the US) was different; work was best paid and plentiful, and money was good, excellent for first immigrants like me. Because of these reasons and others, going to school was not always a priority, but saving money was. Five years later, in 1984, I was able to go back to Chile to see my family, which until today it was/is the hippie's day of my life. To make a long story short; in 1987 I became an US citizen with all the rights to file petitions with the US dept. of Immigration and Naturalization. I brought my parents first and my brothers soon after.  Now there are more than 10 US born children, with a total family of about 25-30 members--depending on how you define family member, there are more than that, given the different social construction of it.

In relation to my work history; I cannot—for obvious reasons—name my entire employer history since It will take some time, and since first immigrants are always on the look-out of better opportunities.  I have had, throughout my 34 years in the States, many opportunities. To summarize; from the lowest paid jobs, a dishwasher, to many different sales positions including Real Estate Broker, to also having been owner of several businesses some very successful, some not too much. The most successful, being a limousine company which I started with $2,000, which a few years later sold for $250,000; money that was used mainly to pay for medical expenses for very sick family member. An action I never regretted. My highest working position was held in Wall Street as a Stock Broker and later as a Trader of financial instruments, mainly commodities, a job that I also performed in the private sector, for my own account and some of my family's accounts. This brings us to the World Trade center (WTC) attacks, my involvement and subsequent accident there.  September 11th, 2001, was by far the most devastating day of my life, in terms of my physical and mental health. That day I was just in to work. At the time I was a Stock Broker working at the south tower of the World Trade Center. I worked on the 33rd floor at a small but very successful French company. My intuition of experience and fear inside me said to evacuate the building. Realizing that something had hit the building was enough for me escape. Other younger and very bright co-workers did not follow my advice of evacuate the building. It was intuition that something worst was to come, and that save my life.  It was too late for others. I will not explain further the details of the incidents that came right after for obvious reasons and due to the sensitivity of the events. I can say though that due to falling debris I hurt my head and my back. This last injury, due to a later car accident, became a disabling injury and further classified as "Partially-Permanent-Disabled" by New York State Working Compensation Board. Two years later the same classification was granted by the Social Security Disability Administration, thus retiring me as non-competitive worker; in other words, who is going to hire me? However, this does not mean that I cannot work. I can but on disadvantage, or in non-competitive position professional position, e.g. a Lawyer. Unfortunately this brings us to American with Disability Act (ADA) discrimination, Age Discrimination, Invasion of Privacy , Retaliatory Actions and possible others by the SUNY Purchase College staff; discriminations that started from the first day I came back to school in the Summer of 2010, until today. Seven separate complaints have been filed with the US dept. of Education, civil rights unit, in which three are still pending and being investigated. Due to the sensitivity of the complaints, and to protect the

3

school officials involved, I prefer not to disclose the specifics of the violations, with the exclusion of the required and pursuant to 42 U.S.C. § 6104(e)(1) 30 day notice herein enclosed.

*Fourth,* diversity; I have worked my way through school and will earn a bachelor's degree in legal studies as I mention before. It has been a long—because of personal disability difficulties and other personal issues that have interacted with school—but a rewarding process never the less. College made me a better person; it opened the door to meet other people with similar problems issues. College made me aware that civil rights issues—discrimination--still very alive. College made me realize the necessity for leadership in civil right issues. College made me warfare of the lack of interest of school officials in solve problems so important as respecting fundamental rights of the students. I remember in one of my first law classes, we discussed the case where the US Supreme Court issues a landmark edition, stating; ". Students do not lose their constitutional rights at the schoolhouse door", and goes further stating that "schools must be the primary example of civil right obedience"; see *Tinker v. Des Moines School Dist.,* 393 U.S. 503 (1969). It is difficult—but intellectually rewarding—to demonstrate to powerful people that students rights' in the context of higher education often includes, not limited to:

- the right to form groups of their choosing to express their views, and receive institutional funding for them;

- the right to speak freely, assemble, and demonstrate;

- the right to fair and effective teaching and grading at the advertised grade level;

- the right to information required to make safe and informed decisions on campus;

- the right to due process and an impartial hearing in any disciplinary matter;

- the right to participate in institutional governance;

- the right to clear and effective teaching;

- the right to actualization of advertised promises in institutional content;

- the right to do as they wish, so long as they harm no other;

- the right to information privacy;

- the right to protection from discrimination;

- the right to protection form search and seizure without due cause;

- the right to protection from biased or unjustified regulations;

Especially at large public research universities with large residential populations (flagship/land-grant universities) students organize around these issues using their student government to negotiate with the university administration.

