Edward Morales
110 N.3rd. Ave. #2m
Mount Vernon, New York 10550
(914)410-7647
eam6000@gmail.com



*Correct Address*

# UNITED STATE FEDERAL COURT
## New York Southern District
*The Hon. Charles L. Brieant Jr.*

U.S. DISTRICT COURT
FILED
AUG 2 6 2013
WP
S.D. OF N.Y.

1-Edward Morales. (Pro-Se).,*et.,al.*
JOHN DOE.,

*and all other similarly situated
individuals...*

**CASE #13-CV-2586 (NSR)**

**Hon. *Nelson S. Roman***

**Plaintiff [s]**

**Vs.**

1-The State of New York.,*et, al*

2-S.U.N.Y. Purchase College (SPC).

3-State University of New
York(SUNY)

4-Law School Admission Council
(LSAC)

5-Purchase College University Police

6-SUNY Binghamton University (BU)

7-Town of Harrison

8-William Howard

9-Thomas Schwarz

10-Wendy Kowalczyk

11-Melissa Jones

12-Danielle DaGosto

13-Qui-Qui Balascio

14-Richard Nassisi



**1-Amended Compliant**

Amended Summons Served
By U.S.M.S

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED 8/26/2013

1/106

15-Ernie Palmieri

16-Ricardo Espinales

17-Marc Burdzinski

18-Lois Wald

19-Snadra Starki (BU)

20-Kyle Saud

21-Daniel Pearson (BU)

22-Bill (William) Baskin

23-Louise Yelin

24-Walter Butler

26-

27-Sheryl Secor

28-

29-John Doe #1

30-John Doe #2

31-


30-JOHN DOE., *et al.*, and all other
similarly situated individuals...


_____
            ***Defendants***
_____

## I-Introduction-Procedural History

You Honor,

**(1)As required by this court this Amended Complaint last day of filling-August 24th, 2013, arrives on a Saturday; hence, Plaintiff pursuant to FRCP; Rule 25 (a) (1) Subdivision (c); & Rule 26 (a),(1) (A)(C), (3) (A) (B) of timely filling, Plaintiff hereby as defined by this Rule, "next day" files on this day, August 26th, 2013.**

(1a) Plaintiff hereby in compliance agreement with the motion written in part by the New York State Assistant Attorney General (AAG), and so "GRANTED" by your Hon. Plaintiff hereby move to amend the original complaint filed with this court, on April 18th, 2013 as follow:

(2) On the same day/date of the filling of said complaint... April $18^{th,}$ 2013, Judge Ramos— presiding Judge at the time—granted a temporary injunction for relief which allowed Plaintiff to return immediately to school pending a preliminary hearing to be held on April 24th, 2013. On this hearing, and as stated by Mr. M. Klakman (AAG for the State of New York), at the time representing Defend- ants; T. Schawrz, M. Jones, Ernie Palmeiri, SUNY Purchase and SUNY (Sate University of New York)--however, Defendant Walter Butler, was not being represented by the State, since Mr. Butler (Sargent at the University Police Dept.), has not requested representation at the time--vacated said In- junction, attributed to the objections of the Defense that there is and will be "no permanent academic and financial harm to the Plaintiff ,"implying that said harm would /cannot be enforceable or proven by the disciplinary suspension in question; this statement was in direct contrast with the supporting evi- dence provided by Plaintiff on the original complaint filed on April 14th, 2013. Plaintiff on his original complaint provided supported evidence to substantiate the current, but not limited, permanent academ-

ic, financial and emotional harm that are now indisputable facts. These facts will be eloquently

be presented in this Amended Compliant.

(3) In addition the AAG for the State of New York, intentionally producing several sworn statements signed by Purchase and SUNY officials that were inaccurate, misleading, and retaliatory in nature, and with prejudice on its face. These statements were paramount to the outcome which deprived Plaintiff equal right to education under the Article 26 of the Universal Declaration of Human Rights and Articles 200 and 14 of the International Covenant on Economic, Social and Cultural Rights; the 1960 UNESCO Convention against Discrimination in Education and the 1981. Furthermore, the right to education is a fundamental human right. Every individual, regardless of race, gender, nationality, ethnic or social origin, religion or political preference, age or disability–which this amended complaint is so eloquently renders-- is entitled to a free elementary education and equality on admission to higher education. This right is explicitly stated in the United Nations' Universal Declaration of Human Rights (UDHR), adopted in 1948, which states as fallow:

*"Everyone has the right to education. Education shall be free, at least in the elementary and fundamental stages. Elementary education shall be compulsory. Technical and professional education shall be made generally available and higher education shall be equally accessible to all on the basis of merit".
...(Article 26)*

Ensuring *access to education* is a precondition for full realization of the right to education; hence, it is correct to assume that no school officials--of any kind—shall have the right,

Implied rights, to arbitrarily intimidate suspend  and/or terminate access to equal education furthermore, to exercise their [implied] protected-abused of power (employer legal protection). This universal

right to education, shall not be discriminated and segregated, furthermore, not terminated without due process of the law.

(4) Hon. Judge Ramos at this hearing gave Plaintiff the option to amend the original complaint filed as, with a demonstration that if damages (as said above) to the Plaintiff were caused by Defendants with this suspension (not LSAC)…."the state will have to wright a check"; Judge <u>Ramos also use his hands simulating the action of writing a check. This is a clear position where Defendants are at this point.  Defendants must compensate Plaintiff for but limited to--their intentional infliction of emotional (humiliation and others) permanent academic harm.</u>

(5) Plaintiff herein on this Amended Complaint is adding, but not limited to; permanent financial-economic, academic, physical [Plaintiff being a qualified disabled person as defined by 42 U.S.C. § 12131 (2), and Section 504 of the Rehabilitation Act of 1973 29 USC sec (701-796),] and emotional harm and others (see the damages section) attributed to all Defendants and not limited to the State of New York, herein added as new defendant.

(7) In addition to these predicted concurrent-permanent harms, Plaintiff herein is accusing Defendants of premeditated conspiracy to inflict physical and emotional harm to Plaintiff by using their power to persecute via false/misleading, unconstitutional warrant for his (Plaintiff), his arrest. Hence, Plaintiff is now in constant fear for his physical integrity and even the loss of his life.

(8) After Plaintiff's arrest an intention of incarceration, Plaintiff became under the UNOFFI-CIAL protection and or comfort of the SUNY Binghamton University and its Police Dept. to whom Plaintiff is concurrently and deeply grateful for their trust and understanding of Plaintiff's persecution by some SUNY and Purchase College officials.

(9) In addition to all complaints of civil rights violation presented by Plaintiff on his original complaint--herein also amended--and as a direct result of the Hon. Judge Ramos court ruling; Plaintiff herein state the following, but not limited, concurrent, permanent and accrued damages:

a) As predicted by Plaintiff on the injunctive hearing of April 24th, 2013 presided by Hon. Judge Ramos....Purchase College notified on or about May 15th, 2013 of the recall of his student loans. This action directly contradicts Defendant's statement of non-financial or economic hardship. Furthermore, this information was readily available by defendants, but not limited, to Mrs. Sheryl Secor, Wendy Kowalczyk and Purchase College Financial Aid officer manager Mr. John Sicat. Please note that as many as some other and/or all individual Defendants may have had knowledge of this harm currently being inflicted upon Plaintiff.

b) As predicted by Plaintiff on the injunctive hearing of April 24th, 2013, presided by Hon. Judge Ramos.... Plaintiff could not graduate in time to attend Law School. As stated with supporting evidences on said hearing; Plaintiff was completing his degree on May 2013, if not suspended. Plaintiff, thus was suspended only two weeks form last attending formal semester classes, and all spring 2013 credits classes taken away and reported as "W" on his transcript. Please note that plaintiff was matriculated for summer 2013 classes for 12 online credits. Of those credits Plaintiff needed only four credits for the completion of his degree in Legal Studies. It is inconceivable that the State and Federal court did not see this as retaliatory action, and the implication of permanent harm, unless abuse of power by the State may have had a bearing or clouding judge Ramos wisdom!. Respectfully.

c)As predicted by Plaintiff on the injunctive hearing of April 24th, 2013, presided by Hon. Judge Ramos, and/or the intentionally a miss-application of such policies by Defend-

ants....Plaintiff intention to attend law school was jeopardized by the objection of the State and action of the court. For this reason and others (see below), Plaintiff was rejected to all Law schools Plaintiff applied.

d) As predicted by Plaintiff on the injunctive hearing of April 24th, 2013 presided by Hon. Judge Ramos and as direct result of Defendants illegal and/or unconstitutional policies, and/or intentionally mis-application of such policies by Defendants; Plaintiff having the necessity and/or of filing a law-suit for damages against (all defendants including LSAC), however, especially educational institutions, it could, would or will influence the admission to any school of any kind, especially Graduate School. These events and its possible consequences should had been foreseeable by the representing State's AAG, and the presiding Judge Ramos.

e) As predicted by Plaintiff on the injunctive hearing of April 24th, 2013 presided by Hon. Judge Ramos and as direct result of Defendants illegal and unconstitutional policies, and/or intentionally miss-application of such policies, by Defendants...Plaintiff, lost—accrued and concurrent-- income by the necessity of incurring in more student loans. Plaintiff will never be able to accomplish the high-end income that he would have been, by attending a law school of quality. This complaint, written and researched as Pro-se, certifies the qualities Plaintiff would have had with three years of training in a Juris Doctor program in one of top ten law schools.

