No. 05-617

# In the Supreme Court of the United States

LOUISIANA DEPARTMENT OF EDUCATION, ET AL.,
PETITIONERS

*v.*

THEODORE JOHNSON, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT*

**BRIEF FOR THE UNITED STATES IN OPPOSITION**

PAUL D. CLEMENT
  *Solicitor General
    Counsel of Record*
WAN J. KIM
  *Assistant Attorney General*
JESSICA DUNSAY SILVER
SARAH E. HARRINGTON
  *Attorneys*

  *Department of Justice
  Washington, D.C. 20530-0001
  (202) 514-2217*

## QUESTION PRESENTED

Whether the petitioner state agencies are subject to suit for damages for disability discrimination under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 (2000 & Supp. II 2002), because they waived their Eleventh Amendment immunity when they applied for and accepted federal financial assistance.

(I)

## TABLE OF CONTENTS

|  | Page |
|---|---|
| Opinions below | 1 |
| Jurisdiction | 1 |
| Statement | 1 |
| Argument | 9 |
| Conclusion | 15 |

## TABLE OF AUTHORITIES

Cases:

- *Alden* v. *Maine*, 527 U.S. 706 (1999) ... 11
- *Arkansas Dep't of Educ.* v. *Jim C.*, 533 U.S. 949 (2001) ... 10
- *Atascadero State Hosp.* v. *Scanlon*, 473 U.S. 234 (1985) ... 2, 11
- *Barnes* v. *Gorman*, 536 U.S. 181 (2002) ... 2
- *Brady* v. *United States*, 397 U.S. 742 (1970) ... 13
- *Chandler* v. *Lovell*, 537 U.S. 1105 (2003) ... 10
- *College Savings Bank* v. *Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) ... 11
- *Colorado* v. *Spring*, 479 U.S. 564 (1987) ... 13
- *Davis ex rel. LaShonda D.* v. *Monroe County Bd. of Educ.*, 526 U.S. 629 (1999) ... 15
- *Garcia* v. *S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98 (2d Cir. 2001) ... 14
- *Grove City Coll.* v. *Bell*, 465 U.S. 555 (1984) ... 12
- *Hawaii* v. *Vinson*, 537 U.S. 1104 (2003) ... 10
- *Jackson* v. *Birmingham Bd. of Educ.*, 125 S. Ct. 1497 (2005) ... 9, 14


IV

| Cases—Continued: | Page |
|---|---|
| *Kansas* v. *Robinson*, 539 U.S. 926 (2003) | 10 |
| *Koslow* v. *Pennsylvania*: | |
|   302 F.3d 161 (3d Cir. 2002), cert. denied, 537 U.S. 1232 (2003) | 8 |
|   537 U.S. 1232 (2003) | 10 |
| *Lapides* v. *Board of Regents of Univ. Sys.*, 535 U.S. 613 (2002) | 14 |
| *Lau* v. *Nichols*, 414 U.S. 563 (1974) | 11 |
| *Louisiana State Bd. of Elementary & Secondary Educ.* v. *Pace*, 126 S. Ct. 416 (2005) | 7, 9 |
| *Moran* v. *Burbine*, 475 U.S. 412 (1986) | 13 |
| *Ohio EPA* v. *Nihiser*, 536 U.S. 922 (2002) | 10 |
| *Olmstead* v. *L.C.*, 527 U.S. 581 (1999) | 2 |
| *Pace* v. *Bogalusa City Sch. Bd.*: | |
|   325 F.3d 609 (5th Cir. 2003) | 4 |
|   339 F.3d 348 (5th Cir. 2003) | 4 |
|   403 F.3d 272 (5th Cir.), cert. denied, 126 S. Ct. 416 (2005) | 5, 6 |
| *Patterson* v. *Illinois*, 487 U.S. 285 (1988) | 13 |
| *Pennhurst State Sch. & Hosp.* v. *Halderman*, 465 U.S. 89 (1984) | 13 |
| *Petty* v. *Tennessee-Mo. Bridge Comm'n*, 359 U.S. 275 (1959) | 11 |
| *South Dakota* v. *Dole*, 483 U.S. 203 (1987) | 5, 12 |
| *Steward Mach. Co.* v. *Davis*, 301 U.S. 548 (1937) | 12 |
| *Tennessee* v. *Lane*, 541 U.S. 509 (2004) | 14 |
| *WMATA* v. *Barbour*, 125 S. Ct. 1591 (2005) | 10 |

