1 of 1 DOCUMENT

American Jurisprudence, Second Edition
Copyright © 2014 West Group

Laura Hunter Dietz, J.D., Alan J. Jacobs, J.D., Theresa Leming, J.D., Lucas Martin, J.D., The National Legal Research Group, Inc., Jeffrey Shampo, J.D., Eric Surette, J.D., Lisa Zakolski, J.D.

Negligence

57A Am Jur 2d Negligence Summary

Negligence Summary

**Scope:**
This article discusses negligence, generally, and includes a discussion of the general nature, definition, and classifications of negligence. It also includes discussions of the elements of actionable negligence; standards of care; degrees of negligence; dangerous agencies, instrumentalities, and activities; proximate or legal cause; violation of statutes, ordinances, or administrative orders as constituting negligence; the concept of assumption of the risk and its effect on negligence; contributory negligence and comparative negligence; imputed negligence and vicarious liability; and the res ipsa loquitur doctrine.

**Federal Aspects:**
The Federal Employers' Compensation Act is generally covered in Am. Jur. 2d, Federal Employers' Liability and Compensation Acts. The Federal Tort Claims Act is generally covered in Am. Jur. 2d, Federal Tort Claims Act. The Federal Employers' Liability Act is generally covered in Am. Jur. 2d, Federal Employers' Liability and Compensation Acts. The Jones Act is generally covered in Am. Jur. 2d, Federal Employers' Liability and Compensation Acts.

**Treated Elsewhere:**
Accountants, negligence of, or contributory or comparative negligence as defense to liability of, see Am. Jur. 2d, Accountants §§ 19, 21, 24, 25, 27
Acknowledgment, making of defective or untrue certificate, negligence of officer as basis of liability, and liability for agent's negligent taking of, see Am. Jur. 2d, Acknowledgments §§ 96, 97
Adjoining landowners, negligence as basis of liability between, generally, see Am. Jur. 2d, Adjoining Landowners § 12
Adoption: adoption agency's liability in negligence for placement or failing to place child, see Am. Jur. 2d, Adoption § 25; ability of child to sue one through whose negligence she was injured even though person subsequently adopted child before commencement of action, see Am. Jur. 2d, Adoption § 181
Agent and principal, liabilities of, between, and to third persons, see Am. Jur. 2d, Agency §§ 204 et seq., 262 et seq., 291 et seq.
Aircraft, liability in negligence from operation of, generally, see Am. Jur. 2d, Aviation §§ 108 et seq.
Architects' liability, generally, see Am. Jur. 2d, Architects §§ 23 et seq.
Attorneys, liability for malpractice, see Am. Jur. 2d, Attorneys at Law §§ 212 et seq.
Attractive-nuisance doctrine, generally, see Am. Jur. 2d, Premises Liability §§ 270 et seq.
Boats: negligence liability for injuries or damage resulting from operation of boat, defective condition of, or damage or loss of boat during bailment, see Am. Jur. 2d, Boats and Boating §§ 35 et seq., 79 et seq., 82 et seq., 85 to 87 et seq.; criminal liability of captain, engineer, pilot, or other person employed on "any vessel," by whose misconduct, negligence, or inattention to his duties on such vessel, and of every owner through whose fraud, neglect, connivance, misconduct, or violation of law, the life of any person is destroyed, see Am. Jur. 2d, Boats and Boating §§ 19, 20
Broker's liability to third persons for negligent misrepresentation, see Am. Jur. 2d, Brokers § 147
Builder-vendor of new structure, liability for negligence in construction, see Am. Jur. 2d, Vendor and Purchaser §§ 330, 331

Business trusts, liability of trustees, officers, and agents of, for negligence, see Am. Jur. 2d, Business Trusts § 63
Carriers, negligence liability for personal injuries, see Am. Jur. 2d, Carriers §§ 856 et seq.; loss or damage to property, see Am. Jur. 2d, Carriers §§ 534 et seq.
Clerks of court, liability for negligence, see Am. Jur. 2d, Clerks of Court
Community property states, imputation of spouse's negligence as affecting actions in, see Am. Jur. 2d, Community Property § 90
Contribution among joint tortfeasors, see Am. Jur. 2d, Contribution §§ 40 et seq.
Corpses, liability for negligent conduct with regard to, see Am. Jur. 2d, Dead Bodies §§ 28 et seq., 75 to 77, 79, 82, 84
Criminal law: criminal negligence, generally, see Am. Jur. 2d, Criminal Law §§ 136, 137; contributory negligence as defense to criminal prosecution, see Am. Jur. 2d, Criminal Law §§ 470, 471
Damages, generally, see Am. Jur. 2d, Damages
Death on the High Seas Act, comparative negligence as applicable in action under, see Am. Jur. 2d, Admiralty § 167
Electrical current, service, equipment, or appliances, negligence liability for injury or damage from, see Am. Jur. 2d, Energy and Power Sources §§ 215 et seq.
Employee's liability for injury to third person, see Am. Jur. 2d, Employment Relationship §§ 488 et seq.
Employer's liability for injuries to employees, see Am. Jur. 2d, Employment Relationship §§ 248 et seq.; vicariously to third parties for acts of employees causing injury, see Am. Jur. 2d, Employment Relationship §§ 459 et seq.; to third parties for negligent hiring, retention, or supervision, see Am. Jur. 2d, Employment Relationship §§ 472 et seq.
Evidence: admissibility of defendant's habits of negligence or habitual negligent conduct, generally, see Am. Jur. 2d, Evidence § 396; admissibility of evidence showing payment or offer or promise of payment of medical, hospital, and similar expenses of injured party to establish negligence on part of party making payment, offer, or promise, see Am. Jur. 2d, Evidence § 480; admissibility of evidence in negligence case showing that the defendant carries liability insurance, see Am. Jur. 2d, Evidence §§ 483 et seq.; weight and sufficiency of evidence in negligence actions, generally, see Am. Jur. 2d, Evidence §§ 1432, 1433
Explosion of boilers, negligence liability for, see Am. Jur. 2d, Explosions and Explosives §§ 132, 133
Explosives, liability in negligence for blasting or use, transportation, or storage, of, generally, see Am. Jur. 2d, Explosions and Explosives §§ 24, 25, 72 to 74, 115 to 117, 126
Fair Credit Reporting Act, negligence for failing to comply with requirements of, see Am. Jur. 2d, Collection and Credit Agencies § 68
False imprisonment: as distinguished from negligence, see Am. Jur. 2d, False Imprisonment § 7; negligence of plaintiff as barring recovery for, see Am. Jur. 2d, False Imprisonment § 61
Federal Employers' Liability Act, effect of common law defense of contributory negligence under, see Am. Jur. 2d, Federal Employers' Liability and Compensation Acts §§ 7, 8
Gas, liability for injury or damage from, see Am. Jur. 2d, Energy and Power Sources §§ 368 et seq.
Guardian's liability for negligence in loaning or investing funds of ward, and liability for interest thereon, see Am. Jur. 2d, Interest and Usury § 33
Hospitals and nursing homes, liability in negligence for injuries in connection with, see Am. Jur. 2d, Hospitals and Asylums §§ 27 et seq.
Hotels, motels, and restaurants, liability for personal injuries or indignities, see Am. Jur. 2d, Hotels, Motels, and Restaurants §§ 79 et seq.; loss or damage to property, see Am. Jur. 2d, Hotels, Motels, and Restaurants §§ 130 et seq.
Intermingling of goods with that of another, forfeiture of property for negligent, see Am. Jur. 2d, Accession and Confusion § 11
Limitation of actions for tort actions, generally, including professional negligence or malpractice, see Am. Jur. 2d, Limitations of Actions §§ 142 to 146
Mail: Mail contractors' liability for negligence or negligent acts of employees while engaged in carrying mails, see Am. Jur. 2d, Post Office §§ 85, 87; inability to impute liability to postmaster at post office of addressee of posted letter for nondelivery, see Am. Jur. 2d, Post Office § 106
Motor vehicle operations, accidents, and actions arising therefrom, negligence in context of, generally, see Am. Jur. 2d, Automobiles and Highway Traffic §§ 106, 399, 450, 500 to 502, 580, 632, 676 to 679, 700 to 703, 809, 924, 1146, 1147, 1150, 1165 to 1167, 1203 to 1207, 1209, 1265, 1309 to 1311
Municipal, school, and state tort liability, liability for negligence, generally, see Am. Jur. 2d, Municipal, School, and State Tort Liability §§ 99 et seq.
Nuclear accident claims, federal law establishing cause of action for, as not preempting state law actions for negligence, see Am. Jur. 2d, Energy and Power Sources § 471
Physicians' liability for malpractice, see Am. Jur. 2d, Physicians, Surgeons, and Other Healers §§ 185 et seq.

