UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                            :

EDWARD MORALES,              :

                            :

             Plaintiff,          :        13-cv-2586 (NSR)
   -against-                   :

                            :        OPINION AND ORDER

STATE OF NEW YORK, *et al.*      :

                            :

                            :

            Defendants.       :
-------------------------------------------------------------X
NELSON S. ROMÁN, United States District Judge:

      Plaintiff Edward Morales ("Plaintiff" or "Morales"), *pro se*, commenced the instant

action against Defendants State of New York; State University of New York ("SUNY"); State

University of New York, Binghamton College ("SUNY Binghamton"); State University of New

York, Purchase College ("SUNY Purchase"); Thomas Schwarz, President of SUNY Purchase;

Melissa Jones, SUNY Purchase Director of Community Standards; Ernie Palmieri, SUNY

Purchase Vice President of Community Standards; "Purchase College University Police";

William Howard, Senior Vice Chancellor, General Counsel, and Secretary of the University;

Wendy Kowalczyk (now Ravitz); SUNY Associate Counsel; Danielle DaGosto, SUNY Purchase

Executive Director of Academic Programs; Qui-Qui Balascio, SUNY Purchase Associate Dean

of Student Affairs; Richard Nassisi, SUNY Purchase Associate Dean of the School of Liberal

Arts; Ricardo Espinales, SUNY Purchase Assistant Director of Human Resources and

Affirmative Action Officer; Marc Burdzinski, SUNY Purchase Associate Professor; Lois Wald,

SUNY Purchase Associate Counselor; Sandra Starki, Vice Provost for Enrollment Management

at SUNY Binghamton; Kyle Saud, SUNY Purchase Housing Coordinator; Daniel Pearson; Bill

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/22/2014

(William) Baskin, SUNY Purchase Associate Provost of Student Affairs; Louise Yelin, SUNY

Purchase Associate Dean; Walter Butler, Acting Chief of University Police at SUNY Purchase;

and Sheryl Secor (collectively, "State Defendants"); the Law School Admission Council; the

Town of Harrison; and unidentified "John Doe" defendants.

Plaintiff asserts violations of Titles III and V of the Americans with Disabilities Act, 42

U.S.C. §§ 12181 and 12203; the Age Discrimination Act of 1975, 42 U.S.C. § 6101 *et. seq.*; Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et. seq.*; Title IX of the

Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et. seq.*; and plaintiff's

constitutional rights under the First and Fourteenth Amendments.  Plaintiff brings other

miscellaneous claims as well.

State Defendants now move, pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6),

to dismiss the amended complaint in its entirety. For the following reasons, State Defendants'

motion to dismiss is GRANTED.

## I. THE FACTS

Plaintiff alleges that he is "a qualified 'partially-permanent disabled" person, under the

Social Security Disability Administration or SSDA, as defined by 42 U.S.C. § 12131 (2), and

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796. (Am. Compl. at 11.)

Plaintiff alleges "a disabling and unpredictable spinal injury" (Am. Compl. at 94) and "neck

injuries [that] prevent him from using his hands and arms normally." (Am. Compl. at 30.)

Plaintiff states that he returned to college in 2011 to complete his higher education degree; he

alleges that he had 15 credits at the time of his return. Plaintiff's goal was to pursue law school

within two years. (Am. Compl. at 93.)

Plaintiff alleges in his second cause of action that he was wrongfully tricked into taking a

psychological evaluation. (Am. Compl. at 22-23.)  Plaintiff alleges that upon his attempt to return to Purchase College in 2011, he spoke with an employee in the admissions office who told him that she "could not enroll him (Plaintiff) back into the school because there was a flag (a problem or impediment) that needed to be cleared by the health clinic of the school, before I (Plaintiff) could be readmitted into the school." (Am. Compl. at 22.) Plaintiff claims that he went to the College's health clinic and was told by the head nurse that, "although the flag was originated at [the Student Health] department (the health clinic)", Plaintiff would need to have the counseling center remove the flag. (Am. Compl. at 22.) Plaintiff claims that the flag was related to old records, perhaps 14 years old, but the nurse could not see the reason for the flag "because the record (Plaintiff's medical record) had been destroyed due to the provision by Federal law that all records must be destroyed after seven years, and she would not remove the flag." (Am. Compl. at 22-23.) Plaintiff claims that the counseling center would not remove the 14-year-old flag unless Plaintiff underwent a psychological evaluation and that he would not agree to an evaluation but only to a conversation with a psychologist, State Defendant Lois Wald, but that the interview was actually an "unconsented evaluation." (Am. Compl. at 23.) Plaintiff believed that discrimination was taking place and decided not to cooperate fully. He claims that a report was generated, but the College refused to give him a copy. (Am. Compl. at 23.) In any event, Plaintiff was allowed to register as a student.

Plaintiff alleges in his third cause of action that he and other students who "did not fit the student profile" were asked for driver's licenses when he felt his student identification should have been sufficient. (Am. Compl. at 25-26.)

Plaintiff alleges in his fourth cause of action that a professor, State Defendant Mark Burdzinski, would not let Plaintiff or other unnamed "elder" students speak in class if they were

not registered students, were late or had missed previous classes. (Am. Compl. at 27-33.) He

alleges that Professor Burdzinski, who he claims has a "recognized . . . personality disorder,"

wrongfully accused Plaintiff of plagiarism when Plaintiff copy and pasted a required translation

of a Spanish-language poem from another source without citation. Plaintiff claims that the

professor should have recognized that copying and pasting is an "implied accommodation" under

the Americans with Disabilities Act. Plaintiff claims that he was denied due process during his

administrative hearing and appeals in regard to the disciplinary charges brought against him for

plagiarism. (Am. Compl. at 29-33.)

Plaintiff claims that in the investigation of his plagiarism charges, SUNY Purchase

wrongfully accessed his SUNY email account. (Am. Compl. at 33.) Plaintiff's appeals were

denied by State Defendant William Baskin, the SUNY Purchase Associate Provost for Student

Affairs. Plaintiff claims that a meeting in regard to his appeal was attended by State Defendant

Ricardo Espinales, SUNY Purchase Assistant Director of Human Resources and Affirmative

Action Officer, who Plaintiff believes may have "hacked" into his email account.