College opened my eyes to a world beyond my personal experience. It exposed me to the politics of economics, it forced me to wrestle with the lack of equality and efficiency in social policies, and it helped to shape my vision and philosophy. I encountered views that I sometimes found troubling. I strongly believe that people should be granted the very basic—the inalienable the fundamental--rights and with all the protection from exploitation, both locally and globally. Diversity is civil rights. Not applying diversity to any type of social event, environment and governmental activity—specially schools—is discrimination. Fear of retaliation can never be an excuse for advocating for others. In my case it the opposite, It empower me with the right to do something about it; as I have done for other student suffering of discrimination. I can make note of many other landmark cases such as:

*Community Schools v. Seattle School District* No. 1, 127 S.Ct. 2738, 2751 (2007). There, the Supreme Court considered whether a student assignment plan that relied on racial classification to allocate slots in oversubscribed high schools was constitutional.

*Rust v. Sullivan*, 500 U.S. 173, 200 (1991). (*Referencing Keyishian v. Bd. of Regents, State Univ. of N.Y.,* 385 U.S. 589,603, 605–06 (1967) ("[W]e have recognized that the university is a traditional sphere of free expression so fundamental to the functioning of our society that the Government's ability to control speech within that sphere by means of conditions attached to the expenditure of Government funds is restricted by the vagueness and overbreadth doctrines of the First Amendment.").

*Broadrick v. Oklahoma*, 413 U.S. 601, 612–13 (1973), Overbreadth attacks "have been entertained in cases involving statutes which, by their terms, seek to regulate 'only spoken words.'" More related to the overbread doctrine case are: overbreadth doctrine are: again in *Tinker v. Des Moines Ind. Cmty Sch.Dist.,* 393 U.S. 503 (1969) (implicating a school policy*); Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667 (1973)(same); *Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675 (1986)(same). See also *Widmar v. Vincent,*454 U.S. 263, 268–69 (1981)where 'the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.'" 408 U.S.169, 180 (1972).*Widmar v. Vincent,* 454 U.S. 263, 268–69 (1981) in which the court said "With respect to persons entitled to be there (the institution[s]), our cases leave no doubt that the First Amendment rights of speech and association extend to the campuses of state universities."

In the context of school anti-discrimination policies, our Court has emphasized that "Harassing" or discriminatory speech, although evil and offensive, may be used to communicate ideas or emotions that nevertheless implicate First Amendment protections. As the Supreme Court has emphatically declared, "[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea offensive or disagreeable." *Saxe v. State Coll. Area Sch. Dist.,* 240 F.3d 200, 209 (3d Cir.2001) (quoting *Texas v. Johnson*, 491 U.S. 397, 414 (1989)); and many other cases. Please, I like to emphasize that in issues of discrimination my experience has been limited to school issues and employment, and that discrimination issues regardless of who in

5

the perpetrator it does not make any difference. Whether it is the school system or the white house; the principal is the same. A society like ours' which is created and composed by multicultural social construction, there is no room for discrimination of any kind.

*Fifth,* and final, because my vast life experience, hardship, discrimination case, above average use of logic, energetic and outgoing personality, perfect bilingual—English, Spanish--, extreme sensitivity to defend my and the civil rights of others, my fascination with constitutional law, the experience I acquired having represented myself as pro-se for the better part of seven years of an ignorant custody battle, thus ironically today enables me to understand the legal system like no other as student of Legal Studies . Of course the most important reason, the enormous example to the new generation of Morales and the ones to come to be. For these reasons and many others, I kindly ask you for acceptance to your well-earned prestige school of law and institution notwithstanding the ongoing issues of discrimination with Purchase College, also part of SUNY.

Respectfully,

Edward A. Morales

Feb. 28th, 2013

6