f) As predicted by Plaintiff on the injunctive hearing of April 24th, 2013 presided by Hon. Judge Ramos and as direct result of Defendants illegal and unconstitutional policies, and/or intentionally miss-application of such policies by Defendants...Plaintiff had lost and lose critical Financial Aid.

g) As predicted by Plaintiff on the injunctive hearing of April 24th, 2013 presided by Hon. Judge Ramos and as direct result of Defendants illegal and/or unconstitutional policies, and/or intentionally misapplication of such policies, by Defendants... Plaintiff had lost all possibility to attend any respected graduate and/or Law school--this is the most important foreseeable damage that Defendants' have intentionally inflicted to Plaintiff, with aid of the court and the State AAG.

h) As predicted by Plaintiff on the injunctive hearing of April 24th, 2013 presided by Hon. Judge Ramos and  as direct result of Defendants illegal and unconstitutional policies, and/or intentionally misapplication of such policies, by Defendants... Plaintiff permanently lost invaluable time-due to age and disability—to accomplish intellectual and financial growth.

i) As predicted by Plaintiff and as direct result of Defendants illegal and unconstitutional actions, policies, and/or intentionally misapplication of such policies, and/or [as/by] way of retaliatory action of Defendant Danielle DaGosto...Plaintiff, lost his liberty by had been illegally arrested. This action was certainly to be a maneuver from the part of the Defendant[s] to jail the Plaintiff, thus impair Plaintiff to continue his quest for justice for this case in this court. Plaintiff is herein requesting the US dept. of Justice intervention to assess possible criminal wrongdoing from the part of the implicated Defendants.

(10) Defendant SUNY Binghamton University and its Official, has denied a renewal of visiting student admission for Fall 2013 academic year; thus leaving Plaintiff with-out any school for the and proper and rightful education,  hence denying his constitutional right to education; furthermore, knowingly causing permanent academic and financial hardship.

It is not clear at this time, however, it can be assumed that Binghamton University acted on solidarity to Defendant SUNY and/or directed by High SUNY officials to retaliate and or inflict additional permanent academic harm.

## II-Jurisdiction and Venue

(1)This Court has jurisdiction over this action under 42 U.S.C. § 12188(b) (1) (Band 28 U.S.C. § 1331 and 1345. This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. § 2201-2202 and authority to grant equitable, monetary damages, and civil penalties under 42 U.S.C. § 12188(b).

(2)Jurisdiction of this court arises (1) under 15 U.S.C. § 1681p and 1692k (d) and 28 U.S.C. § 1331. Declaratory relief is available pursuant to 28 U.S.C. § 2201. (2) under the laws of the United States of America, in particular Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16. (3)--but not limited to the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and The Privacy Act. Of 1974 5 U.S.C. § 552a. (4) in compliance with FROCP & 42 U.S.C. § 6104(e). (5). Pursuant to the provisions of Title VII, 42 U.S.C. § 2000e-5 and § 2000e-16(c), and (6) the general Civil Rights jurisdictional provisions of 28 U.S.C. § 1343(a) (4).

(3)The supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. §1367 over the State law claims which are so related to Federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

(4)Venue is proper; all the relevant events occurred[ING] within the State of New York, Westchester County. The County Westchester is located within this US Court, New York Southern District Court. Plaintiff's Federal and State Law claims against the Defendants derive from constitutional issue, Federal Laws, facts, and are of such character that Plaintiff would ordinarily be expected to try them in one separate judicial proceeding pending Federal civil action pursuant to 42 U.S.C. § 6104(e)(1).

(5)Defendants and defendants' employees are a part of a system of public institutions of higher education, S.U.N.Y, receiving Federal financial aid funds, thus the Court has jurisdiction over a State claim.

### III-Parties

**Plaintiff[s]:**

(1) Plaintiff, Edward A. Morales, Mailing address to: 110 N 3rd Ave, apt 2M Mount Vernon, NY 10550. Plaintiff is currently a suspended student for Defendant, Purchase College. Plaintiff was the first (the Pioneer) of his family to arrive in the United States. Plaintiff was 17 year of age 1979 when he, when his native country—Chile—was just coming out of a devastating communist government, the Salvador Allende regime. Plaintiff helped feed his brother by working sometimes three jobs here in the US. He did not know the language, and like most first immigrants…he paved the way for future generations of tax payers US citizen. He worked his way up almost nothing, to be a  successful financial advisor in the New York financial markets. Plaintiff, unfortunately was injured at the WTC terrorist at-

tacks. It has taken many years for Plaintiff to partially recover from his injuries; from walking with the aid of two canes, to have the opportunity to go to law school to be an example for the new generations of the US born Morales'.  Plaintiff is a qualified "partially-permanent disabled" person, under the Social Security Disability Administration or SSDA, as defined by 42 U.S.C. § 12131 (2), and Section 504 of the Rehabilitation Act of 1973 29 USC sec (701-796). Plaintiff total income is his Social Security Disability in the amount of $849.00 per month.

**Defendants:**

(1) Defendant, The State of New York.

(2) Defendant SUNY Purchase Colleges is part of a system of public institutions of higher Education at State University of New York (SUNY) a public school and a FEDERALLY ASSISTED PROGRAM INSTITUTION. With address at 735 Anderson Hill Rd Purchase, NY 10577 with general telephone: (914) 251-6000.

(3) Defendant, State University of New York (SUNY) is a system of public institutions of higher Education

(4) Defendant, Law School Admission Council, Inc. (LSAC). Defendant LSAC is a Delaware non-profit corporation headquartered at 662 Penn Street, Newtown, Pennsylvania 18940. All law schools approved by the American Bar Association (ABA) are LSAC members. LSAC provides a number of services to its member law schools and to persons seeking admission to law school, including the administration of the LSAT, an examination related to applications for post-secondary education purposes within the meaning of 42 U.S.C. § 12189 and the Department of Justice's implementing regulation,

11/106

28 C.F.R. §§ 36.309. Among other things, LSAC administers, manages, and proctors the LSAT multiple times each year at approximately 1,400 law schools, universities, and other venues across the United States.

(5) Defendant, Purchase College University Police (PCUP) is part of a system of public institutions of higher Education at State University of New York (SUNY) a public school and a FEDERALLY ASSISTED PROGRAM INSTITUTION. With address at 735 Anderson Hill Rd Purchase, NY 10577 with general telephone: (914) 251-6000. The defendant is responsible to keep and enforce order at Defendant, Purchase College campus. Defendant is required and entitled to implement legal procedure according to New York State and Federal laws. The defendant is expected to know and beware of this law. To be applied equally and with-out prejudice of age, gender, disability, sexual orientation and/or discriminatory written, oral or implied policies or the application of

(6) Defendant, SUNY Binghamton University is part of a system of public institutions of higher Education at State University of New York (SUNY) a public school and a FEDERALLY ASSISTED PROGRAM INSTITUTION. Located at      4400 Vestal Pkwy E Binghamton, NY 13902, telephone #(607) 777-2000

(7) Defendant, Town and/or city of Harrison. Located at, Alfred F. Sulla, Jr.

Municipal Building, 1 Heineman Place Harrison, New York 10528 (914) 670-3000.

Defendant is the judicial entity with jurisdiction of enforcing the legal and statuary state laws of defendant SUNY Purchase College

(8) Defendant, William Howard, is an employee of the State University of New York, SUNY, with known title as "Senior Vice Chancellor and General Consul" at the "Office of General Counsel",

12/106

located at: 3rd Floor. State University of New York System Administration, State University Plaza, Albany, New York 12246, phone: Defendant is the consul general at SUNY State University of New York, attorney. Defendant is also responsible for the supervision of Defendant, Wendy Kowalczyk; furthermore, Defendant is responsible to keep, know, correct, apply--but not limited--to enforce proper legal at some or all SUNY educational institution including at Purchase College campus. Defendant is required and entitled to implement legal procedure according to New York State and Federal laws. Defendant is expected to know and be aware of this laws; to be applied equally and without prejudice of age, gender, disability, sexual orientation and/or discriminatory written, oral or implied policies or the application of such.

(9) Defendant Thomas Schwarz is an employee of S.U.N.Y. Purchase College with the known title of President at Purchase College—also an attorney, at 735 Anderson Hill Road, Purchase, New York 10577 Phone: (914) 251-6033. Defendant is responsible to keep, know, correct, apply--but not limited--to enforce properly legal procedures and academic standards at Purchase College campus. Defendant is required and entitled to implement legal procedure according to New York State and Federal laws. Defendant is expected to know and be aware of this laws; to be applied equally and without prejudice of age, gender, disability, sexual orientation and/or discriminatory written, oral or implied policies or the application of such.

(10) Defendant Wendy Kowalczyk, is an employee of the State University of New York with known title as "Associate Counsel" at the "Office of General Counsel", located at: 3rd Floor. State University of New York System Administration, State University Plaza, Albany, New York 12246, phone: Defendant is an associate consul attorney responsible to keep, know, correct,  apply--but not

limited--to enforce properly legal procedures at some or all SUNY educational institution including Purchase College campus. Defendant is required and entitled to implement legal procedure according to New York State and Federal laws. Defendant is expected to know and be aware of this law; to be applied equally and without prejudice of age, gender, disability, sexual orientation and/or discriminatory written, oral or implied policies or the application of such.

(11) Defendant Melisa Jones is an employee of Purchase College with known title of, Director for Community Standards. Defendant's address is at 735 Anderson Hill Road, Purchase, New York 10577 telephone: (914) 251-6033.