| Constitution and statutes: | Page |
|---|---|
| U.S. Const.: | |
|     Amend. XI | 2, 3, 4, 5, 8 |
|         Spending Clause | 5, 6, 11, 14 |
| Americans with Disabilities Act of 1990, Tit. II, 42 U.S.C. 12131 *et seq.* | 7, 12, 14 |
| Civil Rights Act of 1964, Tit. VI, 42 U.S.C. 2000d *et seq.* | 11 |
| Education Amendments of 1972, Tit. IX, 20 U.S.C. 1681 *et seq.* | 12, 14 |
| Rehabilitation Act of 1973, 29 U.S.C. 791 *et seq.*: | |
|     § 504, 29 U.S.C. 794 | *passim* |
|     § 505, 29 U.S.C. 794a(a)(2) | 2 |
| Rehabilitation Act Amendments of 1986, Pub. L. No. 99-506, § 1003, 100 Stat. 1845 (42 U.S.C. 2000d-7) | 2, 6, 8, 9, 13 |
| 28 U.S.C. 2403(a) | 4 |

# In the Supreme Court of the United States

No. 05-617

LOUISIANA DEPARTMENT OF EDUCATION, ET AL., PETITIONERS

*v.*

THEODORE JOHNSON, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT*

**BRIEF FOR THE UNITED STATES IN OPPOSITION**

## OPINIONS BELOW

The opinion of the en banc court of appeals (Pet. App. 1-18) is reported at 421 F.3d 342. The opinion of the panel of the court of appeals (Pet. App. 19-36) is reported at 330 F.3d 362. The opinions of the district court (Pet. App. 37-59, 60-67) are unreported.

## JURISDICTION

The judgment of the en banc court of appeals was entered on August 15, 2005. The petition for a writ of certiorari was filed on November 11, 2005. The jurisdiction of this Court is invoked under 28 U.S.C. 1254.

## STATEMENT

1. Section 504(a) of the Rehabilitation Act of 1973 prohibits any "program or activity receiving Federal financial assistance" from "subject[ing any person] to

(1)

2

discrimination" on the basis of disability. 29 U.S.C. 794. Individuals have a private right of action for damages against entities that receive federal funds and violate that prohibition. See 29 U.S.C. 794a(a)(2); *Barnes* v. *Gorman*, 536 U.S. 181 (2002); *Olmstead* v. *L.C.*, 527 U.S. 581, 590 n.4 (1999).

In 1985, this Court held that the text of Section 504 was not sufficiently clear to evidence Congress's intent to condition federal funding on a waiver of Eleventh Amendment immunity for private damages actions against state entities. See *Atascadero State Hosp.* v. *Scanlon*, 473 U.S. 234, 245-246 (1985). In response to *Atascadero*, Congress enacted 42 U.S.C. 2000d-7 as part of the Rehabilitation Act Amendments of 1986, Pub. L. No. 99-506, § 1003, 100 Stat. 1845. Section 2000d-7 provides, in relevant part:

> (1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794] * * *.
>
> (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

42 U.S.C. 2000d-7(a).

2. This petition involves consolidated cases brought by plaintiffs alleging discrimination by the recipients of federal financial assistance in violation of Section 504.