Pleadings in negligence actions, generally, see Am. Jur. 2d, Pleading § 217; changing allegations relating to negligence, see Am. Jur. 2d, Pleading § 794; variance with proof, see Am. Jur. 2d, Pleading § 926

Premises liability, generally, see Am. Jur. 2d, Premises Liability

Prenatal injuries or wrongfully causing birth, wrongful life, pregnancy, or conception, negligence as basis of action for, generally, see Am. Jur. 2d, Prenatal Injuries; Wrongful Life, Birth, or Conception §§ 9, 38, 146

Products liability, generally, see Am. Jur. 2d, Products Liability

Proxy provisions of Exchange Act, negligence standard as applicable to conduct constituting violations of, see Am. Jur. 2d, Securities Regulation -- Federal §§ 1423 to 1426

Public amusements and entertainment, liability for personal injuries in connection with, see Am. Jur. 2d, Entertainment and Sports Law §§ 54 et seq.

Public officers' liability for negligence, generally, see Am. Jur. 2d, Public Officers and Employees §§ 330 to 332

Railroads' liability, including liability in negligence, for injuries to persons and property, see Am. Jur. 2d, Railroads §§ 278 et seq.

Ships and vessels, negligence liability for injury to persons or damage or loss of property in connection with, see Am. Jur. 2d, Shipping §§ 435 et seq., 613 et seq., 674 et seq., 799 et seq.; towage contract, effect of negligence on, see Am. Jur. 2d, Shipping § 907

Steam, liability for injury or damage from, see Am. Jur. 2d, Energy and Power Sources §§ 433 et seq.

Summary judgment, application to negligence actions, generally, see Am. Jur. 2d, Summary Judgment § 8

Surety's right to discharge due to creditor's negligence in preserving securities, see Am. Jur. 2d, Suretyship § 76

Torts, generally, see Am. Jur. 2d, Torts

Unemployment compensation, work-connected negligence as misconduct within meaning of statute precluding discharged employee from benefits, see Am. Jur. 2d, Unemployment Compensation §§ 83, 84

Workers' compensation, statutes immunizing coemployees from tort actions for injuries to workers during course of employment as not immunizing them from actions based on gross negligence, see Am. Jur. 2d, Workers' Compensation § 87

Wrongful death, generally, see Am. Jur. 2d, Death; applicability of comparative negligence to wrongful-death actions brought in admiralty, see Am. Jur. 2d, Admiralty § 165

Wrongful-discharge actions, employee's claims in, for negligent infliction of emotional distress, see Am. Jur. 2d, Wrongful Discharge §§ 159, 160

**REFERENCE: Research References**

West's Key Number Digest, Action
West's Key Number Digest, Automobiles
West's Key Number Digest, Contracts
West's Key Number Digest, Infants
West's Key Number Digest, Negligence
American Law Reports (ALR)
Am. Jur. 2d. (AMJUR)
Am. Jur. Legal Forms 2d. (AMJUR-LF)
Am. Jur. Proof of Facts (AMJUR-POF)
Am. Jur. Pl. & Pr. Forms (AMJUR-PP)
Am. Jur. Trials (AMJUR-TRIALS)
Modern Tort Law: Liability and Litigation 2d (MTLLL)
Restatment of the Law - Contracts (REST-CONTR)
Restatement of the Law - Torts (REST-TORT)
Uniform Laws Annotated (ULA)
U.S. Code Annotated (USCA)
U.S. Const. Art. I, § 8, cl. 3
28 U.S.C.A. §§ 1652, 2072, 2671 et seq.
29 U.S.C.A. §§ 151 et seq., 651 to 678
42 U.S.C.A. § 2210
45 U.S.C.A. §§ 51 et seq.
46 App. U.S.C.A. § 742
Federal Rules of Civil Procedure 41(b), 49