Plaintiff alleges in his sixth cause of action that he was wrongfully denied usage of a

phone in a campus office and that, as a result, he wrongfully faced disciplinary charges. He

claims that the charges were "retaliatory" for his complaints about not being permitted to use a

phone. (Am. Compl. at 37-39.) Plaintiff claims he faced disciplinary charges as a result of this

incident and attended a hearing on the charges but left or abandoned the hearing out of

frustration. (Am. Compl. at 39.)

Plaintiff alleges in his seventh cause of action that Ms. Tori Galatro, a woman who he

does not know, wrongfully accused him of vandalizing the student garden, but that he did not do

so, although his mother may have pulled weeds from the garden. (Am. Compl. at 40-43.) He

admits that a "no contact" order was issued directing him to avoid all contact with Ms. Galatro, but that, knowing about the order, he "decided to communicate via email to Ms. Galatro, an intention to pursue legal action against her for age and sex discrimination, and issuing false and defamatory statements against Plaintiff," in violation of the order. (Am. Compl. at 42.)

Plaintiff alleges in his ninth cause of action that in October 2012, while the fall semester was already underway, he was offered an opportunity to apply for on campus housing when it becomes available. (Am. Compl. at 42.) He alleges that Ms. Seng told him that an Americans with Disabilities Act-compliant unit would become available on December 22, 2012. However, Plaintiff alleges that a few days before December 22, he was told that the housing was no longer available because new students were given priority. This was apparently later clarified to mean that students requesting Americans with Disabilities Act-compliant housing were not given preference over other students waiting for housing. (Am. Compl. at 48.) He claims that he was given an "improper" emergency housing accommodation on December 23, 2012 that was too expensive for him and that the College promised to seek a better accommodation for him prior to the beginning of the spring semester. (Am. Compl. at 47.) Plaintiff alleges that he was permitted to swap housing in February 2013 but that in the new housing, his new roommate, whom he describes as a homosexual drug user, had problems with him.

Plaintiff was ultimately brought up on disciplinary charges related to incidents that occurred in his new housing, which Plaintiff alleges include the following: that on February 7, 2013, he had damaged, defaced, destroyed, or tampered with property owned by the college or in the possession of another person; failed to respect the ongoing legitimate functions of classes, meetings, office procedures, study, sleep, or any authorized College activity; that on February 9, 2013, in an incident he alleges involved some bread he had burned, he threatened, harassed, or

intimidated another individual; that he engaged in behavior "against a person which significantly interrupts or prevents that person from carrying out duties and responsibilities associated with his/her role as faculty, staff, or student at the College"; that he refused to vacate buildings when a fire emergency warning system was activated; and that he failed to respond to a reasonable request of College officials who are acting within their authority. (Am. Compl. at 50-51.) Plaintiff alleges that he was already on probation at the time and his probation was extended for another year as a result of the hearings. (Am. Compl. at 53.)

Plaintiff seeks in his twelfth cause of action to remove criminal charges filed against him to this court. Plaintiff was charged with aggravated harassment because he emailed the following to SUNY officials: "What if I was some nuts-crazy (which I am not), and being pushed to the end, and I take a machine gun (which I will not) and because of school 'gang-like behavior' looses [sic] all opportunities to get to law school, then they garnish my SSD check to pay the loans, so I have nothing to live for, thus, this crazy student (not me) goes out to the school and start killing people. This sound like it has happened before.. wright [sic]?" *See* Connell Decl. Ex. B. [1] He claims that although he was charged with a violation of N.Y. Penal Law § 240.30(1)(a), his statements and/or conduct did not suffice to demonstrate a "clear and present" danger to others and thus his arrest and criminal prosecution was wrongful. Plaintiff also claims that his comments were protected by the First Amendment.  (Am. Compl. at 58-59.)

On April 18, 2013, Plaintiff filed his complaint and an order to show cause seeking a

---

[1] Because Plaintiff's email was referenced in and is integral to the Amended Complaint, the Court will consider it in deciding the motion to dismiss. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (noting that, in resolving a motion to dismiss, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or document incorporated in it by reference," and any "document ... not incorporated by reference ... where the complaint relies heavily upon its terms and effect, ... render[ing] the document 'integral' to the complaint" (some internal quotation marks omitted)).

preliminary injunction overturning his suspension from SUNY Purchase. *See* Docket No. 4. On April 24, 2013, the Hon. Edgardo Ramos denied Plaintiff's application for a preliminary injunction and granted Plaintiff leave to serve and file an amended complaint. Plaintiff filed an amended complaint, totaling 106 pages, on August 26, 2013. State Defendants moved to dismiss the amended complaint on April 17, 2014. Plaintiff filed an opposition of 106 pages. Plaintiff's lengthy submissions are largely rambling, conclusory, or incoherent.

## II. MOTION TO DISMISS STANDARD

On a motion to dismiss[2] for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Twombly*, 550 U.S. at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim must be "a context-

---

[2] Plaintiff cites the wrong standard that it must appear "beyond doubt that plaintiff can prove no set of facts . . . that would entitle him to relief" to dismiss this action. (*Conley v. Gibson*, 355 U.S. 1 (1957); Opp. Mem.) In 2007, the Supreme Court explicitly invalidated this pleading standard.

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  When determining the plausibility of a complaint, "[i]n addition to allegations in the complaint itself, the Court may consider documents attached as exhibits and documents incorporated by reference in the complaint." *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 223 (S.D.N.Y. 2013) (citing *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011); *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008)).

Fed. R. Civ. P. 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 570. Fed. R. Civ. P. 8(d)(1) requires that each allegation be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) requires that the plaintiff must show "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* "[P]rolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit." *Ceparano v. Suffolk Cnty.,* No. 10 Civ. 2030, 2010 WL 5437212, at *3 (S.D.N.Y. Dec. 15, 2010) (citing *Jones v. National Commc'nc & Surveillance Networks*, 266 Fed.Appx. 31, 32 (2d Cir. 2008).