(12) Defendant Danielle DaGosto, is an employee of Purchase College with known title as "Executive Director of Academic Programs, school of liberal arts and continuing education" at Purchase College located at 735 Anderson Hill Road, Purchase, New York 10577, phone: (914) 251-6033.

(13) Defendant Qui-Qui Balascio, is an employee of State University of New York, with known title as "Associate Dean of Student Affairs" at Purchase College located at 735 Anderson Hill Road, Purchase, New York 10577, phone: (914) 251-6033.

(14) Defendant, Richard Nassisi is an employee of Purchase College with known title as "Associate Dean of the school of liberal arts" at Purchase College located at 735 Anderson Hill Road, Purchase, New York 10577, phone: (914) 251-6033.

(15)Defendant, Ernie Palmieri is an employee of Purchase College with known title of, vise-president for Community Standards. Defendant's address is at 735 Anderson Hill Road, Purchase, New York 10577, phone: (914) 251-6033.

(16)Defendant, Ricardo Espinales is an employee of Purchase College with known title as "Assistant Director of HR" and currently acting officer of "Affirmative Action" at Purchase College located at 735 Anderson Hill Road, Purchase, New York 10577, phone: (914) 251-6033.

(17) Defendant, Marc Burdzinski, is an employee of Purchase College with known title as "Associate Professor" at Purchase College located at 735 Anderson Hill Road, Purchase, New York 10577, phone: (914) 251-6033.

(18) Defendant Lois Wald, is an employee of Purchase College with known title as "Associate Counselor" at Purchase College located at 735 Anderson Hill Road, Purchase, New York 10577, Phone: (914) 251-6033

(19)Defendant, SNADRA Starki (BU) BU .



(20) Defendant, Kyle Saud, is an employee of Purchase College with known title

Of student residential life—housing coordinator. Defendant's address is at 735 Anderson Hill Road, Purchase, New York 10577, phone: (914) 251-6033.

(21)Defendant, DANIEL . PEARSON , (BU)

(22) Defendant William (Bill) Baskin, is an employee of Purchase College with known title as "Associate Provost for Academic Affairs" at Purchase College located at 735 Anderson Hill Road, Purchase, New York 10577, phone: (914) 251-6033.

(23) Defendant, Louis Yelin, is an employee of Purchase College with known title as "Associate Dean" at Purchase College located at 735 Anderson Hill Road, Purchase, New York 10577, phone: (914) 251-6033.

(24)  Defendant, Walter Butler is an employee of State University of New York, with known title as "Sargent at the University Police Department" at Purchase College located at 735 Anderson Hill Road, Purchase, New York 10577, phone: (914) 251-6033.

(25)  Sferrn Secon

## IV-Facts

### Cause of Action # 1

#### For Defendant; Law School Admission Council or LSAC

(1)This cause of action refers to Defendant LSAC and its employees' illegal and/or unconstitutional actions, policies, and/or intentionally miss-application of such policies, and/or [as/by] way of retaliatory action of Defendants; Plaintiff, hereby moves to enforce, and request the court to apply titles III and V of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181 et seq. and 12203, as amended, and as the Department of Justices is implementing regulation, 28 C.F.R. Part 36, against the Law School Admission Council, Inc. (LSAC), on the current action.... The dept. of Fair Employment and Housing Vs. Law School Admission Council, Inc. (LSAC); *Case No. CV 12-1830-EMC.* LSAC has failed to administer the Law School Admission Test (LSAT) in a manner of accessible to prospec-

tive law student and Plaintiff, Edward Morales--Partially-Permanent-Disabled--in violation of 42 U.S.C. § 12189, by:

(2) `Failing to provide testing accommodations for the October 2012, February 2013 and the June 2013 tests, with no testing availability in between these dates; so as to best ensure that test results reflect aptitude rather than disability,

(3) "Flagging" (or annotating) accommodated test scores, and equally not reporting LSAC not granted ADA accommodation.

(4) Making unreasonable requests for documentation in support of requests for testing accommodations,

(5) Failing to give considerable weight to documentation of past testing accommodations received in similar testing situations, for example; ADA accommodation at SUNY Purchase College and SUNY Binghamton and failing to respond in a timely manner to requests for testing accommodation.

(6) Failing to provide appropriate auxiliary aids. LSAC also has failed to provide prospective law students with disabilities the full and equal enjoyment of its goods, services, facilities, privileges, advantages, and accommodations, in violation of 42 U.S.C. § 12182, by unnecessarily flagging test scores obtained with testing accommodations,

(7) Furthermore, by identifying and reporting otherwise confidential disability-related information. LSAC's flagging policy also interferes with individuals' exercise of their rights under the ADA, in violation of 42 U.S.C. §12203….and by same discriminatory manner, NOT FLAGGING perspective law students with disabilities which/who LSAC has denied accommodation.

(8)As a result, LSAC has denied prospective law students with disabilities a full and equal opportunity to demonstrate their knowledge and aptitude and to fairly compete for educational and employment opportunities for which the LSAT is a prerequisite.

(9)The ADA rests on Congress' determination that "the Nation's proper goals" regarding individuals with disabilities include "equality of opportunity" and "full participation" for such individuals, and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. §12101(a)(7)-(8). The ADA's mandate that testing entities, such as LSAC, offer examinations in an accessible manner is crucial to furthering the ADA's purpose "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Id.§12101(b)(1). The 1st "Freedom of Speech clause"; 14th "Due Process clause" and "Equal Protection clause" Amendment to the US Constitution.

(10)As credentialing examinations, such as the LSAC and LSAT test, are the gateway to educational and employment opportunities, the ADA demands that each individual with a disability have the opportunity to fairly compete for and pursue all such opportunities.

(11)The Attorney General US dept. Of Justice, has commenced this action to intervene based on The US Federal Court district of San Francisco, CA. Case, *"The dept. of Fair Employment and Housing Vs. Law School Admission Council, Inc. (LSAC)*; Case No. CV 12-1830-EMC" on reasonable cause to believe that LSAC is engaged in a pattern or practice of discrimination, and that a person or group of persons has been discriminated against and that such discrimination raises issues of general public importance. 42 U.S.C. §12188(b) (1)(B). The United States is seeking as intervention is/has

been "GRANTED" by **The US Federal Court district of San Francisco, CA**. declaratory and injunctive relief, compensatory damages, and a civil penalty against LSAC.

(12) Plaintiff herein—in addition—is requesting the US Dept. of Justice for intervention as the Dept. is on the Case, **"*The dept. of Fair Employment and Housing Vs. Law School Admission Council, Inc. (LSAC);*** No. CV 12-1830-EMC."

(13) Plaintiff is requesting hereby, in the same manner as on the said concurrent ***action…. "The dept. of Fair Employment and Housing vs. Law School Admission Council, Inc. (LSAC);*** Case No. CV 12-1830-EMC," to intervene to seek, but not limited, to a declaratory and injunctive relief, compensatory damages, and a civil penalty against LSAC; and/or in addition to all other criminal and civil complaints and violations herein put forward before this court.

(14) Furthermore, Defendant LSAC, has intentionally release a inaccurate and misleading LSAT score, using false data; thus, instructing several law schools to use the sore on their decision for Plaintiff's admission to law school. Although, it is important to note that LSAC has only a limited liability on the damages claimed herein by Plaintiff, and are not permanent damages. It is also important to point out that LSAC has deleted form their file, Plaintiff's submitted school disability accommodation.

## Cause of Action # 2

**For Defendants: SUNY Purchase College; The State of New York;  State University of New York SUNY; Lois Wald & John Doe; Wendy Kowalczyk;**

**Qui-Qui Balascio; Thomas Schwarz; William Howard: Ernie Palmeiri**

*Plaintiff incorporates as he restates each of the above paragraphs as fully applicable and sets forth herein...*

(1)  This cause of action refers to Defendants'--named above--illegal and/or unconstitutional actions, policies, and/or intentionally misapplication of such policies, and/or [as/by] way of retaliatory actions, including--but not limited to—other Defendants John Does employees.  Plaintiff, hereby moves to enforce, and request the court to apply  the enforcement of titles III and V of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, and 12203;  title 5 U.S.C. § 552a., The Federal Age Discrimination Act of 1975, titles 42 U.S.C. § 6101 et seq.;  34 C.F.R. Part 110., 45 C.F.R. Part 90.1.,and 45 CFR Part 617, and it implementing regulations (45 CFR Part 90) applies to public and private institutions that receive federal funds, for example, Defendant, SUNY Purchase College, and has been interpreted to apply to admissions policies of post-secondary institutions. Furthermore, title VII of the Civil Rights Act of 1964.  Title VII prohibits discrimination based on gender and protects both women and men.  42 U.S.C. § 2000e-2(a) (1) (2000).  Title IX of the Education Amendments of 1972 prohibits gender discrimination in education and in higher educational programs and in activities receiving federal funds. 20 U.S.C. §§ 1681-1688 (2000) and by several federal laws and statutes.  The First "Freedom of Speech clause", 14th "Due Process clause" and "Equal Protection clause" Amend-

ments to the US Constitution.  Preforming and non-certified medical examination; improper, unauthorized performing of Psychological evaluation; untimely, unjustified discriminatory issuing of a non-certified and non-qualified report, without of the consent of student. These were violations of the **Family Educational Rights and Privacy Act (FERPA). The Federal Education Records and Privacy Act (FERPA),** commonly known as the **Buckley Amendment,** requires that any school or institution that receives federal funds for education may not release school records or any other personally identifiable information without the prior consent of the student, with a few specific exceptions. These laws create a minimum standard for the protection of records, which may be increased by either state or local laws or regulations.  Furthermore, records are also be protected by the **Federal Privacy Act of 1974,** and state implementations, the Freedom of Information Act., and state open records laws.  Furthermore, the **FERPA, FOIA and Privacy Acts** do not differentiate between the medium of storage or the method of transmission.  There is no legal difference between the level of protection afforded to physical files over those that are stored or transmitted electronically or any other form.  Most state laws have similar open definitions; since Plaintiff's so-called Psychological evaluation, was publicized via email for viewing by Purchase college' staff only, as stated by Mrs. Qui-Qui Balascio.