a. *Johnson* v. *Louisiana Department of Education*: Theodore Johnson, who is disabled due to partial paraly-

sis in his left foot, was a full time student at the University of New Orleans (UNO). Pet. App. 37-38. The Veterans' Administration paid for the first two years of Johnson's time at UNO, after which Johnson received financial aid from the University. *Id.* at 38. In February of 2000, Johnson withdrew from UNO due to a medical emergency and provided medical documentation to the University. On June 13, 2000, UNO informed Johnson that he was no longer eligible for financial aid, and required him to file a written appeal from that decision. Johnson ultimately prevailed in his administrative appeal, but the appeals committee imposed certain conditions on Johnson's continued eligibility for financial aid—namely, that he successfully complete 75% of the classes he registered for in the Fall 2000 semester and that he attain at least 2.50 grade point average for the Fall 2000 semester. *Ibid.* Johnson, however, was not notified that he prevailed in his appeal until after the Fall 2000 semester was already underway. Johnson claims that, because of his late start, he was able only to attain a 1.97 grade point average. *Ibid.* Johnson was notified that he was denied financial aid for the Spring 2001 semester and was told that no appeal from that decision was possible. *Id.* at 38-39. Johnson requested that the University accommodate his disability and it refused. *Id.* at 39.

Johnson filed a *pro se* complaint in the United States District Court for the Eastern District of Louisiana, alleging that the University discriminated against him on the basis of his disability in violation of Section 504 of the Rehabilitation Act and various other statutory provisions, and seeking damages. Pet. App. 40. Petitioners moved to dismiss Johnson's claims on various grounds, including Eleventh Amendment immunity. The district

4

court denied their motion as to Section 504. *Id.* at 49, 59. Petitioners took an interlocutory appeal. *Id.* at 21.

b. *August* v. *Mitchell*: Lynn August, who is blind, was employed as a computer instructor by the Louisiana Department of Social Services. Pet. App. 4, 60. In June 2000, August was fired for failing to submit certain "manual materials," though August alleges that he submitted the materials at the same time as a sighted instructor who was, presumably, not fired. *Id.* at 61. August sued petitioners, the state agency and three state employees in their official capacities, alleging violations of Section 504, as well as several other statutes, and seeking damages. *Id.* at 60, 62. Petitioners asserted Eleventh Amendment immunity to August's Section 504 claim, and the district court rejected that claim. *Id.* at 67. Petitioners filed an interlocutory appeal. *Id.* at 21.

3. The two appeals were consolidated in the Fifth Circuit, after which the United States intervened pursuant to 28 U.S.C. 2403(a) to defend the constitutionality of the statutory provisions conditioning the receipt of federal financial assistance on a knowing and voluntary waiver of sovereign immunity. On May 5, 2003, a panel of the Fifth Circuit issued its opinion adhering to then-recent circuit precedent in *Pace* v. *Bogalusa City Sch. Bd.*, 325 F.3d 609 (5th Cir. 2003), holding that the Eleventh Amendment precluded private suits against state entities under Section 504. Pet. App. 19-24. Judge Wiener filed a dissenting opinion disagreeing with the earlier panel's decision in *Pace* and stating his view that the panel in the instant case should have refrained from issuing a decision until after the full court had decided whether to rehear *Pace* en banc. The full Fifth Circuit ultimately granted the rehearing petitions filed by the United States and the plaintiff in *Pace*, 339 F.3d 348

5

(2003), and later granted rehearing petitions filed by the United States and plaintiffs in the instant case and in one other case, *Miller* v. *Texas Tech Health Sciences Center*, No. 02-10190, raising the same immunity issue.

4. On rehearing en banc, the Fifth Circuit in *Pace* issued its decision on March 8, 2005, holding that the state agency defendant knowingly and voluntarily waived its Eleventh Amendment immunity to claims under Section 504 when it accepted federal funds, and that Section 504 is a valid exercise of Congress's authority under the Spending Clause. *Pace* v. *Bogalusa City Sch. Bd.*, 403 F.3d 272, cert. denied, 126 S. Ct. 416 (2005). Relying on this Court's decision in *South Dakota* v. *Dole*, 483 U.S. 203 (1987), the court held that "congressional spending programs that are enacted in pursuit of the general welfare and unambiguously condition a state's acceptance of federal funds on reasonably related requirements are constitutional *unless* they are either (1) independently prohibited or (2) coercive." 403 F.3d at 279. The court noted that the State had not disputed that the Spending Clause statute at issue in the case was "enacted in pursuit of the general welfare" and was "sufficiently related to the federal interest in the program funded." *Id.* at 280. The court proceeded to consider the other requirements for a valid exercise of congressional power under the Spending Clause.