57A Am Jur 2d Negligence Summary                                     Page

Federal Rule of Evidence 606
Ariz Rev Stat Ann § 12-2505(A)
Ark Code § 16-64-122(a)
Conn Gen Stat Ann § 52-572h
Iowa Code § 668.1
Minn Stat § 604.01
NJSA § 59:9-4
23 Okla Stat Ann § 12
Or Rev Stat § 18.475
S.D. Codified Laws Ann § 20-9-2
Utah Code Ann § 78-27-37
A.L.R. Index: Additur or Remittitur
A.L.R. Index: Attorney's fees
A.L.R. Index: Collateral Estoppel
A.L.R. Index: Comparative Negligence
A.L.R. Index: Compromise and Settlement
A.L.R. Index: Compromise Verdict
A.L.R. Index: Concurrent Acts or Matters
A.L.R. Index: Contribution
A.L.R. Index: Contributory Negligence or Assumption of Risk
A.L.R. Index: Costs of Actions
A.L.R. Index: Counterclaim and Setoff
A.L.R. Index: Custom and Usage
A.L.R. Index: Danger and Dangerous Conditions
A.L.R. Index: Default
A.L.R. Index: Degree and Standard of Care
A.L.R. Index: Direction of Verdict
A.L.R. Index: Implied or Imputed Negligence
A.L.R. Index: Instructions to Jury
A.L.R. Index: Intentional, Willful, and Wanton Acts
A.L.R. Index: Intervening Acts or Interest
A.L.R. Index: Joint and Several Liability
A.L.R. Index: Joint Tortfeasors
A.L.R. Index: Judgment Notwithstanding Verdict
A.L.R. Index: Last Clear Chance
A.L.R. Index: Limitation of Liability
A.L.R. Index: Malpractice by Medical or Health Professionals
A.L.R. Index: Negligence
A.L.R. Index: Negligence Per Se
A.L.R. Index: Negligent Entrustment
A.L.R. Index: Pleadings
A.L.R. Index: Presumptions and Burden of Proof
A.L.R. Index: Proximate Cause
A.L.R. Index: Questions of Law and Fact
A.L.R. Index: Rescue
A.L.R. Index: Res Ipsa Loquitur
A.L.R. Index: Special Verdict
A.L.R. Index: Strict or Absolute Liability
A.L.R. Index: Sudden-Emergency Doctrine
A.L.R. Index: Unavoidable or Inevitable Accident
A.L.R. Index: Verdicts
A.L.R. Index: Vicarious Liability
A.L.R. Digest: Compromise and Settlement
A.L.R. Digest: Evidence
A.L.R. Digest: Negligence

57A Am Jur 2d Negligence Summary

Page

A.L.R. Digest: New Trial
A.L.R. Digest: Setoff and Counterclaim
A.L.R. Digest: Trial
Federal Procedure, L. Ed., Trial
Modern Tort Law: Liability and Litigation
Liability of a Physician for Improper Referral of Patients to a Medical-Care Facility in Which the Physician Has a Financial Interest, 61 Am. Jur. Proof of Facts 3d 245
Proof of Automobile Design Defect, 59 Am. Jur. Proof of Facts 3d 73
Negligence in Diagnosis and Treatment of Parkinson's Disease, 56 Am. Jur. Proof of Facts 3d 177
Proof of Employer Liability for Employee Injury from Third-Person Attack, 53 Am. Jur. Proof of Facts 3d 373
Proof of Physical Disability of Driver of Motor Vehicle, 53 Am. Jur. Proof of Facts 3d 67
Proof of Failure to Diagnose Diabetes or Complications of Diabetes, 51 Am. Jur. Proof of Facts 3d 1
Application of the "Plain View Doctrine" to Trip-and-Fall Claims, 41 Am. Jur. Proof of Facts 3d 65
Proof of Negligent Sale, Entrustment, or Storage of Firearm, 37 Am. Jur. Proof of Facts 3d 1
Avoiding the Effect of a Recreational-Activity Liability Release, 33 Am. Jur. Proof of Facts 3d 421
Architect's Negligence, 33 Am. Jur. Proof of Facts 3d 57
Computer Malpractice, 32 Am. Jur. Proof of Facts 3d 1
Negligence Liability for Nonuse of Computer, 31 Am. Jur. Proof of Facts 3d 1
Assumption-of-Risk Defense in Sports- or Recreation-Injury Defenses, 30 Am. Jur. Proof of Facts 3d 161
Punitive Damages in Motor Vehicle Litigation -- Intoxicated Driver, 18 Am. Jur. Proof of Facts 3d 1
Contributory Negligence By Child Pedestrian, 12 Am. Jur. Proof of Facts 3d 105
Failure to Warn as Proximate Cause of Injury, 8 Am. Jur. Proof of Facts 3d 547
Liability of Mobil Vendor for Injury to Child, 8 Am. Jur. Proof of Facts 3d 477
Existence of "Sudden Emergency,", 8 Am. Jur. Proof of Facts 3d 399
Imminent Peril Inviting Rescue Attempt, 7 Am. Jur. Proof of Facts 3d 415
Negligent Hiring of Security Guard, 7 Am. Jur. Proof of Facts 3d 345
Vicarious Liability Under Doctrine Of Ostensible Or Apparent Agency, 6 Am. Jur. Proof of Facts 3d 457
Act of God, 6 Am. Jur. Proof of Facts 3d 319
Negligent Sale or Entrustment of Toys, 2 Am. Jur. Proof of Facts 3d 439
Negligent Maintenance of Industrial Electrical Equipment, 47 Am. Jur. Proof of Facts 2d 413
Landowner's Failure to Provide Adequate Security, 42 Am. Jur. Proof of Facts 2d 173
Tortious Refusal to Allow Use of Telephone, 41 Am. Jur. Proof of Facts 2d 305
Broadcaster's Personal-Injury Liability in Connection with Broadcast, 37 Am. Jur. Proof of Facts 2d 521
Products Liability -- Defective Design of Power Rotary Mower, 33 Am. Jur. Proof of Facts 2d 447
Last Clear Chance, 32 Am. Jur. Proof of Facts 2d 625
Insurer's Liability for Emotional Distress, 32 Am. Jur. Proof of Facts 2d 99
Injury to Rescuer, 29 Am. Jur. Proof of Facts 2d 173
Failure to Prevent Outbreak and Spread of Fire, 23 Am. Jur. Proof of Facts 2d 461
Negligent Fire Inspection by City or State Employee, 22 Am. Jur. Proof of Facts 2d 55
Breach of Warranty as to Effectiveness of Insecticide, 17 Am. Jur. Proof of Facts 2d 459
Failure To Use Reasonable Care In Aiding Injured Person In Peril, 13 Am. Jur. Proof of Facts 2d 709
Existence of Joint Venture, 12 Am. Jur. Proof of Facts 2d 295
Parent's Failure to Supervise Children, 11 Am. Jur. Proof of Facts 2d 541
Tavern Keeper's Liability for Injuries Inflicted by Patron, 7 Am. Jur. Proof of Facts 2d 635
Lack of Care in Entrusting Chattel, 2 Am. Jur. Proof of Facts 2d 651
Railroad Trespasser Accident Litigation, 74 Am. Jur. Trials 157
Hidden and Multiple Defendant Tort Litigation, 68 Am. Jur. Trials 503
Childhood Lead-Based-Paint-Poisoning Litigation, 66 Am. Jur. Trials 47
Gynecological Malpractice Litigation, 64 Am. Jur. Trials 1
Representing Auto-Accident Victims, 58 Am. Jur. Trials 283
Structural Damage to Residential Buildings, 51 Am. Jur. Trials 493
Tort Liability of Owner or Operator of Public Parking Facility, 46 Am. Jur. Trials 1
Social Worker Malpractice For Failure To Protect Foster Children, 41 Am. Jur. Trials 1
Trial of a Personal-Injury Case in a Comparative-Negligence Jurisdiction, 21 Am. Jur. Trials 715
Glass-Door Accidents, 14 Am. Jur. Trials 101