The Court will construe a pro se plaintiff's pleadings liberally and "interpret them to raise the strongest arguments that they suggest." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.,* 640 F.Supp.2d 345, 347 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir. 2006). Nevertheless, a district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) (i-iii); *Abbas v. Dixon,* 480 F.3d 636,

8

639 (2d Cir. 2007).

### III. The Americans with Disabilities Act

The Americans with Disabilities Act of 1990 was enacted, in part, to assist in remedying the problems related to access by persons with disabilities to public facilities, employment, and transportation services. 42 U.S.C. §§ 12101–213; *Aquino v. Prudential Life and Cas. Ins. Co.*, 419 F.Supp.2d 259, 267 (E.D.N.Y. 2005). Plaintiff claims that State Defendants violated Title III and Title V of the Americans with Disabilities Act.

Plaintiff's Title III claim fails because "Title III expressly does not apply to public entities, including local governments." *Bloom v. Bexar County*, 130 F.3d 722, 726 (5th Cir. 1997). A claim under Title III of the Americans with Disabilities Act can only be asserted against a private entity engaged in the provision of public accommodations, such as an inn, hotel or private school. *See* 42 U.S.C. §§ 12181(7), 12182. Title III is not applicable to public entities. *See Falchenberg v. New York State Dept. of Educ.*, 642 F.Supp.2d 156, 165-166 (S.D.N.Y. 2008); *Bloom*, 130 F.3d at 726 (dismissing Americans with Disabilities Act Title III claim asserted against public entity); *DeBord v. Board of Educ. of the Ferguson–Florissant Sch. Dist.*, 126 F.3d 1102, 1106 (8th Cir. 1997) (same), cert. denied, 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998); *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1036 (6th Cir. 1995) (same). Additionally, monetary damages under Title III of the Americans with Disabilities Act are not allowable as a matter of law. *See Powell v. National Bd. of Medical Examiners*, 364 F.3d 79, 86 (2d Cir. 2004); *Steir v. Girls Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004); *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).

Plaintiff claims that State Defendants violated the "Miscellaneous Provisions" in Title V of the Americans with Disabilities Act, which contains the retaliation provision. Section 12203 prohibits retaliation for complaints of disability discrimination by stating:

> (a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

42 U.S.C. § 12203. Unlike Titles I-III of the Americans with Disabilities Act, the retaliation provision contains no specific enforcement or remedial provision of its own. Rather, the statute states that "[t]he remedies and procedures available under sections [12117], [12133], and [12188] of this Act shall be available to aggrieved persons for violations of subsection[ ](a) ... with respect to title I, title II and title III, respectively." *Id.*; *Edwards v. Brookhaven Science Associates, LLC*, 390 F.Supp.2d 225, 235 (E.D.N.Y. 2005).

Courts apply a burden shifting framework to evaluate retaliation claims under the Americans with Disabilities Act. *See, e.g., Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998). The elements of a retaliation claim under the Americans with Disabilities Act "are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (internal quotations and citation omitted).

The Eleventh Amendment to the U.S. Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. "Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens...." *Woods v. Rondout Valley Cent. Sch. Dist.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). The Eleventh Amendment applies unless a state affirmatively waives its immunity, *see Lapides v. Bd. of Regents of Univ. of Ga.*, 535 U.S. 613, 618, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), or if Congress, through a statute passed as a valid exercise of its power under section five of the Fourteenth Amendment, makes "unmistakably clear" in the statute's text its intent to abrogate the states' immunity. *Nev. Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 726, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003).

A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction. *See Va. Office for Prot. & Advocacy v. Stewart*, ──── U.S. ────, 131 S.Ct. 1632, 1637, 179 L.Ed.2d 675 (2011) (noting that "the Eleventh Amendment ... confirm[s] the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant"); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("For over a century [the Supreme Court has] reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'" (quoting *Hans*, 134 U.S. at 15, 10 S.Ct. 504)).

Eleventh Amendment immunity extends to a State when sued as a defendant in its own name and also to "state agents and state instrumentalities" when "the state is the real, substantial party in interest." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) (internal quotation marks omitted); *Henny v. New York State*, 842 F.Supp.2d 530, 543-544 (S.D.N.Y. 2012). Sovereign immunity applies regardless of the type of relief sought. *See Henny*, 842 F.Supp.2d at 545; *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) ("[S]overeign immunity applies regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief"); *Seminole Tribe*, 517 U.S. at 58, 116 S.Ct. 1114 (noting that the Supreme Court has "often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment").

District courts within the Second Circuit have consistently held that the Eleventh Amendment bars retaliation claims under Title V of the Americans with Disabilities Act. *See, e.g.*, *Davis v. Dept. of Corrections,* No. 2:11–cv–164, 2012 WL 1269123, at *2–3 (D. Vt. Apr. 16, 2012) (collecting cases) (retaliation claims against the state under Titles I and V of the Americans with Disabilities Act are barred by the Eleventh Amendment); *Briggs v. New York State Dept. of Transp.,* 233 F.Supp.2d 367, 373 (N.D.N.Y. 2002); *Rowe v. New York State Div. of the Budget*, 2012 WL 4092856, at *3 (N.D.N.Y. Sept. 17, 2012); *Johnson v. N.Y.S. Dep't. of Corr. Servs.*, No. 11–CV–079S, 2012 WL 4033485, at *4 (W.D.N.Y. Sept. 12, 2012) (noting that, if "'a state is immune from underlying discrimination, then it follows that the state must be immune from claims alleging retaliation for protesting against discrimination'" (quoting *Chiesa v. N.Y.S. Dep't of Labor*, 638 F.Supp.2d 316, 323 (N.D.N.Y. 2009)); *Emmons v. City Univ. of*