(See; cause this of action for further details)

**Facts....**

    (2)  Plaintiff attended SUNY Purchase for fall semester of 1998 and withdraw in the spring of 1999 for personal reasons, one of them being a bitter divorce and custody dispute.

    (3) On or about May 2011 (school summer session), Plaintiff requested to be re-admired to the Purchase college; Plaintiff approached the registrar office.  Plaintiff was

attended by Mr. John Taylor, who was authorized to answer Plaintiff questions concerning registra-
tion. Plaintiff inquired regarding his intention to be re-admitted to the school. Mr. Taylor after a short
onside research stated, "He (Mr. Taylor) could not enroll him (Plaintiff) back into the school because
there was a flag (a problem or impediment) that needed to be clear by the health clinic of the school,
before I (Plaintiff) could be readmitted into the school."

(4) On or about the same date, Plaintiff proceed to contact the College's health clinic. Plaintiff
was directed by an attendant to speak with Mrs. Adrienne Belluscio (head nurse), regarding the flag or
impediment to be readmitted to the college. Mrs. Belluscio stated that, "although the flag was originat-
ed at her department (the health clinic) , she would not remove it (the flag)....that she would not get
involve—implying the removal of the flag--and that I (Plaintiff) would have to had [then]to have the
counseling center to do it"--remove the flag. Furthermore, Mrs. Belluscio also stated that "because the
record (Plaintiff's medical record) had been destroyed due to the provision by Federal law that all rec-
ords must be destroyed after seven years, and she would not remove the flag." She referred the Plain-
tiff conference with the Chief psychologist (John Doe #1, and no longer working for the college.)

(5) On or about the same week Plaintiff briefly met Chief psychologist (John Doe #1).  At this
meeting, Plaintiff asked why he was being re-directed by Mrs. Belluscio to him, and why he (Plaintiff)
was being arbitrarily interviewed.  The Chief Psychologist (John doe #1) stated, that "all returning stu-
dents must be Psychologically evaluated, especially older persons since they (assuming the school)
want to know if the returning student had a mental disorder, such as bipolar disorder".  Plaintiff pro-
tested....arguing "he was being discrimination, and why he was discriminated?"

(6) On or about the same week Plaintiff was directed to have a Psychological evaluation with
Defendant, Mrs. Lois Wald—Psychologist, against Plaintiff consent. Mrs. Lois Wald conducted a 20

minutes interview (or an unconsented evaluation), in which Plaintiff was very up-set, by repeatedly stating to Defendant, Mrs. Lois Wald, that he considered the evaluation discriminatory.  Please note that this department would not remove the flag originated at the clinic 14 years ago unless the Plaintiff would not have a Psychological evaluation.  Plaintiff agreed to have a conversation with Mrs. Wald, but not a Psychological evaluation.  At this conversation, Plaintiff was irritated attributed to the belief that discrimination was being taking place, and decided not to cooperate fully.

(7) On or about the same week, after the "evaluation", the flag was removed by Mrs. Qui-Qui Balascio from student affairs.  She said "she read the report", and that "it was school policy, that all returning students were to be psychologically evaluated before being re-admired into classes".  Mrs. Balascio further said that, "the report "evaluation" was, and still is, confidential and for school staff use only".  She did not elaborated as to the content of that report.

(8)  Several months later and after Plaintiff had filed several violation of civil rights with the US dept. of Education civil rights unit (OCR)....Plaintiff issued a written request to Defendant,  Mrs. Lois Wald, to provide Plaintiff with a copy of the report (school evaluation); Mrs. Wald, who at first agreed to provide the Plaintiff with a copy of said report; however, she later retracted from this; instead De-fendant, Mrs. Lois Wald offered to draft a "letter of recommendation". Plaintiff until today does not understand the meaning of this offer was or the content of such letter could have been.  Plaintiff later agreed to have the o letter of recommendation, and asked for it via email.  However, the letter was nev-er issued; furthermore, Plaintiff continue asking for the report or the letter via email, but, Defendant, Mrs. Lois Wald never returned Plaintiff's emails with his the requests.

(9) This violation of Plaintiff's civil right case was referred to the school's affirmative action of-ficer, Mrs. Baptiste and the US dept. of Education, for proper investigation of discrimination.  Mrs.

Baptiste, upon several request from Plaintiff, never provided him with the results of the investigation, stating that Defendant, Mrs. Wendy Kowalczyk; with the exception of complaint made by Plaintiff of age discrimination at the Art building and class, where plaintiff was excluded and single-out for his age. Not an issued on this complaint, since the Art officials took drastic measures so the negative attitude towards elder students would not repeat.

### Cause of Action # 3

**For Defendants: SUNY Purchase College; The State of New York: State University of New York**

**SUNY; Walter Butler; Purchase College University Police;**

**Wendy Kowalczyk; Thomas Schwarz; William Howard**

*Plaintiff incorporates as he restates each of the above paragraphs as fully applicable and sets forth herein....*

(1) This cause of action refers to Defendants'--named above--illegal and unconstitutional actions, policies, and/or intentionally misapplication of such policies, and/or [as/by] way of retaliatory actions, including--but not limited to—other Defendants John Does employees.  Plaintiff, hereby moves to enforce, and request the court to apply  the enforcement of and request the court to apply the enforcement of  The Federal Age Discrimination Act of 1975, titles 42 U.S.C. § 6101 et seq.;  34 C.F.R. Part 110., 45 C.F.R. Part 90.1., and 45 CFR Part 617 and it implementing regulations (45 CFR Part 90) applies to public and private institutions that receive federal funds, e.g. SUNY Purchase College, and has been interpreted to apply to admissions policies of post-secondary institutions. Furthermore, title VII of the Civil Rights Act of 1964.  Title VII prohibits discrimination based on gender and protects both women and men.  42 U.S.C. § 2000e-2 (a) (1) (2000).  Title IX of the Education Amendments of 1972 prohibits gender discrimination in education and in higher educational programs and in activities receiving federal funds.  20 U.S.C. §§ 1681-1688 (2000) and by several federal laws and statutes.  The First "Freedom of Speech clause"; 14th "Due Process clause" and "Equal Protection clause" Amendment to the US Constitution

**Facts...**

(2) On or about the same date, Plaintiff was stopped by the University Police officer (John Doe #3)…Plaintiff was asked for Driver License (not student ID).The Plaintiff asked; for what reason?….the police officer responded saying, that "someone (male) that ***did not fit the student profile*** "was near the dorms, and that the Plaintiff fit the description". *Note….the Purchase school dorms are situated, within the school's path to and from all other major building, including class rooms.* Intermediately Plaintiff presented the officer with his school ID, not a driver license, which was not sufficient for the officer who continue asking for a driver license.

(3) On or about the same day, Plaintiff protested to Sargent Defendant, Mr. Walter Butler, who explained to the Plaintiff "it was standard university procedures to ask for ID (driver license) for individuals (male-students) that do not fit the student profile."

(4)On or about the same week, Plaintiff presented to Mr. Walter Butler and to Mrs. Michelle Baptiste (affirmative action officer) the example of student Robert Sterling. Mr. Sterling is an African-American Student approximately 50 years of age. He has been followed by a white officer, whom requested Mr. Sterling for his ID. This incident happened inside the library, with school's staff present at the time. Mr. Sterling was seeking or pretending to pursuit his second degree, and has been attending to school for over three years.  Several school library employees witnessed this incident.

(5)  Mr. Sterling's case was one of several student's violation of civil rights cases, which Plaintiff referred to the school's affirmative action officer, Mrs. Baptiste and the US Dept. of Education, for proper investigation of discrimination.  Mrs. Baptiste, upon several request from Plaintiff, never provided Plaintiff with the results of the investigation.