The court held that the conditions on federal spending in Section 2000d-7 are "unambiguous." 403 F.3d at 282. The court explained that "during the relevant time period, [Section] 2000d-7 * * * put each state on notice that, by accepting federal money, it was waiving its Eleventh Amendment immunity." *Id.* at 284. The court rejected petitioners' attempt to "engraft[] a subjective-intent element onto the otherwise objective Spending

6

Clause waiver inquiry," holding that the fact that a State "might not 'know' subjectively whether it had any immunity [left] to waive by agreeing to th[e] [statutory] conditions is wholly irrelevant." *Ibid.* The court concluded that, in light of the unambiguous statutory condition, the State's "waiver of Eleventh Amendment immunity to actions under § 504 * * * was knowing." *Id.* at 285.

The court also held that Section 2000d-7 does not violate any independent constitutional prohibition. The court concluded that the statute does not violate the "unconstitutional-conditions" doctrine, because States as sovereigns, unlike private parties, have the resources to protect their interests and because in any event the need to protect a State from "coercion or compulsion * * * is subsumed in the non-coercion prong of the *Dole* test." 403 F.3d at 286-287. The court also concluded that the conditions in Section 2000d-7 are not unduly coercive. The court noted that, to avoid suit under Section 504, a "state would not have to refuse all federal assistance." *Id.* at 287. Instead, "[a] state can prevent suits against a particular agency under § 504 by declining federal funds for that agency." *Ibid.* The court accordingly "refuse[d] to invalidate Louisiana's waiver on coercion grounds." *Ibid.*

Judge Jones, joined by five other judges, concurred in part and dissented in part. 403 F.3d at 297-303. She agreed with the majority that the Spending Clause statutes at issue in this case are "not unconstitutionally coercive." *Id.* at 299 n.2. But in her view, a State may not be found to have waived its sovereign immunity unless it "possess[ed] actual knowledge of the existence of the right or privilege, full understanding of its meaning, and *clear comprehension of the consequences of the waiver.*" *Id.* at 300 (internal quotation marks and citation omit-

ted). Adopting the reasoning of the panel decision that she had authored, Judge Jones stated her view that a State could reasonably have believed "between 1996 and 1998 that it had no sovereign immunity to waive" because the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12131 *et seq.*, had purported to abrogate its immunity to claims under that statute. *Id.* at 301. In her view, although "[t]he State voluntarily accepted federal funds" during that period, the purported abrogation of its immunity to ADA claims meant that "its acceptance [of federal funds] was not a 'knowing' waiver of immunity" to claims under Section 504. *Ibid.*

This Court recently denied a petition for certiorari filed by Louisiana in *Pace*. See *Louisiana State Bd. of Elementary & Secondary Educ.* v. *Pace*, 126 S. Ct. 416 (2005).

5. After issuing its decision in *Pace*, the en banc Fifth Circuit heard oral argument in the instant action, together with *Miller* v. *Texas Tech Health Sciences Center*, No. 02-10190, in order to consider any issues that were not disposed of in *Pace*.[1] On August 15, 2005, the en banc court issued its opinion addressing three remaining challenges to the validity of conditioning the receipt of federal funds on a state agency's waiver of immunity to claims under Section 504.

First, the court of appeals rejected the States' contention that they did not waive their immunity to suits under Section 504 because the agencies that accepted the clearly conditioned federal funds were not autho-

---

[1] Although petitioners state (Pet. 7) that the instant action was consolidated with *Miller*, and the en banc Fifth Circuit refers to the appeals as "consolidated," Pet. App. 3, the instant action was never formally consolidated with *Miller*, and Texas—the state defendant in *Miller*—has not filed a petition for certiorari.

rized to waive their immunity, though they were authorized to apply for and accept the conditioned funds. Pet. App. 8-9. The court held that, by authorizing the state agencies to "accept the benefits of substantial sums of federal Spending Clause money burdened with the clearly stated condition under § 2000d-7 that acceptance waives immunity from suit in federal court" for suits under Section 504, the States effectively authorized the agencies to waive their Eleventh Amendment immunity. *Id.* at 9.