Child-Pedestrian Accident Cases, 9 Am. Jur. Trials 427
Sample Summations, 6 Am. Jur. Trials 807
Summations for the Plaintiff, 6 Am. Jur. Trials 641
Cross-Examination of Defendant, 6 Am. Jur. Trials 297
Mapping the Trial -- Order of Proof, 5 Am. Jur. Trials 505
Opening Statements -- Defense View, 5 Am. Jur. Trials 305
Tactics and Strategy of Pleading, 3 Am. Jur. Trials 681
  Am. Jur. Legal Forms 2d, Compromise and Settlement
  Am. Jur. Legal Forms 2d, Negligence
  Am. Jur. Pleading and Practice Forms, Automobiles and Highway Traffic
  Am. Jur. Pleading and Practice Forms, Aviation
  Am. Jur. Pleading and Practice Forms, Banks
  Am. Jur. Pleading and Practice Forms, Carriers
  Am. Jur. Pleading and Practice Forms, Federal Practice and Procedure
  Am. Jur. Pleading and Practice Forms, Fires
  Am. Jur. Pleading and Practice Forms, Hotels, Motels, and Restaurants
  Am. Jur. Pleading and Practice Forms, Independent Contractors
  Am. Jur. Pleading and Practice Forms, Negligence
  Am. Jur. Pleading and Practice Forms, Prenatal Injuries
Uniform Comparative Fault Act §§ 1, 2, 7
Uniform Contribution Among Tortfeasors Act §§ 4, 5
Uniform Duties to Disabled Persons Act §§ 1 to 12
Uniform Partnership Act (1997) § 305
Restatement Second, Contracts
Restatement Second, Torts
Restatement Second, Torts
Restatement, Contracts

### In addition to My "Motion to Dismiss" I am sure that the Court did know that the charges against are unconstitutional "on its face" and as apply, for the following reasons.

Defendant (Plaintiff herein) argued in the memorandum of law that the People's misdemeanor charge against Plaintiff herein is unconditional of its face as to the terms "annoying and/or alarming" See. *Vives Vs. The City of New York*; 405 F.3d 115 (2005); [attached herein this document, appendix A, case law.] Where, the court said;

> "*violation of § 240.30(1). Speech of this sort may only be proscribed in three very limited circumstances: (1) the speech constitutes "fighting words" that "by their very utterance inflict injury or tend to incite an immediate breach of the peace," Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); (2) the speech constitutes "advocacy [that] is directed to inciting or producing imminent lawless action and is likely to incite or produce such action," Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); and (3) the speech constitutes a "'true threat'" by which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. 124\*124 Black, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (quoting Watts v. United States, 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969)). Section 240.30(1) is not limited to these three categories. By criminalizing speech that merely annoys or alarms, the statute is unconstitutionally overbroad.*"

Furthermore, the court in *Vives* said:

> "Moreover, § 240.30(1) is unconstitutional as applied; 'the general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard, we have said, `was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people,' (*quoting Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957))*."

Plaintiff (descendant the Harrison Court) did engaged in statement of supposition that was intentionally misinterpreted by defendant D. DaGosto. "Statement that cannot be suppressed if it creates an unjustifiable risk of **immediate** breach of the peace, **imminent** lawless action, or a **specific** threat of violence directed to an individual or group. See *Black,* 538 U.S. at 359, 123 S.Ct. 1536. *Chaplinsky, Brandenburg,* and, most recently, *Black,* make clear that while these narrow limitations are consistent with the First Amendment, broader restrictions are not. See *Black,* 538 U.S. at 358-59, 123 S.Ct. 1536; *Brandenburg,* 395 U.S. at 447, 89 S.Ct. 1827; *Chaplinsky,* 315 U.S. at 573-74, 62 S.Ct. 766. As a consequence, insofar as Mr. Morales was arrested under § 240.30(1) for engaging in "**annoying and/or alarming**" speech of a noe student residing in campus at Binghamton University, 300 miles away, who never had a violence at SUNY Purchase; his arrest is plainly unconstitutional.

Carlos VIVES, Plaintiff-Appellee,
v.
The CITY OF NEW YORK, Raymond Kelly, Commissioner of the New York City Police Department, Ming Y. Li; a Detective of the New York City Police Department, and Manwai Lu, a Detective of the New York City Police Department, Defendants-Appellants.

No. 03-9270.

United States Court of Appeals, Second Circuit.

Argued: November 3, 2004.
Decided: December 21, 2004.
As Amended January 18, 2005 and April 29, 2005.

Christopher Dunn (Arthur Eisenberg, of counsel), **New York** Civil Liberties Union Foundation, **New York**, NY, for Plaintiff-Appellee.

Elizabeth I. Freedman (Leonard Koerner, Francis F. Caputo, of counsel; Michael A. Cardozo, on the brief), Corporation Counsel of the City of **New York**, **New York**, NY, for Defendants-Appellants.