*N.Y.*, 715 F.Supp.2d 394, 408 (E.D.N.Y. 2010) ("Sovereign immunity also extends to claims of retaliation brought pursuant to Title V of the ADA."); *Clark v. New York State Office of State Comptroller*, 2014 WL 823289, at *5 (N.D.N.Y. Mar. 3, 2014); *Moshenko v. State University of New York at Buffalo*, 2009 WL 5873236, at * 3 (W.D.N.Y. Sept. 16, 2009); *Warren v. Goord*, No. 99–cv–296F, 2006 WL 1582385, at *17 (W.D.N.Y. May 26, 2006) (retaliation claims against the state under Title V of the Americans with Disabilities Act are barred by the Eleventh Amendment), aff'd on other grounds, 2008 WL 5077004 (2d Cir. 2008), cert. denied, 558 U.S. 1100, 130 S.Ct. 1039 (2009); *Salvador v. Lake George Park Commission*, No. 1:98–cv–1987, 2001 WL 1574929, at *2-3 (N.D.N.Y. March 28, 2001) ("There is no indication that Congress, in passing §§ 12203(a) and (b) of the ADA, was concerned with a pattern or practice of states interfering with others' compliance with the mandates of the ADA. Those sections of the ADA, therefore, cannot apply to the states for to do so would unlawfully abrogate their sovereign immunity."), aff'd, 35 Fed.Appx. 7 (2d Cir. 2002), cert. denied, 537 U.S. 1002 (2002)). "Every district court in this Circuit to consider the issue has concluded that sovereign immunity bars Title V claims." *Padilla v. New York State Dep't of Labor*, No. 09 Civ. 5291(CM)(RLE), 2010 WL 3835182, at *4 (S.D.N.Y. Sept. 13, 2010) (collecting cases); *see also Demshki v. Monteith*, 255 F.3d 986, 988–89 (9th Cir. 2001) ("Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims"). Plaintiff's Title V claim is therefore dismissed with prejudice for lack of subject-matter jurisdiction. *Padilla*, 2010 WL 3835182, at *3.

Because Plaintiff is pro se, the Court will construe his inapplicable Title III claim as a claim under Title II of the Americans with Disabilities Act, 104 Stat. 337, 42 U.S.C. §§ 12131–12165, which applies to public services. Title II provides in relevant part at 42 U.S.C. § 12132

13

that: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." *See Lincoln Cercpac v. Health and Hospitals Corp.,* 920 F.Supp. 488, 497 (S.D.N.Y. 1996) ("To establish a violation of Title II, plaintiff must show that: (1) he or she is a qualified individual with a disability, (2) he or she is being excluded from participation in or being denied the benefits of some service, program or activity by reason of his or her disability, and (3) the entity which provides the service, program or activity is a public entity.") (citations and internal quotation marks omitted). In this Circuit, a plaintiff seeking monetary damages to remedy an alleged Title II violation must show "not only that there was a violation, but that such violation was motivated by either discriminatory animus or ill will stemming from plaintiff's disability." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 89 (2d Cir. 2004); *see also Askins v. New York City Transit*, No. 11–CV–6371, 2013 U.S. Dist. LEXIS 5340, at *13–14 (S.D.N.Y. Jan. 8, 2013) (Eleventh Amendment requires showing of discriminatory animus or ill will in Title II suits against state entities).

Here, reading the amended complaint in the light most favorable to Plaintiff, the Court assumes that Plaintiff has a "qualifying disability" and SUNY is subject to Title II. Thus, the Court need only address the third element. To deny an opportunity to participate in a program means "only that mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context." *St. Johnsbury Academy v. D.H.*, 240 F.3d 163, 173 (2d Cir. 2001). A defendant discriminates within the meaning of the acts when it fails to make a reasonable accommodation that would permit the disabled individual to have access to, and take meaningful part in, public services. *Powell*, 364 F.3d at 85; *see also* 42 U.S.C. § 12112(b)(5)(A)

14

(discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability"). "A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 282 (2d Cir. 2003) (quoting *Alexander v. Choate*, 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)).

Plaintiff has failed to meet the pleading requirements to state a claim under Title II of the Americans with Disabilities Act. Plaintiff has not denied that he copied and pasted his assignment without citation, which resulted in his professor's charge of plagiarism. Plaintiff's claim that copying and pasting accommodates his disability whereas typing would aggravate his disability is nonsensical on its face. He cannot show that his "F" grade for plagiarism was merely a pretext for an otherwise discriminatorily-motivated grade. Additionally, Plaintiff has not alleged that similarly situated students who were not disabled were treated differently for plagiarism. While institutions of higher education cannot discriminate against students in grading or in the administration of classroom policies on the basis of classifications that are forbidden under federal anti-discrimination law, Plaintiff has not plausibly pled that State Defendants did so.

"Courts will not generally interfere in the operations of colleges and universities." *Herzog v. Loyola College in Maryland, Inc.*, No. 07–02416, 2009 WL 3271246, at *9 (D. Md. Oct. 9, 2009) (citing *Onawola v. Johns Hopkins Univ.*, 412 F.Supp.2d 529, 532 (D. Md. 2006)). The Supreme Court of the United States explained:

>When judges are asked to review the substance of a genuinely academic decision ... they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 225 (1985) (professional decisions "presumptively valid")). "Cases questioning academic decisions made by colleges and universities are always difficult . . . ." *Davis v. University of North Carolina*, 263 F.3d 95, 101-102 (4th Cir. 2001). They require a court to carefully balance the rights of students against the school's "legitimate interests ... in preserving the integrity of [its] programs." *Alexander v. Choate*, 469 U.S. 287, 300, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). We generally accord great deference to a school's determination of the qualifications of a hopeful student, *accord Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1047 (9th Cir. 1999); *Wynne v. Tufts Univ. Sch. of Med.*, 932 F.2d 19, 25 (1st Cir. 1991), because "[c]ourts are particularly ill-equipped to evaluate academic performance." *Board of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 92, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). The Second Circuit has scrupulously followed the "academic deference rule." *Clements v. Nassau County*, 835 F .2d 1000 (2d Cir. 1987). The Second Circuit has emphasized that because federal law seeks only to "ensure evenhanded treatment between the disabled and able-bodied," *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d. Cir. 1998), schools are not required to "make substantial modifications" in "reasonable standards or program[s] to accommodate handicapped individuals." *Doe v. New York Univ.*, 666 F.2d 761, 775 (2d Cir. 1981); *see also Fink v. New York City Dep't of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995).