**Cause of Action # 4**

**For Defendants; SUNY Purchase College; The State of New York; State University of New York**

**SUNY; Richard Nassisi; Marc Burdzinski and Louis Yelin;**

**Ricardo Espinales; William (Bill) Baskin; William Howard; Thomas Schwarz**

*Plaintiff incorporates as he restates each of the above paragraphs as fully applicable and sets forth herein...*

(1)  This cause of action refers to Defendants'--named above--illegal and unconstitutional actions, policies, and/or intentionally misapplication of such policies, and/or [as/by] way of retaliatory actions, including--but not limited to—other Defendants John Does employees.  Plaintiff, hereby moves to enforce, and request the court to apply  the enforcement of and request the court to apply the enforcement of the Federal Age Discrimination Act of 1975, titles 42 U.S.C. § 6101 et seq.;  34 C.F.R. Part 110., 45 C.F.R. Part 90.1.,and 45 CFR Part 617 and it implementing regulations (45 CFR Part 90) applies to public and private institutions that receive federal funds; for example, SUNY Purchase College, and has been interpreted to apply to admissions policies of post-secondary institutions. Furthermore; title VII of the Civil Rights Act of 1964 and title VII prohibits discrimination based on gender and protects both women and men. 42 U.S.C. § 2000e-2(a)(1) (2000). Title IX of the Education Amendments of 1972 prohibits gender discrimination in higher educational programs and in activities receiving federal funds. 20 U.S.C. §§ 1681-1688 (2000) and by several federal laws and statutes; titles III and V of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, and 12203, failure to provide timely and proper ADA accommodation. The Federal Age Discrimination Act of 1975, titles 42 U.S.C. § 6101 et seq.;  34 C.F.R. Part 110., 45 C.F.R. Part 90.1.,and 45 CFR Part 617, and it implementing regulations (45 CFR Part 90) applies to public and private institutions that receive federal

funds; for example, SUNY Purchase College, and has been interpreted to apply to admissions policies of post-secondary institutions. Furthermore, Defendants have failed to apply the American with Disability Act (ADA), in a manner of accessible to prospective or new student such as Plaintiff, who is defined Partially-Permanent-Disabled—and classified as such under the Social Security Disability Administration or SSDA, as defined by 42 U.S.C. § 12131 (2), and Section 504 of the Rehabilitation Act of 1973 29 USC sec (701-796); furthermore, in violation of title 42 U.S.C. Â§ 12189; by inaccurately weighing Plaintiff's government disability documentation that may had have ensure—at least temporarily—the possibility of Plaintiff's valid disability. Hence, avoiding possible aggravation of Plaintiff's injures and/or unnecessary paint and suffering. In addition; title VII of the Civil Rights Act of 1964. Title VII prohibits discrimination based on gender and protects both women and men. 42 U.S.C. § 2000e-2(a)(1) (2000). Title IX of the Education Amendments of 1972 prohibits gender discrimination in education and in higher educational programs and activities receiving federal funds. 20 U.S.C. §§ 1681-1688 (2000) and by several federal laws and statutes. The First "Freedom of Speech clause", the 14th "Due Process clause" and "Equal Protection clause" Amendment to the US Constitution.

(2)  On or about September 2011 (the fall semester), Plaintiff registered for a Spanish-English Translation class.  Let the court know that Plaintiff's native language is Spanish, and since Plaintiff's education prior to college (High School), was in Chile, a Spanish speaking country; thus, Plaintiff's first language (Spanish) is well educated, in reading

written and forms.

(3)This Spanish-English Translation class was taught at Purchase College by Professor and Defendant, Mr. Mark Burdzinski. Plaintiff states, as fact, that Mr. Burdzinski's animosity towards Plaintiff and other elder persons, were insulting and direct, for example; Defendant Mr. Burdzinski did not

allowed Plaintiff (if Plaintiff was late or missed the last class) or any elder students speak in class, if

they were not registered as a regular student for the class. Hence, such as elder audience's students,

could not speak. Plaintiff, as registered student, if he was absent the prior class, even if Plaintiff's ob-

scenity was for medical or disability reasons, he was not allowed to speak. These was directed only to

elder students. The class had five or six elder students.

(4) In addition,  Mr. Burdzinski vividly rejected the notion that Plaintiff was partially--

permanent--disabled, even if Plaintiff would provide him with Social Security Disability documenta-

tion and the New York Workers Compensation award, which describes Plaintiff's permanent-disabling

spinal injuries--since accommodation was not yet granted by Mrs. Ronnie Mait, compliance officer.

(5)  On or about the same time, Plaintiff complained to Defendant, Mr. Burdzinski  for his course

syllabus. This syllabus  was written by the professor and Defendant Mr. Burdzinski  and approved by

the department's Dean, Mrs. Louise Yelin, (on exhibit) This syllabus stated that any "student using the

bathroom during class hours was going to be counted absent for that class period". Plaintiff did com-

plained to the Mr. Burdzinski, about the poorly drafted and what it may be a violation of policy and/or

statute (legal theory to be researched)

(6)  On or about the same time (first month of this class) Plaintiff received an   assignment where

plaintiff was to translate several poems, about 10 of them.  Since Plaintiff's first language is Spanish,

Plaintiff had no problem translating the text part of the assignment, even when a translator was

allowed.  However, Plaintiff had problems   understanding the poems, or giving the poems a meaning,

hence, a few days later Plaintiff requested the aid of Ms. Darcy Gervacio, (Reference & Instruction Li-

brarian) at the college's library.  Ms. Gervacio, kindly and with enthusiasm, showed Plaintiff several

techniques to understand the meaning of the poem[s], thus translation could be accomplished without any difficulty, attributed to Plaintiff's first language was/is Spanish. For the court reference, Mr.

Burdzinski has asked the class, "What kind of translator were we using for the translations." implying that translator was allowed.  In addition, one of Plaintiff's ADA future and concurrent accommodation was/is the use of writing equipment (voice recognition) and more time for testing, since Plaintiff's neck injuries prevent him from using his hands and arms normally. For this reason it is important to note that Plaintiff's in many instances may have to use cut-paste option of Microsoft Word, or any word processor; furthermore, and for the same reason Plaintiff's written work sometimes may looked have been taken from another document.  Due to Plaintiff's disability and the intentional misconduct of Defendant, Mr. Burdzinski, Plaintiff has suffered and was put through his life's greatest humiliation and deprived of equal opportunity to be accepted to any graduate school, especially law school.

(7) On or about the second week of have started the class, Professor Burdzinski proceeded to accuse Plaintiff with plagiarizing.  The professor's accusation was based on that only one of the many poems translated by Plaintiff. Please note that plaintiff copied the poem—to avoid typing-- not the translation. The poem in question (not the translation) was copied from an internet web site; please note that they were 10 poems on the assignment, and Mr. Burdzinski only plagiarized the first poem.  On the professor's 30 pages documentation, argued all but 3-4 words were just like a translation published on the internet, thus Plaintiff was accused of coping the translation and passing it as his owned, connecting this to a foot note on the web page that was imprinted on the translation draft submitted by Plaintiff. This footnote was the consequence of cut and paste of the actual poem--not the translation.

(8) Today, and concurrently, Plaintiff does use to cut and paste feature (permissible by implied ADA accommodation) of the said word processor to avoid unnecessary writing. This said above will

diminished to possible and irrecoverable aggravation of his neck injuries.  For this, medical reasons documented to Purchase College and Binghamton University specifically to prevent further damage to Plaintiff's spinal injuries.  Specifically, one of Plaintiff's neck injuries is directed  related to the movement of his right hand two fingers, more than his left hand, thus causing severe tingling, moaning, inflammation and pain; severe inflammation of these type of injuries may have more severe and permanent side effect.

(9) About two weeks later, Professor Burdzinski requested the Plaintiff's expulsion--with and "F"--of the class, to Mrs. Louise Yelin (dean), who without examining the accusations agreed to the Plaintiff's expulsion.

(10) On or about the same time in a meeting Plaintiff asked Mrs. Yalin "if she had examined the supporting evidences to authorize the (Plaintiff's) expulsion?"  ….she said "no."  For this inequality in the due process, Plaintiff emailed Professor Burdzinski, stating that; "his action (accusing Plaintiff of plagiarizing), has being carried away by his lack of identity." Professor Burdzinski has a recognized (Psychiatric. Axis II) personality disorder that affected his standard of duty towards his students— especially elder students--*many scholarly paper have been written on the subject*.  Furthermore, Purchase college, being also a business and Plaintiff as a paying client…Plaintiff's right to "freedom of speech" is protected by the First Amendment to the US Constitution.  Since, Plaintiff's word describing Defendant, Mr. Burdzinski, were of none fighting, offensive, threatening nature.  Furthermore, these words were not in the normal course of the class.

(11)  About the same month, Plaintiff appealed the accusations and subsequent expulsion, to Mr. Richard Nassisi (school official and then, Plaintiff's academic adviser), who schedule a hearing.

(10) About three days before the Plaintiff's hearing notified Defendant, Mr. Richard Nassisi, in an email, that due to medical reasons, Plaintiff could not attend the hearing, and requested an adjournment.

(11) On time, and without an adjournment, Defendant, Mr. Nassisi and without Plaintiff's consent the improper conducted a hearing. A clear violation of equal right to education, equal protection and due process procedures which must be enacted by all schools policies. In a subsequent statement sent via email to Plaintiff...Defendant Mr. Nassisi stated that he sent an email to Plaintiff changing the hearing to telephonic hearing; Please note that Plaintiff then did not owned a computer, and internet connection.

(12) On or about the same week, Defendant Mr. Nassisi, denied a new hearing....stating, "it was too difficult to put together the panel of school staff to conduct anew hearing," thus "I (the plaintiff) should request and appeal of the "F" for that class. Defendant, Mr. Nassisi knew then and now, with the Plaintiff's intention to go to law school; furthermore, the negative permanent implication for admission to any graduate school, moreover, law school this dishonest charge and "F" would have in the future.

(13) On or about two weeks later, Plaintiff's request for an a appeal was submitted and assigned to defendant, Mr. Bill Baskin (academic affairs school official). However, prior to the appeal hearing, Plaintiff was asked to interview with Defendant, Mr. Ricardo Espinales.

(13) On or about the 2nd week of October of 2011 (the fall semester), Plaintiff met with defendant, Mr. Ricardo Espinales. At that meeting, Mr. Espinales introduced himself as a Human Resources official for the school. Please note that Mr. Espinales was also the acting Affirmative Action Officer,

however, he did not introduce himself as such at the said meeting. Plaintiff did not know until a later time of defendant second title or Mr. Espinales' acting duties.