Second, the court of appeals rejected Texas's challenge to Sections 504 and 2000d-7 on "relatedness" grounds. Pet. App. 10-13. Texas argued that, because the federal funds its agency received were not funds provided directly under the Rehabilitation Act itself, the conditions in Sections 504 and 2000d-7 are not "reasonably related to the purpose of the expenditure to which they are attached" as required by the *Dole* test. See Pet. App. 10 & n.15. The court rejected that contention, holding that Congress's interest in "eliminating disability-based discrimination" in federally-funded programs "flows with every dollar spent by a department or agency receiving federal funds." *Id.* at 12 (quoting *Koslow v. Pennsylvania*, 302 F.3d 161, 175-176 (3d Cir. 2002), cert. denied, 537 U.S. 1232 (2003)). Petitioners in the instant case did not raise a relatedness challenge in the court of appeals.

Finally, the court of appeals rejected petitioners' argument that it did not "knowingly" waive its immunity by accepting federal funds because it might have thought at the time it took the funds that it did not have any immunity to waive. Pet. App. 13-17. Although petitioners acknowledged that the en banc court had rejected the same "no knowing waiver" argument in *Pace*,

it argued that this Court's recent decision in *Jackson* v. *Birmingham Board of Education*, 125 S. Ct. 1497 (2005), required the court to reconsider *Pace*. According to petitioners, this Court in *Jackson* "repudiated th[e] 'clear statement rule' and replaced it with a 'notice' rule," under which a State will not be found to have waived its sovereign immunity based on particular conduct unless it should have known that accepting the funds would subject it to liability for engaging in that conduct. Pet. App. 14-15. The court of appeals noted that nothing in *Jackson* "can be pointed to in support of a conclusion that the Court desired to modify, much less repudiate, the well-established [clear statement] rule." *Id.* at 16. The court held instead that, consistent with long-standing precedent, the "clear and unambiguous" waiver condition in Sections 504 and 2000d-7 was sufficient to render a State's acceptance of federal funds a knowing waiver of immunity. *Ibid.*

Judge Jones, joined by five other judges, concurred in part and dissented in part. Although they agreed with the three holdings of the *en banc* court in this case, they reiterated their disagreement with the court's decision in *Pace*. Pet. App. 17-18.

## ARGUMENT

The decision of the court of appeals is correct and does not conflict with any decision of this Court nor implicate any conflict of continuing significance with any other court of appeals. In addition, this Court recently denied certiorari in a case presenting the identical questions presented here. *Louisiana State Bd. of Elementary & Secondary Educ.* v. *Pace*, 126 S. Ct. 416 (2005) (No. 04-1655). There is no reason for a different result here. Further review is not warranted.

10

1. This Court has frequently denied petitions for certiorari raising arguments indistinguishable from those advanced by petitioners. See *WMATA v. Barbour*, 125 S. Ct. 1591 (2005) (No. 04-748); *Kansas v. Robinson*, 539 U.S. 926 (2003) (No. 02-1314); *Pennsylvania Dep't of Corr. v. Koslow*, 537 U.S. 1232 (2003) (No. 02-801); *Hawaii v. Vinson*, 537 U.S. 1104 (2003) (No. 01-1878); *Chandler v. Lovell*, 537 U.S. 1105 (2003) (No. 02-545); *Ohio EPA v. Nihiser*, 536 U.S. 922 (2002) (No. 01-1357); *Arkansas Dep't of Educ. v. Jim C.*, 533 U.S. 949 (2001) (No. 00-1488). Moreover, on October 11, 2005, this Court denied the State's petition for certiorari in *Pace*.

On November 11, 2005, petitioners filed the instant petition for certiorari. Apart from a few minor differences in wording, the instant petition is identical to that filed in *Pace*. Compare, *e.g.*, Pet. 8-9 (Reasons for Granting the Writ) and 30 (Conclusion) with 04-1655 Pet. at 8-9 (Reasons for Granting the Writ) and 30 (Conclusion). Nothing has changed in the few months since this Court denied certiorari in *Pace* that would warrant any different result here. Accordingly, for the same reasons that the Court has previously denied further review in *Pace* itself and in cases from other circuits, and for the reasons given in the government's Brief in Opposition in *Pace*, further review is not warranted here.