116*116 Before: CARDAMONE, MCLAUGHLIN and CABRANES, Circuit Judges.

Judge CARDAMONE filed a separate opinion, dissenting in part and concurring in part.

JOSÉ A. CABRANES, Circuit Judge.

Plaintiff Carlos Vives brought this action against defendants,[1] seeking declaratory and injunctive relief and monetary damages, based on his contention that his First and Fourth Amendment rights were violated when he was arrested for aggravated harassment pursuant to **New York** Penal Law § 240.30(1)[2] ("section 240.30(1)") in connection with his mailing non-threatening religious and political materials to Jane Hoffman, then a candidate for **New York** State Lieutenant Governor, and other "people of the Jewish faith." *Vives,* 305 F.Supp.2d at 294. Vives stated that he sent these materials "with the intent to alarm [the recipients] about current world events that have been prophesied in the Bible." *Id.*

Noting that section 240.30(1) had "never before been declared unconstitutional on its face," the United States District Court for the Southern District of **New York** (Shira A. Scheindlin, *Judge*) nonetheless concluded "that a declaration of [the section's] unconstitutionality was inevitable, and [that,] under these circumstances, the defendants may be said to have had fair notice of [section 240.30(1)'s] unconstitutionality" prior to arresting Vives. *Id.* at 303. The District Court consequently denied Detectives Li and Lu's motion for summary judgment and found that, if

defendants wanted to avoid personal liability, they would have to "prove at trial that their actions were reasonable under the circumstances." *Id.*

Because we hold that defendants did not have fair notice of the District Court's "inevitable" declaration of section 240.30(1)'s unconstitutionality, we reverse the District Court's denial of defendants' motion for summary judgment with respect to the issue of defendants' personal liability.

# DISCUSSION

We review a district court's denial of summary judgment *de novo. Maxwell v.* 117*117 *City of New York*, 102 F.3d 664, 667 (2d Cir.1996).

We have held that

absent contrary direction, state officials ... are entitled to rely on a presumptively valid state statute ... until and unless [the statute is] declared unconstitutional.... The enactment of a law forecloses speculation by enforcement officers concerning [the law's] constitutionality — with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.

*Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102-03 (2d Cir.2003) (citations, quotation marks, and alterations omitted). Despite this directive, the District Court did not apply the standard articulated in *Blumenthal* to defendants' case. Instead, the District Court relied on certain language from *In re State Police Litigation*, 88 F.3d 111 (2d Cir.1996) — a case which did *not* involve state officials acting under the color of a properly-enacted statute — and decided that Detectives Li and Lu were not entitled to rely on the presumptive constitutionality of section 240.30(1)" 'if, *in light of pre-existing law*, the unlawfulness of [their] action[s] was apparent.'" *Vives*, 305 F.Supp.2d at 297 (quoting *In re State Police Litig.*, 88 F.3d at 123).

The District Court then found that pre-existing law "foreshadowed" the unconstitutionality of section 240.30(1), *id.* at 301, with such "obvious clarity" that "a reasonable officer [would have known] that [arresting plaintiff under section 240.30(1) for his mailings] was unlawful," *id.* at 297 (internal citations and quotation marks omitted). In so finding, the District Court relied principally on four cases, *see id.* at 300-01, none of which stands for the proposition that section 240.30(1) is facially unconstitutional.

In the first case relied on by the District Court, *People v. Dupont*, 107 A.D.2d 247, 486 N.Y.S.2d 169 (1st Dep't 1985), the Appellate Division held that section 240.30(1) was unconstitutional only as applied to the facts before it.[3] *People v. Dietze*, 75 N.Y.2d 47, 550 N.Y.S.2d 595, 549 N.E.2d 1166 (1989), the second of the four, dealt with the constitutionality of an entirely different **penal** section.[4] The third case, *Schlagler v. Phillips*, 985 F.Supp. 419 (S.D.N.Y.1997), was reversed on appeal, 166 F.3d 439 (2d Cir.1999).[5] And in the fourth case, *People v. Mangano*, 100 N.Y.2d 569, 764 N.Y.S.2d 379, 796 N.E.2d 470 (2003), the judgment was entered on 118*118 July 2, 2003, more than a year *after* Detectives Li and Lu arrested plaintiff on April 6, 2002.[6] As such, none of these cases could possibly have served as fair notice to

Detectives Li and Lu "that a declaration of [section 240.30(1)'s] unconstitutionality was inevitable." *Vives*, 305 F.Supp.2d at 303.

Far from being "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws," *Blumenthal*, 346 F.3d at 103, several courts have specifically declined to find section 240.30(1) unconstitutional. *See, e.g., People v. Diraimondo*, 174 Misc.2d 937, 667 N.Y.S.2d 205, 207-08 (N.Y. Dist. Ct., Nassau Cty.1997) (finding "that the defendant ... failed to meet the heavy burden of proving [section 240.30(1)] unconstitutional beyond a reasonable doubt"); *People v. Miguez*, 153 Misc.2d 442, 590 N.Y.S.2d 156, 157 (1st Dep't 1992) (rejecting "defendant's contention that her conduct[, which violated section 240.30(1),] qualifie[d] as constitutionally protected speech"); *People v. Katz*, 135 Misc.2d 857, 518 N.Y.S.2d 721, 723 (1st Dep't 1987) ("Defendant's ... argument that [section 240.30(1)] is void for vagueness ... is ... unavailing."). These cases, in conjunction with our ruling in *Schlagler, see* note 5 *ante*, lead us to conclude that the detectives' reliance on the presumptive constitutionality of section 240.30(1) was appropriate.

On the basis of the foregoing, we hold that defendants did not have fair notice of section 240.30(1)'s purported unconstitutionality and that the District Court erred in denying Detectives Li and Lu qualified immunity on that ground. Because we hold that the District Court's denial of qualified immunity to defendants was improper, we do not reach the question of whether **New York Penal Law § 240.30(1)** survives constitutional scrutiny, but save that question for another day. *See Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 57 (2d Cir.2003) (recognizing that, consistent with *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), "we may [in certain circumstances] move directly to [the question of qualified immunity] and refrain from determining whether a constitutional right has been violated");[7] *see also Ashwander v. TVA*, 297 119*119 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); *Anobile v. Pelligrino*, 303 F.3d 107, 123 (2d Cir.2001) ("Principles of judicial restraint caution us to avoid reaching constitutional questions when they are unnecessary to the disposition of a case.").