16

Plaintiff alleges that he was wrongfully denied transfer and law school admissions, but the "decision to grant or deny admission to a student is a quintessential matter of academic judgment," and will not be second guessed by the courts. *Getso v. Harvard University Extension School*, 2011 WL 135012, at \*7 (S.D.N.Y. Jan. 13, 2011) citing *Mangla v. Brown Univ.,* 135 F.3d 80, 84 (1st Cir. 1998). This court will "follow the lead of the Supreme Court as well as other courts across the country in declining to engage in judicial review of academic decision-making by educational institutions." *Alden v. Georgetown Univ.,* 734 A.2d 1103, 1108 (D.C. 1999); *Di Lella v. University of Dist. of Columbia David A. Clarke School of Law*, 570 F.Supp.2d 1, 9 (D. D.C. 2008). Thus, Plaintiff has alleged no facts in his Amended Complaint that state a claim under Title II.

Moreover, there is no individual liability here under the Americans with Disabilities Act. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (Title II of the Americans with Disabilities Act does not provide "for individual capacity suits against state officials."); *Herzog v. McLane Northeast, Inc.*, 999 F.Supp. 274, 277 (N.D.N.Y. 1998); *Clark v. New York State Office of State Comptroller*, 2014 WL 823289, at \*4 (N.D.N.Y. Mar. 3, 2014); *Warren v. Goord*, 2006 WL 1582385, at \*17–20 (W.D.N.Y. May 26, 2006) (holding "[t]he failure to so provide for a remedy [for retaliation] is consistent with the fact that nowhere within the ADA's statutory scheme is there any provision for a cause of action against an individual defendant, regardless of capacity, for any substantive violation of ADA Titles I, II or III [such that] construing Title V in light of the ADA's complete statutory scheme . . . establishes that Title V similarly does not provide for a claim for retaliation against an individual defendant."), aff'd, 2008 WL 5077004 (2d Cir. 2008).

17

**IV. Age Discrimination Act of 1975**

Section 6102 of the Age Discrimination Act of 1975 prohibits discrimination on the basis of age under any program or activity that receives federal financial assistance. 42 U.S.C. § 6102. Plaintiff alleges that Defendant violated his rights under the Age Discrimination Act by discriminating against him on the basis of age in asking for identification once (Am. Compl. at 26) and in the provision of housing. (Am. Compl. at 46-51.) Plaintiff's Amended Compliant does not indicate compliance with the statute's requirement that he exhaust administrative remedies prior to bringing suit. *See* 42 U.S.C. § 6104(f) ("With respect to actions brought for relief based on alleged violation of the provisions of this chapter, administrative remedies shall be deemed exhausted upon the expiration of 180 days from the filing of an administrative complaint during which time the Federal department or agency makes no finding with regard to the complaint ...."). Thus, the Court must dismiss Plaintiff's Age Discrimination Act claim without prejudice. *Stoner v. Young Concert Artists, Inc.*, 2014 WL 661424, at *6 (S.D.N.Y. Feb. 7, 2014).

**V. Title VII**

Plaintiff fails to state a claim under Title VII of the Civil Rights Act of 1964 because he is a student, not an employee, and is not protected by Title VII. *See Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). Moreover, the Second Circuit has held that there is no individual liability under Title VII. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–1317 (2d Cir. 1995), abrogated on other grounds by *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998); *Dean v. Westchester Cnty. Dist. Attorney's Office*, 119 F.Supp.2d 424, 428 (S.D.N.Y. 2000).

**VI. Constitutional claims**

Plaintiff alleges that State Defendants violated his First Amendment right to free speech, and the Due Process and Equal Protection Clauses of the Constitution. State Defendants fault

Plaintiff's constitutional claims because he does not bring them under 42 U.S.C. § 1983. (Def.

Mem. at 15.) Section 1983 states, in pertinent part, that "[e]very person who, under color of any

statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in equity, or other proper proceeding for

redress[.]"42 U.S.C. § 1983. Section 1983 grants plaintiffs a cause of action for constitutional

violations. *See Sank v. City Univ. of N.Y.*, No. 10–CV–4975, 2011 WL 5120668, at \*6 (S.D.N.Y.

Oct. 28, 2011) ("Because [ ] Section 1983[ ] provides a remedy for alleged constitutional

violations, [plaintiff] cannot base claims directly on the First, Fourth and Fourteenth

Amendments."); *see also Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 136 (2d Cir.

1999) ("Section 1983 permits an individual deprived of a federal right by a person acting under

color of state law to seek compensation in federal court."). Because Plaintiff is pro se, the Court

will construe his constitutional claims as if he brought them under Section 1983.

　　　　Under the Eleventh Amendment, the state, SUNY and the individual defendants sued in

their official capacities are immune from suit for Section 1983 claims. *Buckley v. New York*, 959

F.Supp.2d 282, 294 (E.D.N.Y. 2013) (finding claims against SUNY and individual defendants in

their official capacities barred by Eleventh Amendment immunity); *Dube v. State University of

New York*, 900 F.2d 587, 594–95 (2d Cir. 1990) (Eleventh Amendment bars § 1983 suit against

SUNY, which "is an integral part of the government of the State and when it is sued the State is

the real party."); *Garcia v. State University of New York Health Sciences Center at Brooklyn*,

2000 WL 1469551, at \*4 (E.D.N.Y. Aug. 21, 2000); *see also Edelman v. Jordan*, 415 U.S. 651,

663 (1974) (suits against state employees in their official capacities are barred by the Eleventh

Amendment); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 120–21 (1984)

(Eleventh Amendment bars federal suits against state officials for violations of state law); *accord*

*Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000) (rejecting federal suit against state officials

under Eleventh Amendment); *Catone v. Spielmann*, 149 F.3d 156, 160 n. 1 (2d Cir. 1998) (citing

*Pennhurst* regarding Eleventh Amendment bar on state law claims). Neither statutory abrogation

nor prospective injunctive relief from a state official exceptions applies to a direct constitutional

claim brought directly against a state entity. *Santiago v. New York State Dept. of Corr. Services*,

945 F.2d 25, 3032 (2d Cir. 1991) (holding that the Fourteenth Amendment was not an

unequivocal expression of congressional intent to abrogate states' immunity and reversing

district court's rejection of New York's Eleventh Amendment argument); *Garcia v. Paylock*, 13–

CV–2868, 2014 WL 298593, at \*3 (E.D.N.Y. Jan. 28, 2014) (Matsumoto, J.) ("Plaintiff's equal

protection claims also may not be brought directly under the Fourteenth Amendment because the

State has not waived its immunity [nor] had that immunity abrogated pursuant to that

constitutional amendment.").