(14) At the meeting Defendant, Mr. Espinales stated that; "I been looking into your email account and I do not see anything that implicates you in plagiarizing and he could find nothing"; Mr. Espinales subsequently said; "I do have your email account in front (the computer) of me"... Plaintiff asked: who give you (Mr. Espinales) my password to my email account? Mr. Espinales replied; "Nassisi", then Plaintiff asked: "Richard"... he replied "yes"; Plaintiff asked; "do you always go into students emails accounts?" Mr. Espinales replied..."no, I do not like to get the hand of it too much". Richard Nassisi was the school official that denied the hearing for the academic dishonesty accusation. Kindly, let the record note that according CTS (the school computer terminal center) staff.....students email's passwords are distributed to school official by the CTS--CTS is in charge of networking and computerized the school's needs, ``including students passwords. Furthermore, Defendant Richard Nassisi's son is an employee of the CTS dept. and/or had worked at CTS the time of Plaintiff's meeting with Mr. Espinales at CTS.

(15) Around the same time...by statement of CTS staff (John Doe #?) ..."the only person allowed to have access of the students emails accounts are selected CTS's employees and the college's president," Defendant, Mr. Thomas Schwarz." Please note that Plaintiff investigation leads to the conclusion that hacking the student's emails accounts, was/is a well-known practice by Purchase college's officials. The motives of this illegal actions of violation of privacy, is not well understood. However, Plaintiff's investigation have led to the conclusion that it is based on/ or for the application of discriminatory policies against elder students. These policies may attributed to an unsubstantiated social paranoia and the common discriminatory social construction of most high school official (including BU).

Plaintiff is asking for further intervention of the US dept. of Justice to investigate this issue and others described in this complaint for possible criminal wrongdoing.

(16)The same week, Plaintiff appeal the decision of a permanent "F' due to academic dishonesty.

(17)  The appeal hearing was assigned to Defendant, Mr. William (Bill) Baskin, and attended by Defendant, Mr. Espinales.  Both accused the Plaintiff of academic dishonesty, by using a translator (which it was allowed by the class's professor).  Mr. Baskin and Espinales aggressively with none violence, but with inappropriate strong tone of voice urged Plaintiff to admit to the academic misconduct plagiarizing charge. Plaintiff once again, denied the accusations of academic dishonesty,and threaten with legal action.  Both Mr. Baskin and Mr. Espinales noted…."it is your right to file a lawsuit."

(18) On or about a week later, Plaintiff appeal request was denied by Defendant, Mr. William (Bill ) Baskin; furthermore, the original sanction was up- held and entered on Plaintiff's transcript as permanent "F".

## Cause of Action # 5

**For Defendants: SUNY Purchase College; The State of New York;**

**State University of New York SUNY;**

*Plaintiff incorporates as he restates each of the above paragraphs as fully applicable and sets forth herein...*

(1)  This cause of action refers to Defendants'--named above--illegal and/or unconstitutional actions, policies, and/or intentionally misapplication of such policies, and/or as/by way of retaliatory actions, including--but not limited to—other Defendants John Does employees—or not. Plaintiff, hereby moves to enforce, and request the court to apply the enforcement of

**NULL**

35/106

**Cause of Action # 6**

**For Defendants; SUNY Purchase College; The State of New York; State University of New York**

**SUNY; Qui-Qui Balasacio;  Wendy Kowalczyk; Ernie Palmeiri**

**Thomas Schawrz; William Howard**

*Plaintiff incorporates as he restates each of the above paragraphs as fully applicable and sets forth herein...*

(1)  This cause of action refers to Defendants'--named above--illegal and unconstitutional actions, policies, and/or intentionally misapplication of such policies, and/or [as/by] way of retaliatory actions, including--but not limited to—other Defendants John Does employees.  Hence, Plaintiff, hereby moves to enforce and request court to apply the enforcement of the: Federal Age Discrimination Act of 1975; titles 42 U.S.C. § 6101 et seq.; 34 C.F.R. Part 110., 45 C.F.R. Part 90.1., and 45 CFR Part 617; it implementing regulations (45 CFR Part 90) applies to public and private institutions that receive federal funds; for example, SUNY Purchase College, and has been interpreted to apply to admissions policies of post-secondary institutions.  Title IX of the Education Amendments of 1972 prohibits gender discrimination in education and in higher educational programs and in activities receiving federal funds,  20 U.S.C. §§ 1681-1688 (2000) and by several federal  laws and statutes; titles III and V of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, and 12203, failure to provide timely and proper ADA accommodation. The Federal Age Discrimination Act of 1975, titles 42 U.S.C. § 6101 et seq.; 34 C.F.R. Part 110., 45 C.F.R. Part 90.1.,and 45 CFR Part 617, and it implementing regulations (45 CFR Part 90) applies to public and private institutions that receive federal funds; for example...SUNY Purchase College,  admissions policies and application of their policies. Furthermore, Defendants have failed to apply the American with Disability Act (ADA), in a manner of accessible to

prospective or new student such as Plaintiff, Edward Morales Partially-Permanent-Disabled-- as classi-fied under the Social Security Disability Administration or SSDA, as defined by 42 U.S.C. § 12131 (2), and Section 504 of the Rehabilitation Act of 1973 29 USC sec (701-796); furthermore, in violation of title 42 U.S.C. § 12189; by inaccurately applying the balancing strict scrutiny test" on Defendants' policy or application of its policies. Furthermore, intentionally—after Plaintiff complaint -- misjudgment, ignoring and/invalidation of government documentation that may have ensure—at least temporarily—the possibility of Plaintiff's valid disability; hence, avoiding possible aggravation of Plaintiff's injures and/or unnecessary paint and suffering. In addition, defendant's action may have been motivated by the violations of titles VII of the Civil Rights Act of 1964. And title VII prohibits dis-crimination based on gender and protects both women and men. 42 U.S.C. § 2000e-2(a)(1) (2000). Ti-tle IX of the Education Amendments of 1972, also prohibits gender discrimination in education and in higher educational programs and in activities receiving federal funds. 20 U.S.C. §§ 1681-1688 (2000) and by several federal laws and statutes; but not limited to the First "Freedom of Speech clause"; 14th "Due Process clause" and "Equal Protection clause" Amendment to the US Constitution.


## Facts....

(2) On or about July 2012, during summer semester, Plaintiff was suffering of severe spinal spasm and pain. These severe medical symptoms were derived from Plaintiff disabling injuries—these spasms are painful, disabling and in rare cases (depending on the injuries) can even fatal. At the time, Plaintiff did not have a cell phone with him; hence, he had no choice but to ask for a telephone to communicate with his parents to come to school, and to pick him up. Plaintiff was very concern since, as said above; these medical symptoms can be severe in its presentation and emotionally draining. In

several other occasions, Plaintiff has been taken to the hospital to be attended. Medical staff was not available at the school clinic during that period off the summer session. Plaintiff proceeded to ask for a telephone at student affairs building. Plaintiff got to that building there where in an office were three persons; Mrs. Sandee Maung (a student affair employee); two other persons were present at that office...unnamed students. The office's door was opened; Plaintiff kindly and in pain explained to Ms. Maung that Plaintiff had an medical emergency, that I was disabled with ADA accommodation with the school. Ms. Maung denied the use of a school telephone without explanation, and referred Plaintiff to Defendant, University Police for assistance. Plaintiff, and due to his pain, argued... that he just came from the UP, and they in term told plaintiff to go to the student affair office; thus, it was impossible and futile for him at the moment to walk back to the University Police. Plaintiff proceeded respectfully, stating that he would file a complaint against her for cruel action.

(4) On or about the same week, Plaintiff filed a complaint with Ms. Maung's supervisor...Defendant Qui-Qui Balascio and the Provost's office.... Mrs. Carrie Bianchi. Plaintiff's complaint to the Provost's office triggered a retaliatory action on the part of Ms. Maung, by filing a charge of misconduct against Plaintiff. This action was the first retaliation and vindictive attitude from the student affairs office employees, at Purchase College. There were many other retaliatory action to came, as this amended complaint will describe.

(5) On or about the same week Defendant Mrs. Qui-Qui Balascio responded to Plaintiff's complaint, stating that...."it was not Ms. Maung responsibility to provide use of the school telephone and that nowhere on the ADA did it say that they have to let the student use the telephone." Mrs. Balascio dismissed Plaintiff's complaint.

(6)  Few days after Mrs. Balascio dismissal of Plaintiff complaint, Plaintiff received an email, from which the student affair office charged Plaintiff with a code violation of misconduct; this was the first misconduct charge issue by the student affairs Dept. of Purchase College.

(7) On or about the same week… a hearing was conducted by Mr. Denny Santos. Mr. Santos was, at the time, school staff from student affairs.  At the hearing, Mr. Santos used an inappropriate loud voice accusing Plaintiff of misconduct, without taking in consideration, my disability, and or respect for my person and in direct violation of his standard of duty towards a student and a customer.  Attributed to Mr. Santos' rudeness and unethical behavior, Plaintiff decided to abandon the hearing.

(8) On or about the same week Plaintiff received and email stating Plaintiff had been found guilty of the charges since "Plaintiff did not attended the hearing" and issued a reprimand on the record. Please note the record that a student before being issued an expulsion from school, the student affairs must issue; 1) a reprimand, 2) probation, 3) suspension and 4) expulsion from school. Please note the sequence, and the causes of action that SUNY Purchase used to accomplish its unprofessional, retaliatory, and illegal action that led to the filing of the Original and amended complaint, leading to the damages.