2. Petitioners do not dispute that the language of Section 504 makes clear that a State agency may accept federal funds only if the State waives the agency's sovereign immunity for claims under Section 504. Conditioning receipt of federal funds on a State agency's waiver of sovereign immunity to suit under Section 504 does not

Case 7:13-cv-02586-NSR   Document 37-5   Filed 04/17/14   Page 16 of 20

11

impose an unconstitutional condition on the State. See Pet. 9-18.

This Court has made clear that its recent sovereign immunity cases have done nothing to undermine well-settled authority under which Congress may condition federal "gifts," such as federal financial assistance, on a State's waiver of sovereign immunity. See *College Sav. Bank* v. *Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 686-687 (1999); see also *Alden* v. *Maine*, 527 U.S. 706, 755 (1999); *Atascadero State Hosp.* v. *Scanlon*, 473 U.S. 234, 247 (1985). Cf. *Petty* v. *Tennessee-Mo. Bridge Comm'n*, 359 U.S. 275, 277, 281-282 (1959). No court of appeals—indeed, none of the appellate judges (including the concurring and dissenting judges in this case) who have questioned the applicability of Section 504 to the States on other grounds—has suggested that Section 504 is invalid as applied to the States under the reasoning of this Court's unconstitutional conditions cases. See Pet. 11 n.26 (citing appellate cases upholding Section 504 and dissenting opinions). See generally 04-1655 Br. in Opp. at 11-15.

3. Petitioners erroneously argue (Pet. 18-25) that the conditions Congress placed upon the receipt of federal funds by enacting Section 504 are unconstitutionally coercive. Although petitioners claim that the courts of appeals have adopted varying approaches to determining whether federal Spending Clause statutes are unconstitutionally coercive, the differences are largely ones of verbal formulation rather than real substance. Petitioners do not cite a single case in which a court of appeals has applied the coercion test to invalidate *any* federal statute, let alone the statute at issue in this case. This Court has consistently rejected similar challenges to other statutes. See also *Lau* v. *Nichols*, 414 U.S. 563,

12

569 (1974) (rejecting similar challenge to VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d *et seq.*); *Grove City Coll. v. Bell*, 465 U.S. 555, 575-576 (1984) (rejecting similar challenge to Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 *et seq.*).

This Court noted in *Dole* that its "decisions have recognized that in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.'" 483 U.S. at 211 (quoting *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937)). In *Steward Machine* itself, however, the Court expressed doubt about the viability of such a theory. 301 U.S. at 590 (finding no undue influence even "assum[ing] that such a concept can ever be applied with fitness to the relations between state and nation"). Moreover, the Court in *Dole* also recognized that every congressional spending statute "is in some measure a temptation." *Dole*, 483 U.S. at 211 (quoting *Steward Mach.*, 301 U.S. at 589). As the Court explained, however, "to hold that motive or temptation is equivalent to coercion is to plunge the law in endless difficulties." *Ibid.* (quoting *Steward Mach.*, 301 U.S. at 589-590). In *Dole*, the Court reaffirmed the assumption, founded on "a robust common sense," that the States voluntarily exercise their power of choice when they accept or decline the conditions attached to the receipt of federal funds. *Ibid.* The same conclusion is applicable here. See generally 04-1655 Br. in Opp. at 15-17.

4. Finally, petitioners' waiver of sovereign immunity to suits under Section 504 was valid and knowing. See Pet. 25-30. The fact that petitioners may have subjectively believed that Congress had validly abrogated the State's immunity to suit under a different statute—Title II of the Americans with Disabilities Act of 1990, 42