# CONCLUSION

The portion of the District Court's judgment denying defendants qualified immunity is reversed, and the cause is remanded to the District Court with instructions to enter summary judgment in favor of defendants on the issue of defendants' personal liability.

CARDAMONE, Circuit Judge, concurring in part, and dissenting in part.

I agree with the majority's conclusion that the defendants did not have fair notice of § 240.30(1)'s unconstitutionality, and thus are entitled to qualified immunity. Police officers clearly should not be subjected to liability for failing to substitute their own legal judgment for that of state trial and appellate courts. *See Pierson v. Ray*, 386 U.S. 547, 555, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

I respectfully depart from the majority insofar as it does not address the constitutionality of § 240.30(1). The Supreme Court has instructed us as follows:

In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence.

A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?

*Saucier v. Katz,* 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The majority passes over this preliminary inquiry, holding instead that the "fair notice" prong of the test is not met and from that concluding that there is no need to reach the constitutional question. *Saucier* precludes this approach. Finding a constitutional violation is a prerequisite to reaching the fair notice issue, and answering the constitutional question is therefore "[ ]necessary to the disposition of the case." *Anobile v. Pelligrino,* 303 F.3d 107, 123 (2d Cir.2002). My reasons for this conclusion are detailed in the discussion that follows.[8]

# DISCUSSION

# I

# A. Horne

In *Ehrlich v. Town of Glastonbury,* 348 F.3d 48 (2d Cir.2003), we reaffirmed that "[i]n *Saucier,* the Supreme Court made plain that a sequential two-step analysis of qualified immunity claims is not simply recommended but required." *Id.* at 56-57. *Ehrlich* nonetheless found exceptions to this otherwise straightforward rule, based on principles set forth in our pre-*Saucier* decision, *Horne v. Coughlin,* 191 F.3d 244 120*120 (2d Cir.1999). I dissented in *Horne* because then-governing Supreme Court precedent stated that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only after making such a determination that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). From this I concluded

A federal court faced with a suit alleging the deprivation of a constitutional right under 42 U.S.C. § 1983 should ordinarily decide whether the constitutional right alleged by the plaintiff actually exists, even where the defense of qualified immunity might provide an alternative ground for decision. Although this principle need not govern in each and every case, it is undoubtedly the "[n]ormal [ ]" rule and the "better approach" to constitutional adjudication in § 1983 litigation. Moreover, neither the policy of avoidance of constitutional questions nor the remote possibility of clarifying the law in later suits for injunctive relief justifies a departure from this general principle. Rather, courts remain free to depart from the general rule only in those situations where they can articulate a persuasive reason for doing so.

*Horne*, 191 F.3d at 251-52 (Cardamone, J., dissenting). I did not believe that the *Horne* majority articulated sufficient reasons for avoiding the constitutional question in that case.

## B. Ehrlich

Of course, I was outvoted in *Horne*, and the *Ehrlich* panel sought to salvage what it could of *Horne* in light of the Supreme Court's holding in *Saucier* that the threshold constitutional inquiry is mandatory rather than simply the better approach. Whatever misgivings I may have about *Ehrlich*'s treatment of *Saucier*, *Ehrlich* is the law in the Circuit and must be met on its own terms. Even working within the confines of *Ehrlich*, however, I cannot agree with the majority because *Ehrlich* does not provide authority to allow us to decline to reach the constitutional issue in this case.

*Ehrlich* states that "in those situations in which one can conclude that the Supreme Court did not intend to make the *Saucier* sequence mandatory," the *Horne* principles are relevant to determining whether we should avoid the constitutional question. *Ehrlich*, 348 F.3d at 57. Those principles indicate, for example, that this Court: (1) should address "particularly egregious" constitutional violations before deciding the qualified immunity issue; (2) may pass over "particularly difficult" constitutional questions and move directly to the qualified immunity issue; and (3) when defendants are entitled to qualified immunity, may pass over the constitutional inquiry to avoid "constitutional dicta." *Id.* at 56.

The *Ehrlich* panel identified two situations in which it may "frequently be appropriate" to conclude that the *Saucier* sequence is inapplicable and the *Horne* principles are relevant. *Id.* at 57-58. First, we need not follow the *Saucier* inquiry if there is no "'likelihood that the [constitutional] question will escape federal court review over a lengthy period'" because federal courts will not "repeatedly rely on qualified immunity to decide cases." *Koch v. Town of Brattleboro*, 287 F.3d 162, 166 (2d Cir.2002) (quoting *Horne*, 191 F.3d at 249); see *Ehrlich*, 348 F.3d at 57. Second, we need not follow *Saucier* if "the existence of a constitutional violation depends on the resolution of 121*121 uncertain state law," meaning that a federal court would have to first interpret state law and then decide whether its interpretation presents a constitutional problem. *Ehrlich*, 348 F.3d at 58.

Neither of these exceptions from *Saucier* apply to this case. First, this is precisely the type of constitutional issue that will repeatedly escape review by federal courts. As the majority opinion demonstrates, numerous **New York** state courts have upheld the constitutionality of § **240.30**(1) or have applied the law as if it was constitutional. Thus, police officers — like the defendants in this case — will *always* lack "fair notice" of the law's unconstitutionality and will *always* be entitled to qualified immunity. Federal courts reviewing arrests under § **240.30**(1), like the majority here, will "repeatedly rely on qualified immunity" and thus this issue will "'escape federal court review over a lengthy period.'" *Koch*, 287 F.3d at 166 (quoting *Horne*, 191 F.3d at 249).