"In order to state a claim under § 1983, a plaintiff must allege that, first, the conduct

complained of was committed by a person acting under color of state law, and, second, that such

conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws

of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d

420 (1981)." *Weg v. Macchiarola,* 729 F.Supp. 328, 333 (S.D.N.Y. 1990); *see also Sean R. by*

*Dwight R. v. Bd. of Education,* 794 F.Supp. 467, 469 (D. Conn. 1992); *Scelsa v. City University*

*of New York*, 806 F.Supp. 1126, 1144 (S.D.N.Y. 1992). "[N]either a State nor its officials acting

in their official capacities are 'persons' under [42 U.S.C.] § 1983[;]" and therefore, they cannot

be sued under § 1983. *Huminski v. Corsones*, 386 F.3d 116, 133 (2d Cir. 2004) (alteration

omitted) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)); *see also Cowder v. Dep't for Children & Families*, No. 09–CV–0628, 2010 WL 3834008, at *2 (E.D.N.Y. Sept. 27, 2010) ("§ 1983 only applies to 'persons' acting under the color of state law. 'Government entities that are considered arms of the State for Eleventh Amendment purposes,' ... are not persons under § 1983." (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989))).

Plaintiff may only sue a state official in his or her official capacity for prospective injunctive relief from an ongoing constitutional violation. U.S. Const. amend. XI; Va. Office for Prot. & Advocacy v. Stewart, 564 U.S. ——, ——, 131 S.Ct. 1632, 1638, 179 L.Ed.2d 675 (2011); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013), cert. dismissed, 569 U.S. ——, ——, 133 S.Ct. 2823, —— L.Ed.2d ——, —— (2013); *KM Enterprises, Inc. v. McDonald*, 518 Fed.Appx. 12, 2013 WL 1799866, at *1 (2d Cir. 2013); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006); *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)). However, Plaintiff has not pleaded any ongoing constitutional violation.

The Court will now consider Plaintiff's constitutional claims against individual State Defendants in their individual capacities. State officials may only be liable under § 1983 when officials are sued in their individual capacity and are "individual[ly] and personal[ly] liabl[e]." *Hafer v. Melo,* 502 U.S. 21, 30, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *see also Fowlkes v. Rodriguez,* 584 F.Supp.2d 561, 572 (E.D.N.Y. 2008) (personal involvement is necessary for

damages against state officials). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). State Defendants argue that no individual defendant was personally involved in alleged constitutional violations. (Def. Mem. at 16.) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Supervisory officials may not be held liable merely because they held a position of authority. *Id.; Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986)). Plaintiff does not mention any personal involvement on the part of the vast majority of individual defendants. In one instance where Plaintiff alleges personal involvement, defendant Lois Wald allegedly attempted to psychologically examine him. However, Plaintiff did not cooperate with the examination and he was still permitted to enroll at

22

SUNY Purchase. (Am. Compl. 22-23.) Thus, Plaintiff was not at all injured and no constitutional violation occurred.

In addition, the individual defendants are immune from most of the individual-capacity claims under the doctrine of qualified immunity. Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). A qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998). "Qualified immunity provides government officials immunity from suit rather than a mere defense to liability." *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (internal citations and quotation marks omitted). When considering a claim of qualified immunity, courts ask first whether there was a violation of a clearly established constitutional right. *Id.* at 706. "A right is clearly established if the law (1) was 'defined with reasonable clarity,' (2) has been affirmed by 'the Supreme Court or the Second Circuit[,]' and (3) where the conduct at issue would have been understood by a reasonable defendant to be unlawful under the existing law." *Id.* (quoting *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)); *see also Ashcroft v. al-Kidd*, 563 U.S. ——, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); *accord Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("[W]e repeatedly have stressed the

importance of resolving immunity questions at the earliest possible stage in litigation.").

### a. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall

... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

XIV, § 1.  To adequately allege a violation, "a plaintiff must demonstrate that he was treated

differently than others similarly situated as a result of intentional or purposeful discrimination."

*Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Plaintiff must also show that this disparate

treatment "cannot survive the appropriate level of scrutiny" applicable to the alleged

discrimination. *Id.* To plead intentional discrimination, a plaintiff must allege that the state

expressly classified on the basis of a suspect characteristic, *see Brown v. City of Oneonta, New*

*York,* 221 F.3d 329, 337 (2d Cir. 2000), applied a neutral program in an intentionally

discriminatory manner, *see id.* (citing *Yick Wo v. Hopkins,* 118 U.S. 356, 373-74, 6 S.Ct. 1064,

30 L.Ed. 220 (1886)), or promulgated a policy that was motivated by discriminatory animus and

that had an adverse effect, *see id.* (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*

429 U.S. 252, 264-65, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), and *Johnson v. Wing,* 178 F.3d 611,

615 (2d Cir. 1999)).