## Cause of Action # 7

**For Defendants: SUNY Purchase College; The State of New York; State University of New York SUNY; Wendy Kowalczyk; Qui-Qui Balascio; Ernie Palmeiri**

**Thomas Schawarz; William Howard**

*Plaintiff incorporates as he restates each of the above paragraphs as fully applicable and sets forth herein...*

(1)  This cause of action refers to Defendants'--named above--illegal and unconstitutional actions, policies, and/or intentionally misapplication of such policies, and/or [as/by] way of retaliatory actions, including--but not limited to—other Defendants John Does employees.  Hence, Plaintiff, hereby moves to enforce and request court to apply the enforcement of the: Federal Age Discrimination Act of 1975; titles 42 U.S.C. § 6101 et seq.; 34 C.F.R. Part 110., 45 C.F.R. Part 90.1., and 45 CFR Part 617;  it implementing regulations (45 CFR Part 90) applies to public and private institutions that receive federal funds; for example, SUNY Purchase College, and has been interpreted to apply to admissions policies of post-secondary institutions.  Title IX of the Education Amendments of 1972 prohibits gender discrimination in education and in higher educational programs and in activities receiving federal funds,  20 U.S.C. §§ 1681-1688 (2000) and by several federal  laws and statutes; titles III and V of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, and 12203, failure to provide timely and proper ADA accommodation. The Federal Age Discrimination Act of 1975, titles 42 U.S.C. § 6101 et seq.;  34 C.F.R. Part 110., 45 C.F.R. Part 90.1.,and 45 CFR Part 617, and it implementing regulations (45 CFR Part 90) applies to public and private institutions that receive federal funds; for example...SUNY Purchase College,  admissions policies and application of their policies. Furthermore, Defendants have failed to apply the American with Disability Act (ADA), in a manner of accessible to

prospective or new student such as Plaintiff, Edward Morales Partially-Permanent-Disabled-- as classi-

fied under the Social Security Disability Administration or SSDA, as defined by 42 U.S.C. § 12131 (2),

and Section 504 of the Rehabilitation Act of 1973 29 USC sec (701-796); furthermore, in violation

of title 42 U.S.C. § 12189; by inaccurately applying the balancing strict scrutiny test" on Defendants'

policy or application of its policies. Furthermore, intentionally—after Plaintiff complaint --

misjudgment, ignoring and/invalidation of government documentation that may have ensure—at least

temporarily—the possibility of Plaintiff's valid disability; hence, avoiding possible aggravation of

Plaintiff's injures and/or unnecessary paint and suffering. In addition, defendant's action may have been

motivated by the violations of titles VII of the Civil Rights Act of 1964. And title VII prohibits dis-

crimination based on gender and protects both women and men. 42 U.S.C. § 2000e-2(a)(1) (2000). Ti-

tle IX of the Education Amendments of 1972, also prohibits gender discrimination in education and in

higher educational programs and in activities receiving federal funds. 20 U.S.C. §§ 1681-1688 (2000)

and by several federal laws and statutes; but not limited to the First "Freedom of Speech clause"; 14th

"Due Process clause" and  "Equal Protection clause" Amendment to the US Constitution.


(2) On Or about July 2012, Plaintiff having ONLY year around permanent address, at school

housing (on-campus housing) at 735 Anderson Hill Rd, Purchase, NY 10577. Plaintiff properly notified

the school (registrar, student affair-housing, university police and others), that for legal purposes Plain-

tiff's permanent address was the school address; hence, further US Constitutional protection was/is im-

plied.

(3) On or about the same week of Plaintiff residing on campus, a student, Ms. Tori Galatro.

Plaintiff having no physical knowledge or the physical appearance of Ms. Galatro, she requested an

UNCONSTTUTIONAL "**no-contact order**" against Plaintiff only after the said order was offered by a University Police officer.  To the best of Plaintiff knowledge, Ms. Galatro's complaint accusing Plaintiff of vandalizing the property (a garden), which for some reason she had domain or control over it.  It is unclear, even today, what the specifics of the vandalizing charges were.  It is on the record that Ms. Galatro later retracted from her charges and admitting her mistake.  It is the Plaintiff's belief that the vandalizing accusation was related to an action of the Plaintiff's mother, Alicia Morales, age 83. This action was the removal of some weeds on small area near the Plaintiff on-campus housing. This removal of weeds was for seeding four sticks tomatoes, but plaintiff until this day is unaware of the specifics of the charges.

(4) On or about the same week a unconstitutional "**no-contact**" order was issued by Defendant Ms. Melisa Jones. This Defendant is mainly responsible for most of plaintiff permanent damages. Plaintiff did not physically know Ms. Galatro, thus a no contact order issue to a person that does not know the petitioner is inexplicable. Unknown to Plaintiff, but known to Ms. Galatro at the time she was attending at the same class of Plaintiff. In one class Plaintiff first physically knew/met Ms. Galatro when the professor indicated to Plaintiff her appearance. Professor,

with a law degree—considered inappropriate for Plaintiff to be accused by someone Plaintiff did not physically know. Plaintiff, until this day, has never personality spoken to Ms. Galatro. Due to the strangeness of the accounts, the subsequently actions of the college's Defendants: University Police and Ms. Melisa Jones (college official issuing the so called "**no contact order**")…Plaintiff decided to communicate via email to  Ms. Galatro, an intention to pursue legal action against her for age, sex discrimination and issuing false and defamatory statements against Plaintiff.

(5) On or about the same week,  defendant Ms. Melisa Jones pressed misconduct charges against Plaintiff for violating the so called **"no contact order."** Plaintiff at the time of this incident was attending a summer law classes. One of these classes was,  "Law and the Film". Only a week into this class it was brought to my attention by the Professor, that this student (Ms. Galatro) was attending the same class. The professor (an attorney also) confirmed that Ms. Galatro was in the class and that she knew who the Plaintiff's was.

(6) On or about two weeks after, Defendant, Ms. Qui-Qui Balascio, placed Plaintiff on probation for a violation of **"no contact order."** --sending an email to Ms. Galatro from Plaintiff's private home and private email account.  Defendant, Mrs. Qui-Qui Balascio knowing that Ms. Galatro did not attended the hearing to confirm her accusation; furthermore, the retracted of all charges, proceeded with sanction Plaintiff.  Witnesses for Plaintiff will prove to this court, Defendant Qui-Qui Balascio, action was premeditated retaliatory; furthermore,   defendant's action to harass Plaintiff due to his Prior complaint to the provost office.

(6)Plaintiff first filed his 30-day notice pursuant to 42 U.S.C. § 6104(e) (1).  Intention of legal action, where Mrs. Qui-Qui Balascio and Melissa Jones were named as Defendants. It is Plaintiff's belief that the  filling of the "30-day notice pursuant to 42 U.S.C. § 6104(e) (1)" notice, must have encouraged the students affair department of defendant, Purchase College, including, but not limited to,  Mrs. Balascio and Ms. Melissa Jones to escalate the persecution, find motives outside their school assigned duties to retaliate against the Plaintiff.

## Cause of Action # 8

**For Defendants # 2 SUNY Purchase College; #1 The State of New York; State University of New York SUNY;**

*Plaintiff incorporates as he restates each of the above paragraphs as fully applicable and sets forth herein...*

(1)This cause of action refers to Defendants'--named above--illegal and/or unconstitutional actions, policies, and/or intentionally misapplication of such policies, and/or as/by way of retaliatory actions, including--but not limited to—other Defendants John Does employees—or not. Plaintiff, hereby moves to enforce, and request the court to apply the enforcement of

**Null**

## Cause of Action # 9

**For Defendants; SUNY Purchase College; he State of New York; State University of New York**

**SUNY; Kyle Saud; Wendy Kowalczyk; Thomas Schawarz; Ernie Palmeiri;**

**William Howard**

*Plaintiff incorporates as he restates each of the above paragraphs as fully applicable and sets forth herein...*

(1) This cause of action refers to Defendants'--named above--illegal and unconstitutional actions, policies, and/or intentionally misapplication of such policies, and/or [as/by] way of retaliatory actions, including--but not limited to—other Defendants John Does employees.  Hence, Plaintiff, hereby moves to enforce and request court to apply the

enforcement of the: Federal Age Discrimination Act of 1975; titles 42 U.S.C. § 6101 et seq.;  34 C.F.R. Part 110., 45 C.F.R. Part 90.1., and 45 CFR Part 617; it implementing regulations (45 CFR Part 90) applies to public and private institutions that receive federal funds; for example, SUNY Purchase College, and has been interpreted to apply to admissions policies of post-secondary institutions.  Title IX of the Education Amendments of 1972 prohibits gender discrimination in education and in higher educational programs and in activities receiving federal funds,  20 U.S.C. §§ 1681-1688 (2000) and by several federal  laws and statutes; titles III and V of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, and 12203, failure to provide timely and proper ADA accommodation. The Federal Age Discrimination Act of 1975, titles 42 U.S.C. § 6101 et seq.;  34 C.F.R. Part 110., 45 C.F.R. Part 90.1.,and 45 CFR Part 617, and it implementing regulations (45 CFR Part 90) applies to public and pri-

vate institutions that receive federal funds; for example...SUNY Purchase College, admissions policies and application of their policies. Furthermore, Defendants have failed to apply the American with Disability Act (ADA), in a manner of accessible to prospective or new student such as Plaintiff, Edward Morales Partially-Permanent-Disabled-- as classified under the Social Security Disability Administration or SSDA, as defined by 42 U.S.C. § 12131 (2), and Section 504 of the Rehabilitation Act of 1973 29 USC sec (701-796); furthermore, in violation of title 42 U.S.C. § 12189; by inaccurately applying the balancing strict scrutiny test" on Defendants' policy or application of its policies. Furthermore, intentionally—after Plaintiff complaint --misjudgment, ignoring and/invalidation of government documentation that may have ensure—at least temporarily—the possibility of Plaintiff's valid disability; hence, avoiding possible aggravation of Plaintiff's injures and/or unnecessary paint and suffering. In addition, defendant's action may have been motivated by the violations of titles VII of the Civil Rights Act of 1964. And title VII prohibits discrimination based on gender and protects both women and men. 42 U.S.C. § 2000e-2(a)(1) (2000). Title IX of the Education Amendments of 1972, also prohibits gender discrimination in education and in higher educational programs and in activities receiving federal funds. 20 U.S.C. §§ 1681-1688 (2000) and by several federal laws and statutes; but not limited to the First "Freedom of Speech clause"; 14th "Due Process clause" and "Equal Protection clause" Amendment to the US Constitution.