U.S.C. 12131 *et seq.*—did not provide the State with a license both to accept federal funds clearly conditioned upon a waiver of immunity to suit under Section 504 and to deny that it had waived immunity from suit under Section 504. Since the enactment of Section 2000d-7 in 1986, the plain text of that provision has informed every state agency that acceptance of federal funds constituted a waiver of immunity to suit for violations of Section 504. As in other contexts, what must be known for a valid waiver of sovereign immunity to claims under Section 504 is the existence of the legal right to be waived and the direct legal consequence of the waiver, not the practical implications or costs of waiving the right.[2] A state agency that accepted federal funds thus would have known since 1986 that it was giving up any immunity it might have to suit under Section 504, regardless of whether it believed that Congress had abrogated its immunity to liability under a distinct statute—the ADA—that imposed similar substantive obligations. Cf. *Pennhurst State Sch. & Hosp.* v. *Halderman*, 465 U.S. 89, 103 n.12 (1984) (immunity must be assessed on a

---

[2] See *Colorado* v. *Spring*, 479 U.S. 564, 574 (1987) ("The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege."); *Moran* v. *Burbine*, 475 U.S. 412, 421-423 (1986); see also *Patterson* v. *Illinois*, 487 U.S. 285, 294 (1988) (waiver not rendered unknowing simply because a party "lacked a full and complete appreciation of all of the consequences flowing from his waiver") (internal quotation marks omitted); *Brady* v. *United States*, 397 U.S. 742, 757 (1970) ("The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. * * * [A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.").

claim-by-claim basis). The State's subjective beliefs about the practical value of its immunity to suit under Section 504 are of no relevance in the analysis.[3] See generally 04-1655 Br. in Opp. at 17-23.

Petitioners err in arguing that the court of appeals' determination that the State's waiver of its immunity was knowing and voluntary conflicts with this Court's recent decision in *Jackson* v. *Birmingham Board of Education*, 125 S. Ct. 1497 (2005). The Court held in *Jackson* that recipients of federal funds should have understood that the term "sex discrimination" in Title IX of the Education Amendments of 1992 encompassed retaliation against those who complain of violations. In reaching that conclusion, the Court reiterated the principle that recipients of conditioned federal funds may be sub-

---

[3] Citing *Garcia* v. *S.U.N.Y. Health Sciences Center*, 280 F.3d 98 (2d Cir. 2001), petitioners contend (Pet. 28) that "[t]he Circuit Courts of Appeal are split on the proper analysis to employ in determining whether a state has notice of waiver requirements." There is no direct or continuing conflict created by *Garcia*. That case held that a State did not waive immunity to suit under Section 504 when it accepted federal funds under the mistaken belief that its immunity to suit under the ADA had been abrogated. *Garcia* was mistaken when issued, and it in any event has been effectively overridden by this Court's subsequent decisions in *Lapides* v. *Board of Regents of University System*, 535 U.S. 613, 621 (2002), and *Tennessee* v. *Lane*, 541 U.S. 509 (2004). See 04-1655 Br. in Opp. at 21. In addition, the decision in *Garcia* essentially announced a transitional rule that is of no continuing effect; the court recognized that the State's waiver to suits under Section 504 may well have regained its full effectiveness at some point in the late 1990's, when it became clear that Congress's attempted abrogation of sovereign immunity in Title II of the ADA was subject to doubt. See *Garcia*, 280 F.3d at 114 n.4. See also 04-1655 Br. in Opp. at 22-23. For future cases, it would appear that the Second Circuit would agree with all other circuits that acceptance of federal funds waives sovereign immunity to suit under Section 504.

ject to suits for damages for conduct in violation of a Spending Clause statute only if the recipients "had adequate notice that they could be liable for the conduct at issue." *Id.* at 1509 (quoting *Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640 (1999). The court of appeals faithfully applied that principle in the instant case when it held that, because the federal funds accepted by petitioners were clearly conditioned upon a waiver of petitioners' immunity, petitioners were put on adequate notice that they would not be immune to claims under Section 504 if they accepted federal funds.

Thus, the decision of the court of appeals is entirely consistent with the analysis and result in *Jackson*. In any event, *Jackson*, a Title IX case, had no occasion to consider the specific issues presented here.

## CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

> PAUL D. CLEMENT
> *Solicitor General*
> WAN J. KIM
> *Assistant Attorney General*
> JESSICA DUNSAY SILVER
> SARAH E. HARRINGTON
> *Attorneys*

JANUARY 2006