Second, this is plainly not an unsettled or ambiguous state law that we would need to interpret. When state law is unclear, "adopting our own interpretation of state law would actually *subvert Saucier*, by inducing state actors to rely on our rule when that rule might change altogether upon

subsequent review by the relevant state courts." *Ehrlich,* 348 F.3d at 58. No such concern is present here. The majority concedes that § 240.30(1) is over 40 years old and that numerous state courts have found it constitutional. The statute's plain language defines the crime of aggravated harassment in the second degree as "communicat[ing] with a person anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm" with the "intent to harass, annoy, threaten or alarm [the other] person."[9] State courts have applied this provision to mean exactly what it says: that in order to obtain a conviction for aggravated harassment in the second degree, the state need only prove that a person, like Vives, invaded "substantial privacy interests" by communicating in an annoying or alarming manner. *See, e.g., People v. Goldstein,* 196 Misc.2d 741, 747-48, 763 N.Y.S.2d 390 (N.Y.App. Term 2003); *People v. Cooper,* 4 Misc.3d 788, 792-94, 781 N.Y.S.2d 201 (Nassau County Ct.2004); *People v. Miguez,* 147 Misc.2d 482, 484-86, 556 N.Y.S.2d 231 (N.Y.City Crim.Ct.1990), *aff'd,* 153 Misc.2d 442, 590 N.Y.S.2d 156 (N.Y.App. Term 1992).[10]

The meaning of this law is straightforward and unambiguous, and the state courts have given us no cause to think otherwise. Indeed, since state courts have interpreted the meaning of this law consistently over the past 40 years, there is no realistic possibility that state courts are suddenly going to reinterpret § 240.30(1). There is, of course, always a chance that the **New York** State Court of Appeals will reverse several lower state courts and hold the law unconstitutional, but this does not mean that the *meaning* of the law is unsettled. And, in any event, such a possibility is not an adequate reason for a federal court to decline to exercise its responsibility to determine what the federal Constitution requires.

The majority states no rationale for deciding that *Saucier* is inapplicable. Instead, 122*122 it relies solely on the *Horne* factors as a reason to disregard *Saucier,* an approach that we explicitly rejected in *Ehrlich. See Ehrlich,* 348 F.3d at 56 ("These principles cannot, of course, make discretionary what the Supreme Court has deemed mandatory. They do, however, affect the choice in those cases in which the underlying rationale in *Saucier* does not apply.") (emphases omitted).

## C. *The* Horne *Factors*

The majority rests its decision on the avoidance of "constitutional dicta." Under *Ehrlich,* this is not, in itself, a sufficient ground for disregarding *Saucier.* Even if it were, however, it provides no justification for avoiding the constitutional question in this case.

In cases in which we ultimately resolve the issue in favor of defendants on qualified immunity grounds, any finding of a constitutional violation is dicta. As we noted in *Ehrlich,* however, "the Supreme Court, by the very logic of *Saucier,* makes clear that such dicta is enough to put defendant state actors on notice that, if they repeat their acts, they will not have the benefit of qualified immunity." *Ehrlich,* 348 F.3d at 56 n. 11. I believe this principle carries added weight in a case where, as here, state courts have placed the imprimatur of legitimacy on an arguable violation of the federal Constitution, and thus if a federal court does not step in and inform state actors that the law violates the federal Constitution, state law enforcement officers will continue to be placed in the same impossible position as the defendants in this case: they will have a duty

to enforce a law that violates core federal constitutional rights because state courts have told them that the law is valid.

Although the *Horne* majority expressed concern about constitutional holdings in dicta, *Horne*, 191 F.3d at 247-48, none of those concerns should overcome the necessity of reaching the constitutional issue in this case. The *Horne* majority fretted that "judges risk being insufficiently thoughtful and cautious in uttering pronouncements" in dicta, and that "parties may do an inadequate job briefing and presenting an issue that predictably will have no effect on the outcome of the case." *Id.* at 247. Such concerns, to the extent they are relevant at all, are hardly relevant here. I doubt that any member of this panel fails to understand the importance of the issues in this case or has been "insufficiently thoughtful and cautious" in deciding this appeal.

Further, the majority cannot reasonably declare that the parties did not adequately address this issue. Defendants were represented on appeal by the Corporation Counsel of the City of New York. That office, although it preferred to place more emphasis on the qualified immunity issue that we ultimately resolved in its favor, devoted considerable portions of its opening and reply briefs to defending the constitutionality of § 240.30(1), both under state and federal law. Plaintiffs devote nearly half of their brief to the unconstitutionality of § 240.30(1) under federal law. The New York Attorney General, despite the panel's repeated requests for a brief defending the constitutionality of the statute, refused to defend the law and filed a one-page letter brief conclusorily stating that Vives' actions did not satisfy the elements of § 240.30(1), a position that none of the panel members found persuasive. Thus, it is hard to see how the parties could have better addressed the constitutional issue, and the fact that the State of New York refused to defend its own law cannot serve as grounds for us to decline to decide whether that law is or is not constitutional.

The *Horne* majority raised another objection to constitutional dicta that is more 123*123 substantial. When we find a constitutional violation, but then find that the defendants are protected by qualified immunity, the defendants have no opportunity to appeal the constitutional issue because they won on qualified immunity. *Horne*, 191 F.3d at 247.

This scenario is, of course, an inescapable result of the sequential order of the *Saucier* inquiry, and since we cannot both follow *Saucier* and avoid this problem, we must assume the Supreme Court anticipated this result and was not troubled by it. In any event, if the plaintiff appeals this Court's qualified immunity ruling, there is no reason to believe that the Supreme Court would not review the constitutional issue, since doing so is the first step in analyzing *any* qualified immunity claim. *See Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (reiterating that, on review of a lower court decision granting defendants qualified immunity, "[t]he threshold inquiry ... is whether plaintiff's allegations, if true, establish a constitutional violation"). As the Supreme Court will have ample opportunity to review our constitutional decision if plaintiff appeals our decision, the expressed concern over constitutional dicta is to my mind unavailing in the present case, especially since the majority failed to articulate any reason why *Saucier* should not apply.

Finally, the constitutional issue before us is not particularly difficult, and the violation is particularly egregious. For the reasons stated below, I have no difficulty finding a serious constitutional violation in the case now before us.

# II

## A. *Section 240.30(1) is Unconstitutional on its Face*

A criminal prohibition on communicating in an annoying or alarming way is facially unconstitutional. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). In fact, "a principal 'function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.'" *Id.* at 408-09, 109 S.Ct. 2533 (*quoting* Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949)).

In this case, **New York** City police, acting pursuant to § **240.30**(1) and with the blessing of **New York** courts, arrested Vives for mailing a political and religious statement to a candidate for public office. The officers' ground for arresting Vives was that the recipient found his communication with her "annoying and/or alarming," which is a violation of § **240.30**(1). Speech of this sort may only be proscribed in three very limited circumstances: (1) the speech constitutes "fighting words" that "by their very utterance inflict injury or tend to incite an immediate breach of the peace," Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); (2) the speech constitutes "advocacy [that] is directed to inciting or producing imminent lawless action and is likely to incite or produce such action," Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); and (3) the speech constitutes a "'true threat'" by which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. 124*124 Black, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (*quoting* Watts v. United States, 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969)). Section **240.30**(1) is not limited to these three categories. By criminalizing speech that merely annoys or alarms, the statute is unconstitutionally overbroad.