Plaintiff's conclusory allegations of disparate treatment and his personal opinion that

such treatment was motivated by discriminatory intent are not enough to prevail on a § 1983

claim for a violation of the Equal Protection Clause. *Nash v. McGinnis*, 585 F.Supp.2d 455, 462

(W.D.N.Y. 2008); *Hamzik v. Office for People with Developmental Disabilities*, 859 F.Supp.2d

265, 280 (N.D.N.Y. 2012); *Thomas v. City of New York,* 143 F.3d 31, 37 (2d Cir. 1998)

(affirming dismissal of an Equal Protection Clause claim when "plaintiffs did not allege

sufficient facts to support discriminatory intent . . . ."); *see also Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) ("[A] plaintiff pursuing a ... denial of equal protection ... must show that the discrimination was intentional."); *Knight v. Conn. Dep't of Public Health*, 275 F.3d 156, 166 (2d Cir. 2001) (Plaintiffs must show "that the decisionmakers ... acted with discriminatory purpose.") (quoting *McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)) (quotation marks omitted)). Plaintiff does not state a claim because he "fails to allege facts 'giving rise to an inference of discrimination on the basis of [Plaintiff's] membership in [a protected] class.'" *Weslowski v. Zugibe*, 2014 WL 1612967, at *21 (S.D.N.Y. Mar. 31, 2014) (quoting *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir. 1994)). Accordingly, the Court grants State Defendants' motion to dismiss this claim. *See Bishop v. Best Buy, Co.*, No. 08–CV–8427, 2010 WL 4159566, at * 12 (S.D.N.Y. Oct. 31, 2010) (dismissing an equal protection claim because the plaintiff failed to allege any similarly situated individuals who were treated differently); *Econ. Opportunity Comm'n of Nassau Cnty. v. Cnty. of Nassau, Inc.*, 47 F.Supp.2d 353, 370 (E.D.N.Y. 1999) (same); *see also 30 Clinton Place Owners Inc. v. City of New Rochelle*, No. 13–CV–3793, 2014 WL 890482, at *2 (S.D.N.Y. Feb. 27, 2014) (granting 12(b)(6) motion to dismiss a § 1983 equal protection claim because the complaint failed to allege facts giving rise to inference of discrimination).

### b.  First Amendment

The United States Supreme Court held that public school speech or expression that does not "materially or substantially interfere with schoolwork or discipline" is constitutionally protected speech. *Tinker v. Des Moines*, 393 U.S. 503, 511–13, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Courts recognize that the administrators should be given leeway to address any potential

disruption before it manifests itself. *See Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) ("it is not the role of the federal courts to set aside decision of school administrators which the court may view as lacking a basis in wisdom or compassion."); *Doninger v. Niehoff*, 527 F.3d 41, 51 (2d Cir. 2008) ("[Plaintiff's] argument is misguided insofar as it implies that *Tinker* requires a showing of actual disruption to justify a restraint on student speech"); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F.Supp.2d 461, 481 (E.D.N.Y. 2009), aff'd, 623 F.3d 71 (2d Cir. 2010), cert. denied, 2011 U.S. LEXIS 1809 (Feb. 28, 2011); *Lavine v. Blaine Sch. Dist.*, 257 F.3d 981, 989 (9th Cir. 2001) ("*Tinker* does not require school officials to wait until disruption actually occurs before they may act.").

In this case, Plaintiff's First Amendment claim is based on his email to SUNY officials for which the Westchester County District Attorney subsequently criminally charged him with aggravated harassment. Plaintiff emailed this Court that the District Attorney dismissed this charge against Plaintiff on May 16, 2014 because on May 13, 2014, the New York Court of Appeals invalidated Penal Law section 240.30(1) as unconstitutional. Accordingly, Plaintiff's request to remove his criminal charges to this court is moot.

Moreover, the individual defendants' actions are protected by qualified immunity because it was reasonable for them to interpret Plaintiff's email as a threat to take a machine gun to school and kill people. Qualified immunity recognizes that "reasonable mistakes can be made as to the legal constraints on particular ... conduct." *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Qualified immunity applies if the official's mistake as to what the law requires is reasonable. *Id*. It does not apply if, on an objective basis, it is obvious that no reasonably competent official would have taken the actions of the alleged violation. *Malley*, 475 U.S. at 341. Reasonably competent university officials would have reported Plaintiff's email to

the police or prosecuting authorities; qualified immunity applies even if they were mistaken as to

Plaintiff's intent to kill people. The Court finds that Plaintiff's First Amendment right to free

speech was not violated.

### c.  Due Process

A procedural due process claim requires proof of two elements: "(1) the existence of a

property or liberty interest that was deprived; and (2) deprivation of that interest without due

process." *Bryant v. N.Y. State Educ. Dept.*, 692 F.3d 202, 218 (2d Cir. 2012). The Second Circuit

instructs:

> The threshold issue is always whether the plaintiff has a property or liberty
> interest protected by the Constitution. *See Board of Regents v. Roth*, 408 U.S.
> 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If a protected interest is identified, a
> court must then consider whether the government deprived the plaintiff of that
> interest without due process. The second step of the analysis thus asks what
> process was due to the plaintiff, and inquires whether that constitutional minimum
> was provided in the case under review. *See Mathews v. Eldridge*, 424 U.S. 319,
> 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

*Narumanchi v. Board of Trustees*, 850 F.2d 70, 72 (2d Cir. 1988). Plaintiff must first allege a

property or liberty interest protected by the Constitution. *Narumanchi*, 850 F.2d at 72. To allege

a property interest, Plaintiff must show a "legitimate claim of entitlement" to a benefit provided

by law in the appropriate jurisdiction, as opposed to "an abstract need or desire for it." *Board of

Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Property interests "extend well beyond actual ownership of real estate, chattels, or money." *Id.* at

571. A student facing suspension from school for disciplinary reasons is entitled to "oral or

written notice of the charges against him and, if he denies them, an explanation of the evidence

the authorities have and an opportunity to present his side of the story." *Board of Curators of

Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (quoting

*Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)); *Di Lella v. University of Dist. of Columbia David A. Clarke School of Law*, 570 F.Supp.2d 1, 9-10 (D. D.C. 2008). Here, as a student who is being subjected to state university policies, Plaintiff has a legitimate claim of entitlement to the proper application of those policies to him.