Facts....

(2) On or about October 2012, Plaintiff was offered to ask for on-campus housing based on locomotion disability for the current fall 2012 school session, immediately upon availability. This offer was made by Plaintiff's academic adviser; Mrs. Kathleen Ceng, which Plaintiff accepted.

(3) On or about the same time Plaintiff's advisor, Mrs. Ceng, communicated to Plaintiff that she requested the housing accommodation to Mr. John Delate (head of on-campus housing).

(4) On or about the same time the Plaintiff notified Mr. John Delate to verify to Mrs. Ceng that the housing was to be ADA accommodation based on Plaintiff physical locomotion impairments.

(5) On or about November 2012, Plaintiff communicated in person with school official Defendant, Mr. Kyle Saud, in charge of on-campus assignments. Mr. Saud confirmed to Plaintiff that an assignment (on-campus housing #AV-1A). This on-campus housing was assigned to Plaintiff for moving-in on December 22, 2012.

(6) Plaintiff then notified his then current landlord, that Plaintiff was vacating the premises at 110 N 3rd Ave, Mt Vernon, NY....on December 22.

(7) A few days prior to December the 22, Plaintiff received an email from Defendant Mr. Kyle Saud, communicated to Plaintiffs that "there would be no on-campus housing for Plaintiff, since new students have preference," thus, denying ADA accommodation based on Plaintiff physical locomotion impairments.

(8) On or about December 23, 2012, an improper emergency housing assignment was offered to Plaintiff at the most expensive school housing rate of approx. over $6,000 per semester, starting in December 2012.

(9) On or about the same time, Plaintiff accepted the improper housing assignment, due to: 1) his health problems and to avoid homeless status, since he had to vacate his room apartment and 2) Mr. Saud promise of a new proper housing assignment before the Spring semester start, on January 23, 2013.

(10) On or about the same time Plaintiff moved in to Apt. AV1-A. Plaintiff proceeded to properly notify the school Registrar, student affair housing, Purchase College University Police and SUNY Attorney, Mrs. Wendy Kowalczyk... that for legal purposes Plaintiff's permanent address, was the assigned on-campus housings address. Hence, *"the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall be issued; but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." by the "equal protection clause,"* **is applicable to Plaintiff. Hence, Purchase college's housing policies is/was not be applicable to students which permanent and only addresses is the on-campus housing address. Thus, the application of such policies is unconstitutional.**

(11) On or about December 2012, Plaintiff met Defendant Mr. Kyle Saud at his office in the students' affair building. At the meeting, Plaintiff asked Mr. Saud "Why new students have preference over students with ADA Accommodation?" defendant Mr. Saud responded.... "Students with ADA accommodation did not have preference over "new-comers." Thus, violating Plaintiff ADA housing accommodation rights. Please note that it is the intention of the Plaintiff to prove that violations in this cause action were premeditated and intentionally executed By Defendant, Mr. Kyle Saud, with the purpose of inflicting hardship to the Plaintiff. Furthermore, defendant Mr. Kyle Saud, perpetrated an incident, which details are not known to Plaintiff. This action lead to the disciplinary suspension. This suspension in term caused the chain reaction of damages Plaintiff is herein claiming. Furthermore, permanently disabling Plaintiff's opportunity for future economic well-being, in addition to all of the well- established advantage that come with a successful graduate education, and subsequent career. Furthermore, Defendant, Kyle Saud, might also be implicated on the physical persecution of Plaintiff

with the purpose of intentionally inflicting emotional harm to Plaintiff. Furthermore, as directly related and as result of this cause of action....

(12) On or about February 2013, Plaintiff received a new-less expensive—in campus housing assignment offered by defendants Kyle Saud and Wendy Kowalczyk; this new on-campus housing was Apt. K1-2. This was a swap (move-out and move-in) with another student.... Mr. Eisenstein Correa.

(13) On or about the same time, Mr. Correa stated to Plaintiff, that he was asking for the swap for reasons that he was being several being verbal abused, by an elder (24 years of age) student, Mr. Christopher DaRosa.

(14) On or about February 6th 2013 Plaintiff proceeded to swap the housing with Mr. Correa, and moved in to his new housing assignment on K1-2. Plaintiff moved-in, however, he encounter several derogatory issues with the new housing...these were: 1) a strong smell of marijuana, inside the apartment, 2) an extreme dirtiness, and unhealthy atmosphere, 3) misplacement of state provide furniture, which may be considered fire hazardous. After the on-campus housing was completed, Mr. Correa explained to Plaintiff that Mr. DaRosa was a drug addict and that he smoke marihuana inside the apartment, and that he was on probation for that reason; a statement that came too late to take in consideration for not swapping apartments; furthermore, why Mr. Kyle Saud, known this drug and drug related probation status of Mr. DaRosa—then know gay person to the community--proceeded to offer to Plaintiff to swap an apartment with two gay persons. It is not inappropriate to assume that two gay person would have the right to have gay sexual activities on the apartment, and that intimacy was going to lost with the arrival of Plaintiff, a 53 years of age, straight male-student. So far Defendant Mr. Kyle Saul with the Knowledge and approval of SUNY Attorney and Defendant Mrs. Wendy Kowalczyk, 1) denied proper ADA accommodation 2) denied proper and equal housing opportunity 3) intentionally

exposed a Disabled student to the unnecessary hardship? Plaintiff is a 53 year old person with, as said before, a proven advocate and strong respect to the civil rights of others. Plaintiff confronted Mr. Da-Rosa the same night. On that meeting the Plaintiff, kindly and respectfully, request Mr. DaRosa to re-frain for doing illegal drugs inside the premises. Mr. DaRosa agreed, also showed the plaintiff the con-tainer where several kind of drugs were present; he also stated that he was on probation for drug use.

(15) The next day, and to the astonishment of the Plaintiff Mr. DaRosa and friend, were not liv-ing at the premises. Plaintiff contacted Mr. Correa requesting information Mr. DaRosa sudden depar-ture; Mr. Correa stated that he had received threatening texts from Mr. DaRosa, and DaRosa animosity towards having a 53-year of age as roommate.

(15a) On Feb 6th 2013 (the same day) Mr. DaRosa filed a complaint with students' affairs. Con-firming his animosity toward an elder student by sating "I came back to my apartment and found 53-year old man sitting on my couch (school provided furniture). It customary for students, when they need to get out a situation that may lead them to problems, to file—even inaccurate—first complaints to create an victimize then-selves.

(16) On  the same week defendant, Ms. Melisa Jones pressed six charges against the Plaintiff, these were cut-pasted as:

ITEM CODE# DESCRIPTION/*RANGE OF SANCTIONS

-Charges related to February 7, 2013:

1. D.3 Damages, defaces, destroys, or tampers with property owned by the college or in the possession of another person. Minimum: Reprimand Maximum: Expulsion

2.F.6 fails to respect the ongoing legitimate functions of classes, meetings, office procedures, study, sleep, or any authorized College activity. Minimum: Reprimand Maximum: Suspension

-Charges related to February 9, 2013:

1. C.3 Threatens, harasses, or intimidates any person, and/or uses words, which reasonably tend to incite an immediate, violent reaction and are specifically directed toward another individual (See also the College's Affirmative Action and Sexual Harassment policies).

Minimum: Disciplinary Probation Maximum: Expulsion

2. C.6 Engages in any behavior against a person which significantly interrupts or prevents that person from carrying out duties and responsibilities associated with his/her role as faculty, staff, or student at the College. Minimum: Reprimand Maximum: Disciplinary Probation

3. E.5 refuses to vacate buildings when any fire emergency warning system is a activated.

Minimum: Residence Probation Maximum: Suspension

3.F.1 fails to respond to a reasonable request of College officials who are acting within their authority. College officials include faculty, staff, administrators, and students who are carrying out assigned work responsibilities. Minimum: Reprimand Maximum: Disciplinary Probation.

Note: The charges on February 9th are related to an alarm that went on my housing due to burnt beard. This incident was entirely mislead by the university police officer, which incident was accidentally taped by the plaintiff. Additional information about this incident shall be provided on discovery. Just three days after swapping the on-campus housing, also to avoid further persecution by the student life Dept. officials... since Plaintiff was being targeted for retaliation, Plaintiff decided to move out of the school housing.  Subsequently Plaintiff was charged $3,312.00 per the 5 weeks school housing. This money—among-- will have to be pay back to Federal student unsubsidized loan

(17) Defendant Ms. Melisa Jones filed disciplinary charges once more against Plaintiff with a violation of **"no contact order"**, since Plaintiff had spoken to Mr. DaRosa. (Alleged defendant at that