## B. *Section 240.30(1) is Unconstitutional As Applied*

## CONCLUSION

In *Ehrlich*, we stated that "[w]e are, of course, bound to implement [*Saucier*], and fully expect to do so in the vast majority of qualified immunity cases that come before us." Ehrlich, 348 F.3d at 57. The majority's treatment of *Saucier* in this case demonstrates how far we have deviated from *Ehrlich*'s narrow language. Perhaps our responsibilities were less burdensome under *Horne* and

other pre-*Saucier* cases, but I am troubled by a decision that seeks to avoid the difficult questions that the Supreme Court has obligated us to face.

For whatever reason, **New York's** courts have shown no inclination to hold that § 240.30(1) violates the First Amendment insofar as it criminalizes speech that is merely annoying or alarming, and **New York** police continue to enforce the statute to the detriment of citizens' core First Amendment rights. Accordingly, for the reasons stated, I concur with the majority's resolution of the qualified immunity issue, but respectfully dissent from its refusal to reach the constitutional issue and, once and for all, hold § **240.30(1)** unconstitutional.

[1] Pursuant to 28 U.S.C. § 2403(b), the District Court notified the **New York** State Attorney General of this action and plaintiff's challenge to "the constitutionality of section 240.30(1) of the **New York** State Penal Law as it applies to nonthreatening materials protected by the First Amendment." *Vives v. City of New York*, 02 Civ. 6646, Certification Order (S.D.N.Y. Mar. 21, 2003). Despite the Certification Order, the State of **New York** did not appear in the District Court to defend the constitutionality of section 240.30(1). See *Vives v. City of New York*, 305 F.Supp.2d 289, 293 n. 3 (S.D.N.Y.2003). We notified the Attorney General of this appeal, but the Attorney General, in a letter from Caitlin Hannigan, **New York** State Solicitor General, dated October 22, 2004, has again declined to appear and does not defend the constitutionality of section 240.30(1) to this Court.

[2] **New York** Penal Law § 240.30 provides in relevant part:

A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she: (1) Either (a) communicates with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm; or (b) causes a communication to be initiated by mechanical or electronic means or otherwise with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm.

[3] See *Dupont*, 486 N.Y.S.2d at 177 ("Count 10 of the indictment was an overly broad effort to apply § 240.30[,].... [and] is unconstitutional as applied in this instance."). "While [the *Dupont* Court] may have purported to declare [section 240.30] facially invalid, it is not entirely clear that it did so and in any event does not render invalid all prosecutions under the statute." *Schlagler v. Phillips*, 166 F.3d 439, 443 (2d Cir.1999).

[4] *Dietze* involved N.Y. Penal Law § 240.25(2), which criminalized the use of "abusive or obscene language" "with the intent to harass, annoy or alarm another person." Though section 240.25 is similar in form to section **240.30**, the Court of Appeals' conclusion that section 240.25(2) ran afoul of the First Amendment, *Dietze*, 75 N.Y.2d at 50 & n. 1, 550 N.Y.S.2d 595, 549 N.E.2d 1166, is not dispositive of § 240.30(1)'s constitutionality, which does not criminalize a particular class of words.

[5] In reversing the District Court's conclusion that section 240.30(1) had previously been declared unconstitutional, and thus that "prosecution [under it] was brought in bad faith," we specifically stated that "there has been no conclusive determination that section 240.30(1) is unconstitutional" and declined to reach the question of the section's constitutionality. *Schlagler*, 166 F.3d at 443.

[6] In *Mangano*, moreover, the **New York** Court of Appeals did not declare section 240.30(1) unconstitutional. After citing a prior case in which the Court had confirmed that section 240.30 was constitutional as applied to the facts therein, *People v. Shack*, 86 N.Y.2d 529, 634 N.Y.S.2d 660, 658 N.E.2d 706 (1995), the Court said that, on the facts in *Mangano*, "[w]e cannot agree with the People's argument that appellant's messages fall within any of the proscribable classes of speech or conduct," *Mangano*, 100 N.Y.2d at 571, 764 N.Y.S.2d 379, 796 N.E.2d 470.

[7] Although the constitutionality of section 240.30(1) was not properly presented to us, Judge Cardamone takes issue with our decision not to address the penal provision's constitutionality. We do not reach the constitutional

question because we are reluctant to pass on the issue in *dicta* and because the parties did not genuinely dispute the constitutionality of section 240.30(1) either in the District Court or on appeal. *See Ehrlich,* 348 F.3d at 56-60; *Horne v. Coughlin,* 191 F.3d 244, 246-50 (2d Cir.1999). Judge Cardamone states that "the majority cannot reasonably declare that the parties did not address this issue," *post,* at 137. Yet defendants concede in their opening brief that they "took no position in the District Court with respect to the constitutionality of P.L. § 240.30(1)," and that, though they "believe that the statute was and is constitutional," instead of defending that position, they stress their view that "this Court need not resolve the question of the constitutionality of the statute on this appeal at this time." Defendants' Br. at 42-43. The City, for its part, did not appear to defend the statute, and plaintiff confirms that "the City made no effort in the District Court to defend the statute," noting that defendants' "brief to this court does not address any of the considerable Supreme Court law pertinent to this point, relying instead only on a string cite to lower-court state cases they suggest establish the constitutionality of section 240.30(1)." Plaintiff's Br. at 23.

[8] In *Brosseau v. Haugen,* 125 S.Ct. 596 (decided Dec. 13, 2004), the Supreme Court declined to reconsider *Saucier, see id.,* at 598 n.3, despite the disagreement of three Justices whose reasons were similar to those the majority adopts in this case. *See id.* at 601 (Breyer, J., concurring, joined by Scalia and Ginsburg, JJ.).

[9] The constitutionality of § 240.30(1), insofar as it criminalizes harassing or threatening communications, is not disputed in this appeal.

[10] To be sure, the conduct at issue in some of these cases could be termed harassment, but the courts have not required the state to prove harassment or threats, and for good reason: § 240.30(1) merely requires the state to prove annoyance or alarm.