Having established a property interest, Plaintiff must then show that he was deprived of that interest without due process. "[T]o succeed on a claim of procedural due process deprivation—that is, a lack of notice and opportunity to be heard—a plaintiff must establish that state action deprived him of a protected property interest." *Sanitation and Recycling Industry, Inc. v. City of New York*, 107 F.3d 985, 995 (2d Cir. 1997). Plaintiff alleges that he was denied due process during his administrative hearings and appeals in regard to the disciplinary charges brought against him for, inter alia, plagiarism.

Plaintiff's own allegations show that he was afforded disciplinary hearings and that he willingly abandoned at least some of these hearings. Moreover, Plaintiff could have brought an Article 78 proceeding under New York Civil Practice Law and Rules. N.Y. Pub. Off. Law § 89(4)(b). *See Hefferan v. Corda*, 498 F. App'x 86, 88 (2d Cir. 2012) (holding that since "a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies," the plaintiff could not maintain a due process claim where he "either knew or should have known of the complained of irregularities prior to the grievance deadline and chose not to take advantage of available process" (quoting *N.Y. Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 169 (2d Cir. 2001), cert. denied, 534 U.S. 1128, 122 S.Ct. 1066, 151 L.Ed.2d 969 (2002))); *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 152–53 (2d Cir. 2010) ("The fact that a state proceeding is required by due process does not mean that Section 1983

provides a remedy for every error committed in the state proceeding. So long as state appellate remedies are available, a Section 1983 action is not an available vehicle for relief."); *De Asis v. N.Y.C. Police Dep't*, 352 F. App'x 517, 518 (2d Cir. 2009) (holding that a plaintiff could not maintain a due process claim where "a post-deprivation remedy was available, in the form of an Article 78" proceeding). The Court finds that Plaintiff's allegations do not meet the requirements of pleading a plausible claim that he was deprived of due process.

### d.  Housing

Without explanation, Plaintiff claims that his rights under the Third Amendment to the U.S. Constitution have been violated. (Opp. at 61.) The Third Amendment provides, "No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner prescribed by law." U.S. Const. amend. III. Plaintiff does not assert that soldiers were quartered in his house unconstitutionally, and the Court can envision no possible set of facts entitling Plaintiff to relief. *Goins v. Beard*, 2011 WL 4345874, at *8 (W.D. Pa. Sept. 15, 2011). Therefore, this claim is dismissed.

## VII. Privacy

Plaintiff alleges a violation of the Federal Education Rights and Privacy Act ("FERPA"), which provides federal funding for educational institutions contingent upon the institutions' compliance with federal mandates regarding student privacy. *Davis v. City of New York*, 902 F.Supp.2d 405, 439-440 (S.D.N.Y. 2012). In *Gonzaga University v. Do*e, the Supreme Court considered a lawsuit that a student brought against his university because it had disclosed confidential information about him (namely, that he had been accused of sexual misconduct) to a prospective employer. The Court determined that FERPA did not confer an individual right to that privacy. The Court concluded that

> the provisions entirely lack the sort of "rights-creating" language critical to
> showing the requisite congressional intent to create new rights. *Alexander v.
> Sandoval*, 532 U.S. 275, 288–89, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001);
> *Cannon v. University of Chicago*, 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 60
> L.Ed.2d 560 (1979). Unlike the individually focused terminology of Titles VI and
> IX ("no person shall be subjected to discrimination"), FERPA's provisions speak
> only to the Secretary of Education, directing that "no funds shall be made
> available" to any "educational agency or institution" which has a prohibited
> "policy or practice." 20 U.S.C. § 1232g(b)(1). This focus is two steps removed
> from the interests of individual students and parents and clearly does not confer
> the sort of "individual entitlement" that is enforceable under § 1983.

536 U.S. 273, 287, 122 S.Ct. 2268 (2002). Moreover, "[i]t is well-established in the Second

Circuit that FERPA itself does not create a private cause of action to enforce its provisions."

*Curto v. Smith,* 248 F.Supp.2d 132, 140–41 (N.D.N.Y. 2003) (citing *Fay v. Sout Colonie Cent.

Sch. Dist.,* 802 F.2d 21, 23 (2d Cir. 1986)). Plaintiff's FERPA claim is dismissed.

Finally, Plaintiff's Amended Complaint references the Federal Privacy Act of 1974, 5

U.S.C. § 552a, which is discussed in *NASA v. Nelson,* 131 S.Ct. 746, 752 (2011). That statute

applies only to the *federal government,* not to state or local government agencies such as the

State Defendants in this case. *See* 5 U.S.C. § 552a(a)(1); *United States v. Streich,* 560 F.3d 926,

935 (9th Cir. 2009); *Huling v. City of Los Banos*, 869 F.Supp.2d 1139, 1154-1155 (E.D. Cal.

2012).

## VIII. Title IX of the Education Amendments of 1972

Plaintiff alleges that State Defendants violated Title IX of the Education Amendments of

1972, codified as 20 U.S.C. §§ 1681–88, by discriminating against Plaintiff on the basis of sex.

(Am. Compl. at 20.) Title IX provides, in relevant part, that:

> No person in the United States shall, on the basis of sex, be excluded from
> participation in, be denied the benefits of, or be subjected to discrimination under
> any educational program or activity receiving Federal financial assistance.

20 U.S.C. §§ 1681–88. Plaintiff has not, however, pleaded any facts establishing that he was

targeted for discrimination based on his sex, other than conclusory assertions that he is a man and some of the numerous individual State Defendants are women. As such, Plaintiff has failed to adequately allege a claim under Title IX, and State Defendants' motion to dismiss this claim is granted. *Walker v. Lorch*, 2013 WL 3358013, at *4 (S.D.N.Y. July 2, 2013).

## CONCLUSION

For the reasons stated above, State Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully requested to terminate this motion (Doc. No. 33).

Defendants the Law School Admission Council and the Town of Harrison are the only remaining defendants. Plaintiff is ordered to show cause by June 21, 2014 why these two defendants should not be dismissed without prejudice for lack of service pursuant to Federal Rule of Civil Procedure 4(m).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).


Dated: May 22, 2014                          SO ORDERED:
      White Plains, New York

NELSON S. ROMÁN
United States District Judge

31